## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| V. ) | |
| ) | |
| U.S. ENVIRONMENTAL PROTECTION ) | Case No. 23-1166 |
| AGENCY; MICHAEL REGAN, in his official ) | |
| capacity as Administrator of the United States ) | |
| Environmental Protection Agency, ) | |
| ) | |
| Respondents. ) | |

## MOTION FOR LEAVE TO
## INTERVENE IN SUPPORT OF RESPONDENTS

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Circuit

Rules 15(b) and 27, the American Chemistry Council ("ACC") respectfully moves

for leave to intervene in support of Respondents, the United States Environmental

Protection Agency and EPA Administrator Michael Regan (collectively "EPA") in

opposition to this petition for review. Counsel for ACC has sought the position of

the parties on this motion for leave to intervene. Neither Petitioner Environmental

Defense Fund nor Respondent EPA takes a position on ACC's proposed

intervention.

Petitioner challenges a final EPA rule entitled "Confidential Business

Information Claims Under the Toxic Substances Control Act (TSCA)," 88 Fed.

Reg. 37155 (June 7, 2023) ("TSCA CBI Rule"). TSCA is the primary federal statute that regulates the manufacturing, processing, distribution, and use of chemical substances and mixtures in the United States. ACC represents member companies directly regulated and affected by the TSCA CBI Rule. ACC members manufacture, process, distribute, or use chemicals in commerce, and the challenged rule revises procedures for the assertion, agency review, and treatment of confidential business information ("CBI") reported to or otherwise obtained by EPA under TSCA. ACC members have a substantial interest in protecting confidential information, and the ability to maintain confidentiality is a major factor in driving innovation and research in new chemistries.

ACC meets the standards for intervention in support of EPA because: (1) its request is timely; (2) it has a material interest in the Petition because its members are affected by and benefit directly from certain provisions in the challenged rule; (3) those interests may as a practical matter be impaired or impeded if Petitioner is successful; and (4) EPA cannot adequately represent ACC's members' commercial interests. This Court should grant the motion to intervene.

## BACKGROUND

ACC represents the leading companies engaged in the business of chemistry, including by participating on behalf of its members in administrative proceedings before EPA and in litigation arising from those proceedings that affects member

company interests. The business of chemistry is a $639 billion enterprise and an

innovative, economic growth engine that is helping to solve the biggest challenges

facing the nation and the world.[1] ACC members use and produce chemicals subject

to regulation under TSCA and its implementing regulations, including the TSCA

CBI Rule that is the subject of this litigation.

In June 2016, Congress amended TSCA in the Frank R. Lautenberg

Chemical Safety for the 21st Century Act. Pub. L. No. 114-182, 130 Stat. 448

(2016). These amendments included, among others, changes to TSCA section 14,

15 U.S.C. § 2613, concerning the assertion, agency review, and treatment of

confidentiality claims for information submitted to EPA. Specifically, the

amendments required persons submitting information under TSCA to substantiate

confidentiality claims at the time of submission, and they also included additional

assertion, certification, and generic name disclosure requirements. *See* Pub. L. No.

114-182, § 14, 130 Stat. at 483–84. Apart from imposing new and amended

requirements on data submitters, the amendments required EPA to review and

approve or deny certain chemical identity claims and a subset of other

confidentiality claims within specified timelines. *Id.* § 14, 130 Stat. at 488–89.

---

[1] *See* ACC, "About ACC," *available at*
https://www.americanchemistry.com/about-acc (last visited July 27, 2023).

EPA issued the TSCA CBI Rule on June 7, 2023, which finalized new and amended requirements related to the assertion and treatment of CBI claims for information under TSCA. 88 Fed. Reg. 37155. The challenged rule includes procedures for substantiating CBI claims at the time of submission; electronic reporting requirements; requirements to provide certification statements and generic names when making confidentiality claims; treatment of information used for TSCA purposes that was originally submitted pursuant to statutes other than TSCA; and maintenance and withdrawal of confidentiality claims. *Id.* at 37155. The rule also includes specific procedures for reviewing and communicating with TSCA data submitters regarding their confidentiality claims. *Id.*

ACC submitted comments[2] on the proposed TSCA CBI Rule[3] that, among other things, supported EPA's proposal to exclude certain types of information from the definition of "health and safety study," including raw data in tabular or graphical forms, testing laboratory and laboratory supply company identifying and contact information, and specific chemical identify information where a substance-

---

[2] Comments of American Chemistry Council on EPA's Proposed Rule, Confidential Business Information Under the Toxic Substances Control Act, Docket ID No. EPA-HQ-OPPT-2021-0419-0044 (July 11, 2022), *available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0419-0044 ("ACC Comments").

[3] 87 Fed. Reg. 29,078 (May 12, 2022).

specific identifier is provided. ACC Comments at 13. ACC also agreed with EPA's proposal that confidential information submitted under another statute but used by EPA for a TSCA purpose will be subject to the protections of the statute under which the information was originally submitted if there is a conflict between the TSCA CBI protections and the protections of the original statute. *Id.* at 3. Moreover, ACC supported EPA's proposal to exclude several categories of information from the CBI substantiation requirement under 40 C.F.R. § 703.5(b)(5). *Id.* at 6. And ACC advocated for the expansion of this list to exempt from substantiation personal identifying information for any person who submitted confidential information to EPA. *Id.* ACC also supported EPA's proposal to allow information submitters a brief period of time to correct deficient CBI claims, although ACC advocated for a longer time period than the 10 days proposed by EPA. *Id.* at 10.

In this proceeding, Petitioner likely will challenge at least some aspects of the TSCA CBI Rule that ACC supports. For example, Petitioner's comments on the proposed rule opposed EPA's proposed definition of "health and safety study" and argued that categories of information excluded from that definition cannot be protected from disclosure.[4] In the final rule, EPA largely codified the proposed

---

[4] Environmental Defense Fund Comments on Proposed Rule: Confidential Business Information Claims Under the Toxic Substances Control Act, Docket ID

definition, while "making modifications . . . to combine similar exclusions and to clarify the intended scope of the exclusions." 88 Fed. Reg. at 37,157. While ACC believes that some provisions of the TSCA CBI Rule are unlawful and thus, it plans to file its own petition challenging the rule, ACC also has a vital interest in intervening in the case filed by Petitioner to demonstrate that Petitioner's arguments that EPA should make it harder for companies to protect their confidential information and require companies to make more CBI publicly available are without merit.

## **ARGUMENT**

ACC has a direct and substantial interest in this litigation to protect its members' interests. ACC members have standing to intervene in this case because they would be adversely affected if this Court issued a ruling in favor of Petitioner, thereby impacting their ability to protect valuable, confidential information. ACC's interests in this case are not adequately protected by the existing parties and may be harmed by a favorable ruling for Petitioner. The Court should grant ACC's motion for leave to intervene as a respondent in this case because ACC meets the standard for intervention in petition-for-review proceedings in this Court. At the

---

No. EPA-HQ-OPPT-2021-0419-0050, at 33-35 (July 11, 2022), *available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0419-0050.

very least, ACC should be granted permissive intervention to provide its members'

perspective as regulated entities.

## I.    ACC Satisfies the Standards for Intervention as of Right.

Federal Rule of Appellate Procedure 15(d) permits intervention in a petition

for review proceeding where a proposed intervenor seeks to intervene "within 30

days after the petition for review is filed" and concisely states an adequate

"interest" and "grounds for intervention" in the appeal. Fed. R. App. Proc. 15(d).

In applying the standard for intervention, this Court looks to the principles

underlying intervention in Rule 24 of the Federal Rules of Civil Procedure. *See,*

*e.g., Bldg. & Constr. Trades Dep't v. Reich,* 40 F.3d 1275, 1282–83 (D.C. Cir.

1985); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers*

*of Am., AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 216–17 n.10 (1965). A

party may intervene as of right if it: (1) timely moves to intervene, (2) has a legally

protected interest in the action which (3) shows that disposition of the action may

as a practical matter impair or impede its ability to protect that interest, and (4)

demonstrates that existing parties may not adequately represent its interests.

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 192 (D.C. Cir. 2013); *see*

*also* Fed. R. Civ. P. 24(a). ACC satisfies all four requirements for intervention as

of right.

7

A.    **ACC's Motion is Timely.**

Petitioner filed its petition for review on June 29, 2023. This motion is timely because ACC is filing it within the time allotted. *See* Fed. R. App. P. 15(d) (intervention motion due within 30 days after the petition is filed). In addition, other timeliness considerations weigh in favor of intervention because ACC seeks intervention at an early stage, before the Court has set a schedule for merits briefing. Accordingly, granting this motion will not disrupt or delay any proceedings. *See Roane v. Leonhart,* 741 F.3d 147, 151 (D.C. Cir. 2014) ("[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties.").

B.    **ACC's Members Have an Interest Relating to the Subject of This Proceeding That May as a Practical Matter Be Impaired by the Outcome of This Petition.**

A party seeking intervention need only "claim[] an interest relating to the property or transaction that is the subject of the action, and [be] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." *Karsner v. Lothian*, 532 F.3d 876, 885-88 (D.C. Cir. 2008). This Court has interpreted the interest and impairment prongs broadly. *See Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) ("the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.");

8

*id.* at 701 (revisions to rules governing intervention were "obviously designed to liberalize the right to intervene in federal actions" by requiring only that disposition of the pending action "may as a practical matter" impair the applicant's interest); *Roane v. Leonhart,* 741 F.3d 147, 151 (D.C. Cir. 2014) (impairment sufficient if litigation "could establish unfavorable precedent that would make it more difficult for [the intervenor] to succeed" in any future suit to enforce his rights).

Here, ACC members have protectable interests that could be impaired by the outcome of this case. ACC's members manufacture, process, or distribute chemicals and routinely provide data and information to EPA regarding those activities that are essential to their businesses and are directly subject to the requirements of the TSCA CBI Rule. *See* ACC Comments at 1-2 & n.1. ACC members regularly submit CBI[5] to EPA pursuant to TSCA and therefore have a

---

[5] It is well-settled that businesses have a property interest in their trade secrets and CBI, including the exclusive use of such information. *See Carpenter v. United States,* 484 U.S. 19, 26 (1987) (stating that CBI "has long been recognized as property" and finding Wall Street Journal "had a property right in keeping confidential and making exclusive use" of its CBI). Courts have found commercially sensitive and confidential business information to be significant protectable interests for purposes of determining a party's right to intervene. *See, e.g.*, *100Reporters LLC v. U.S. Dep't of Just.,* 307 F.R.D. 269, 277 (D.D.C. 2014) (noting the court "routinely has recognized that the submitter of documents to a government agency has a cognizable interest in maintaining the confidentiality of those documents that is sufficient under Rule 24(a)") (citations omitted); *Appleton v. FDA,* 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (finding movants have an interest in their trade secrets and confidential information submitted to FDA).

"legally-protected interest in the outcome of th[is] action." *Deutsche Bank Nat. Tr. Co.* 717 F.3d at 192. The TSCA CBI Rule directly affects ACC members' ability to protect the confidentiality of sensitive information regarding the chemical substances they manufacture and use, by revising and establishing procedures governing the assertion of CBI claims. If Petitioner succeeds in challenging that rule, the resulting relief could or weaken or eliminate certain provisions of the rule that protect against the disclosure of CBI when a data submitter provides information to EPA pursuant to TSCA or pursuant to another statute that EPA subsequently utilizes for TSCA purposes. Such changes would impact ACC members' operations and commercial interests. *See Armour of Am. v. United States,* 70 Fed. Cl. 240, 245 (Fed. Cl. 2006) (finding disclosure of proprietary business information "constitutes a practical injury" that would "seriously impair [movant's] competitive advantage"). Failing to provide adequate protection for ACC members' commercially sensitive and confidential information can lead to severe economic and societal costs, as companies would have little incentive to invest tens or hundreds of millions of dollars to develop innovative, sustainable chemistries if the confidential information needed to create such chemistries will be made public by EPA and freely available to global competitors. *See* ACC Comments at 2.

For these reasons, ACC meets the interest and impairment requirements for intervention as of right.

**C.     Existing Parties Do Not Adequately Represent ACC's Interests.**

ACC readily meets the inadequate representation requirement. The burden of showing inadequacy "is not onerous," as "[t]he applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Diamond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). This Court has recognized that in cases like this, the federal government does not adequately represent the interests of a private party merely because both support a given governmental action. Governmental entities must represent the public interest rather than the narrower interests of a private party. *See Fund for Animals v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003). Accordingly, this Court has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id.* at 736.

Other circuits take a similarly broad approach to granting intervention in support of federal defendants. *See, e.g., South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025–26 (8th Cir. 2003) (in suit challenging U.S. Army Corps of Engineers policy to lower reservoir water level, Corps could not adequately represent interests of proposed intervenors—downstream users—because Corps was

required to balance the interests of the upstream and downstream users); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("[T]he government's prospective task of protecting not only the interest of the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation.") (internal quotation marks and citation omitted); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) ("a federal defendant with a primary interest in the management of a resource" does not have an "interest[] identical to those of an entity with an economic interest[] in the use of that resource") (citation omitted); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44–45 (1st Cir. 1992) ("[A] governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity . . . .").

Here, as in those cases, neither Petitioner nor EPA can adequately represent ACC's interests. As demonstrated by Petitioner's comments to the proposed TSCA CBI Rule, Petitioner's likely arguments in this suit diverge from ACC's interests. Nor is EPA able to represent ACC and its members' interests. *See Crossroads Grassroots Pol'y Strategies,* at 321 (This Court "look[s] skeptically on government entities serving as adequate advocates for private parties."). Although EPA has an

12

interest in defending the TSCA CBI Rule, it does not have any particular interest in ACC members' ability to protect their secret, commercially valuable information from public disclosure. Nor does EPA share ACC members' objectives to protect their property rights against global competitors. As such, there may not be convergence of views as to how best to respond to Petitioner's challenge, making ACC's participation non-duplicative and useful to the Court. *See Nat. Res. Def. Council v. Costle,* 561 F.2d 904, 912 (D.C. Cir. 1977) ("[G]eneral agreement" between movant and government regulator "does not necessarily ensure agreement in all particular respects about what the law requires."). ACC also has a direct and substantial interest, different and apart from EPA's interests, in any settlement negotiations that may result from this litigation.

## II.    ACC Has Standing to Intervene in This Case.

In this Circuit, applicants for intervention as of right must demonstrate Article III standing. *E.g., Deutsche Bank Nat. Tr. Co.,* 717 F.3d at 193; *Yocha Dehe Wintun Nation v. U.S. Dep't of the Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021). Nevertheless, "any person who satisfies [the standards for intervention as of right] will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *accord, Fund for Animals*, 322 F.3d at 735. Because ACC satisfies the requirements for intervention as of

right, it also satisfies any requirement to demonstrate standing. *See Roeder*, 333

F.3d at 233.

ACC has associational standing to litigate on behalf of its members in this

case. An association has standing if it demonstrates (i) its members would have

standing to sue in their own right; (ii) the interests it seeks to protect are germane

to the association's purpose; and (iii) "neither the claim asserted nor the relief

requested requires the participation of individual members in the lawsuit." *Hunt v.*

*Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

ACC members would have standing to intervene in their own right, as they

are directly regulated and affected by the TSCA CBI Rule, and disposition of this

case threatens to weaken or eliminate the CBI protections provided to ACC's

members under the TSCA CBI Rule. *See Crossroads Grassroots Pol'y Strategies,*

788 F.3d at 317 (This Court has "generally found a sufficient injury in fact where a

party benefits from agency action, the action is then challenged in court, and an

unfavorable decision would remove the party's benefit."). Petitioner likely will

challenge at least some aspects of the TSCA CBI Rule that protect ACC members'

commercial interests in their CBI, such as ACC member 3M Corporation, which

commented extensively on the proposed rule.[6] For instance, Petitioner opposed

EPA's proposed definition of "health and safety study" (40 C.F.R. § 703.3) that

excludes certain categories of information, thereby exempting them from

disclosure.[7] By contrast, 3M Corporation and ACC both commented in support of

EPA's proposed exclusions and requested that the agency exempt additional

categories of information.[8] In the final TSCA CBI Rule, EPA largely maintained

the exclusions as proposed with minor revisions to combine similar exclusions and

clarify their scope. 88 Fed. Reg. at 37,157. Thus, if this Court resolves this case in

favor of Petitioner, ACC members would be deprived of the CBI protections

currently afforded by the TSCA CBI Rule.[9]

---

[6] *See* American Chemistry Council, ACC's Manufacturer Members
https://www.americanchemistry.com/about-acc/membership/manufacturer-members (last visited July 19, 2023) (ACC membership roster includes 3M).

[7] Environmental Defense Fund Comments on Proposed Rule: Confidential
Business Information Claims Under the Toxic Substances Control Act (TSCA),
Docket ID: EPA-HQ-OPPT-2021-0419 at 34 (July 11, 2022) (asserting that EPA's
proposal to exclude certain categories of information from the regulatory definition
of "Health and safety study" violates TSCA), *available at*
https://www.regulations.gov/comment/EPA-HQ-OPPT-2021-0419-0050 ("EDF
Comments").

[8] Comments of 3M Corporation on Proposed Rule: Confidential Business
Information Claims Under the Toxic Substances Control Act (TSCA), Docket No.
EPA-HQ-OPPT-2021-0419 at 12 n.11 (July 11, 2022); ACC Comments at 13.

[9] Because Petitioner has not identified the precise issues they intend to litigate,
ACC does not offer an exhaustive list of instances where Petitioner's comments
are in direct opposition to those of ACC's and its members. It should suffice to say

Petitioner's anticipated challenge to the TSCA CBI Rule would threaten the property and financial interests that 3M Corporation and other ACC members have in their CBI, including the exclusive use of and benefit from such information. *Cf. Armour of Am.,* 70 Fed. Cl. at 245; *FMC Corp v. Boesky,* 852 F.2d 981, 991 (7th Cir. 1988) ("[D]efendants' violation of [plaintiff]'s right to the exclusive use of its confidential business information injured [plaintiff] as distinctly and as palpably as if the defendants stole a potentially valuable new machine from [plaintiff]."). ACC members' economic and property-based injuries that would result from an adverse ruling in this case would be directly traceable to Petitioner's challenge to the TSCA CBI Rule because ACC members benefit from certain provisions of the rule that provide CBI protections. And ACC "can prevent the injury by defeating [Petitioner's] challenge[.]" *Crossroads Grassroots Pol'y Strategies,* 788 F.3d at 317.

Moreover, the interests ACC seeks to protect are germane to its purpose of promoting the well-being of its member companies and participating in agency proceedings and related litigation that affect those members. *See* American Chemistry Council, Membership https://www.americanchemistry.com/about-

---

that Petitioner supports broader public disclosure of information that ACC's members believe is commercially sensitive and confidential and that the relief Petitioner seeks—further erosion of CBI protections—would injure ACC members.

acc/membership (last visited July 18, 2023) (explaining that ACC serves to protect its members' interests through administrative proceedings, litigation, and political advocacy). Finally, individual member participation is not required. Petitioner is seeking equitable relief (namely, overturning aspects of a final rule applicable to manufacturers, importers, and processors of chemical substances), not money damages. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553-54 (1996).

For these reasons, ACC has Article III standing to intervene in this action on behalf of its members.

## III.    Alternatively, ACC Should Be Granted Permissive Intervention.

ACC also meets the requirements for permissive intervention. A party qualifies for permissive intervention when it shows that its claim or defense shares a common question of law or fact with the main action. *EEOC v. Nat'l Children's Center, Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998). In determining whether to permit such a party to intervene, the "principal consideration" is whether the proposed intervention would "unduly delay or prejudice the adjudication of the . . . rights" of the original parties. *Arizona v. California*, 460 U.S. 605, 614 (1983). Indeed, permissive intervention does not require a showing of inadequacy of representation nor a direct interest in the subject matter of the action. *See SEC v.*

*U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940). As discussed above, however, ACC can readily make such a showing and has such an interest here.

Permissive intervention is warranted here for several reasons. First, ACC's motion is timely because it is filed at the earliest feasible stage and will not cause undue delay or prejudice to the parties, particularly because this Court has not issued a schedule for merits briefing. Second, ACC's defense of aspects of the challenged EPA rule presents questions of law and fact in common with the underlying petition that would respond directly to Petitioner's claims. Third, ACC's unique perspective as an association representing the leading companies engaged in the business of chemistry will aid this Court's understanding of the underlying legal and factual issues involved and assist in the efficient resolution of this case. For these reasons, and in the alternative, this Court should grant ACC permissive intervention.

## **CONCLUSION**

For the foregoing reasons, ACC respectfully requests leave to intervene as Respondent in this case.

July 31, 2023

Respectfully submitted,

/s/ David Y. Chung
David Y. Chung
Warren Lehrenbaum
Lynn T. Phan
CROWELL & MORING LLP

1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500
dchung@crowell.com
wlehrenbaum@crowell.com
lphan@crowell.com

*Counsel for American Chemistry Council*

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| V. ) | |
| ) | |
| U.S. ENVIRONMENTAL PROTECTION ) | Case No. 23-1166 |
| AGENCY; MICHAEL REGAN, in his official ) | |
| capacity as Administrator of the United States ) | |
| Environmental Protection Agency, ) | |
| ) | |
| Respondents. ) | |
| ) | |
| ) | |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and

Circuit Rule 26.1, the American Chemistry Council ("ACC") states as follows:

ACC is a not-for-profit trade association that participates on behalf of its

members in administrative proceedings and in litigation arising from those

proceedings. ACC represents the leading companies engaged in the business of

chemistry. ACC has no parent companies, and no publicly-held company has a

10% or greater ownership interest in ACC.

DATED: July 31, 2023                    Respectfully submitted,

                                        /s/ David Y. Chung
                                        David Y. Chung
                                        *Counsel for American Chemistry*
                                        *Counc*

20

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

|  |  |  |
|---|---|---|
| ENVIRONMENTAL DEFENSE FUND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION | ) | Case No. 23-1166 |
| AGENCY; MICHAEL REGAN, in his official | ) | |
| capacity as Administrator of the United States | ) | |
| Environmental Protection Agency, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

_____)

## CERTIFICATE AS TO PARTIES AND *AMICI*

Pursuant to Circuit Rule 27(a)(4) and 28(a)(1)(A), the American Chemistry

Council ("ACC") makes the following statements as to parties and *amici*.

Petitioner in this matter is the Environmental Defense Fund. Respondent is the

United States Environmental Protection Agency ("EPA") and Michael Regan,

Administrator of the EPA. ACC is not aware of any motions for leave to intervene

other than its own or any *amici* in this matter.

DATED: July 31, 2023                  Respectfully submitted,

                                      /s/ David Y. Chung_____
                                      David Y. Chung
                                      *Counsel for American Chemistry*
                                      *Council*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing motion complies with the type-volume limitation of Fed. R.

App. P. 27(d)(2)(A) because it contains 3,935 words, excluding those parts

exempted by Fed. R. App. P. 32(f).

This motion also complies with the typeface requirements of Fed. R.

App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because it has been prepared in a proportionally spaced typeface using Microsoft

Word 2010 in 14-point, Times New Roman font.

/s/ David Y. Chung
David Y. Chung

DATED:  July 31, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing through the CM/ECF system, which will send a notice of filing to all registered CM/ECF users.

/s/ David Y. Chung
David Y. Chung

Dated:  July 31, 2023