IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

ENVIRONMENTAL DEFENSE FUND, ET AL.,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Respondent.*

ON PETITIONS FOR REVIEW OF FINAL AGENCY ACTION
OF THE ENVIRONMENTAL PROTECTION AGENCY

**INITIAL BRIEF OF INTERVENOR AMERICAN CHEMISTRY COUNCIL
IN SUPPORT OF RESPONDENT UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY**

Laura Gooding
American Chemistry Council
700 2nd Street, NE
Washington, DC 20002

David Y. Chung
Warren Lehrenbaum
Lynn T. Phan
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
(202) 624-2500
dchung@crowell.com

*Counsel for American Chemistry Council*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.      Parties, intervenors, and amici**

Except for the following, all parties, intervenors, and *amici* appearing in this Court are listed in the Brief for Petitioner Environmental Defense Fund:

*Amici*:

U.S. Chamber of Commerce and National Association of Manufacturers (23-1204)

**B.      Rulings under review**

The agency action under review is EPA's final rule, entitled Confidential Business Information Claims Under the Toxic Substances Control Act (TSCA), 88 Fed. Reg. 37,155 (June 7, 2023), which this Brief identifies throughout as the "Final Rule."

**C.      Related cases**

The consolidated cases have not been reviewed by this or any other Court.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, the American Chemistry Council ("ACC") states that it has no parent company, and no publicly held company has a 10% or greater ownership interest in ACC. ACC is a "trade association" under Circuit Rule 26.1.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............................................................................... i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF AUTHORITIES ................................................. v

GLOSSARY ............................................................. viii

INTRODUCTION ......................................................... 1

STATUTES AND REGULATIONS ............................................. 1

STATEMENT OF THE CASE ................................................ 1

SUMMARY OF ARGUMENT ................................................. 4

ARGUMENT ............................................................. 6

I.    EPA Lawfully Excluded Categories of Information from the Definition of "Health and Safety Study" Where Such Information Is Not Relevant to Interpreting the Study ............... 6

      A.   EPA's regulatory definition is grounded in TSCA's text, structure, purpose, and history. ......................... 6

      B.   EPA's definition of "health and safety study" is consistent with longstanding regulations and well-reasoned. ..................................................... 10

II.   EPA Correctly Concluded That TSCA § 14 Does Not Authorize Automatic Review of Pre-Commercialization Confidentiality Claims for Chemical Identities. .................................. 14

      A.   TSCA exempts pre-commercialization confidentiality claims for chemical identity from substantiation requirements. ................................................ 14

      B.   EPA adequately explained that changes to its prior CBI regulations ensure consistency with Congress's 2016 TSCA amendments. ........................................... 16

III.  The Final Rule's Procedures for Deficient CBI Claims Are Reasonable. ......................................................... 18

CONCLUSION ........................................................... 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Dep't of Transp.*,
   791 F.2d 172 (D.C. Cir. 1986) .................................................................16, 17

*Davis v. Mich. Dep't of Treasury*,
   489 U.S. 803 (1989) ...........................................................................................6

*Gundy v. United States*,
   139 S. Ct. 2116 (2019) ......................................................................................6

*Gutierrez v. Ada*,
   528 U.S. 250 (2000) .........................................................................................10

*Jarecki v. G. D. Searle & Co.*,
   367 U.S. 303 (1961) .........................................................................................10

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*,
   416 U.S. 267 (1974) .......................................................................................9, 10

*O'Gilvie v. United States*,
   519 U.S. 79 (1996) ............................................................................................9

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ..........................................................................................15

*United States v. Johnson*,
   481 U.S. 681 (1987) ..........................................................................................9

*United States v. Williams*,
   553 U.S. 285 (2008) ..........................................................................................9

*Yates v. United States*,
   574 U.S. 528 (2015) .........................................................................................10

**Statutes**

15 U.S.C. § 2601(b) ................................................................................................7

15 U.S.C. § 2601(b)(3) ...........................................................................................7

15 U.S.C. § 2602(8) ........................................................6, 10

15 U.S.C. § 2613(a) ......................................................3, 6, 7

15 U.S.C. § 2613(b) .....................................................3, 7, 11

15 U.S.C. § 2613(b) ...........................................................7

15 U.S.C. § 2613(b)(1) ........................................................6

15 U.S.C. § 2613(b)(2)...................................................6, 7, 8

15 U.S.C. § 2613(c) ...........................................................4

15 U.S.C. § 2613(c)(2) .......................................................15

15 U.S.C. § 2613(c)(2)(G) ................................................5, 16

15 U.S.C. § 2613(d) ...........................................................7

15 U.S.C. § 2613(e) ..............................................5, 14, 15, 16

15 U.S.C. § 2613(e)(1) ........................................................4

15 U.S.C. § 2613(e)(1)(A) ...................................................15

15 U.S.C. § 2613(e)(1)(B) ...................................................15

15 U.S.C. § 2613(f).................................................4, 5, 15, 16, 17

15 U.S.C.§ 2613(f)(1) .......................................................16

15 U.S.C. § 2613(f)(2) ......................................................16

15 U.S.C. § 2613(g) .....................................................17, 18

15 U.S.C. § 2613(g)(1).....................................................4, 18

**Regulations**

40 C.F.R. Part 703.............................................................4

40 C.F.R. § 703.3 .........................................................6, 11

40 C.F.R. § 703.3(4) ........................................................13

40 C.F.R. § 703.5(b)(5)(ii)(A) ............................................... 17

40 C.F.R. § 704 ....................................................................... 21

40 C.F.R. § 720.85 ............................................................. 16, 17

40 C.F.R. § 720.90 ............................................................. 16, 17

40 C.F.R. § 720.90(a)(3) ...................................................... 3, 11

**Other Authorities**

42 Fed. Reg. 64,572 (Dec. 23, 1977) ...................................... 11

47 Fed. Reg. 38,780 (Sept. 2, 1982) ......................................... 3

51 Fed. Reg. 32,720 (Sept. 15, 1986) ................................... 3, 11

87 Fed. Reg. 29,078 (May 12, 2022) ................................. 16, 20

88 Fed. Reg. 37,155 (June 7, 2023) ...................................... vii

H. Rep. No. 94-1341 (1976) ...................................................... 7

H. Rep. No. 94-1679 (1976) ...................................................... 8

S. Rep. No. 114-67 (2015) ......................................... 3, 8, 9, 12

# GLOSSARY

| | |
|---|---|
| ACC | American Chemistry Council |
| CBI | Confidential Business Information |
| EDF | Environmental Defense Fund |
| EPA | Environmental Protection Agency |
| Final Rule | Confidential Business Information Claims Under the Toxic Substances Control Act (TSCA), 88 Fed. Reg. 37,155 (June 7, 2023) |
| FOIA | Freedom of Information Act |
| Inventory | Toxic Substances Control Act Chemical Substance Inventory |
| JA | Joint Appendix |
| RTC | Response to Comments |
| TSCA | Toxic Substances Control Act or Act |

# INTRODUCTION

Petitioner Environmental Defense Fund ("EDF") wants to have its cake and eat it too. In some ways, EDF wants this Court to override contemporaneous Environmental Protection Agency ("EPA") interpretations of the Toxic Substances Control Act ("TSCA") that have remained consistent for nearly fifty years even though Congress declined to do so when amending TSCA in 2016. In other ways, EDF wants this Court to hold EPA to prior interpretations and ignore that Congress's 2016 amendments superseded EPA's interpretations. In all events, EDF wants this Court to elevate the release of competitively sensitive information on chemicals above all other goals. Such an outcome disregards Congress's express policy that EPA regulate chemicals without unduly impeding technological innovation, while ensuring that such innovation does not present unreasonable risks of injury. The provisions in the Final Rule that EDF challenges strike an appropriate balance between protecting confidential information, which is essential to encouraging innovation, and allowing access to non-confidential information. This Court should not upend that balance, and it should instead deny EDF's petition.

# STATUTES AND REGULATIONS

All pertinent statutes and regulations are contained in the Petitioner Brief.

# STATEMENT OF THE CASE

ACC adopts Respondent EPA's statement of the case. ACC separately emphasizes that the public interest in accessing information that EPA uses to

implement TSCA must be balanced against the need for robust protections for confidential information.

The business of chemistry is a key element of the nation's economy. With over $614 billion in sales, the U.S. chemistry industry supports over 25% of U.S. gross domestic product, directly creates over a half a million American jobs, and supports more than 4 million American jobs.[1] Solutions from the chemistry industry are critical to ensuring a safe and plentiful food supply for the world's growing population; clean air and water; safe living conditions; efficient and affordable energy sources; and life-saving medical treatments.[2]

Every year, companies invest billions of dollars in research and development to bring chemicals to the U.S. market,[3] and the ability to protect confidential information from disclosure is key to fostering innovation. This is because companies "ha[ve] little incentive to invest tens or hundreds of millions of dollars to develop innovative, sustainable chemistry if the confidential information needed to

---

[1] *See* ACC, *The Business of Chemistry by the Numbers*, https://www.americanchemistry.com/chemistry-in-america/data-industry-statistics/the-business-of-chemistry-by-the-numbers (last visited Jan. 31, 2024).

[2] *See* ACC, *Data & Industry Statistics*, https://www.americanchemistry.com/chemistry-in-america/data-industry-statistics (last visited Jan. 31, 2024).

[3] *See* ACC, *The Business of Chemistry by the Numbers,*" *supra* n.1.

create that chemistry will be made public by EPA and freely available to global and domestic competitors." JA__ (ACC Comments at 2).

For over four decades, EPA has interpreted the statutory provisions related to disclosure of health and safety studies as not authorizing the disclosure of certain confidential information—*e.g.*, company name and address, cost or other financial data, product codes, and product development or marketing plans. *E.g.*, 47 Fed. Reg. 38,780, 38,794 (Sept. 2, 1982); 51 Fed. Reg. 32,720, 32,724 (Sept. 15, 1986). EPA recognized that although such information may be included with a health and safety study document, it warrants confidential treatment as it "is not in any way related to the effects of a substance on human health or the environment[.]" 40 C.F.R. § 720.90(a)(3) (repealed 2023).

When Congress amended TSCA in 2016, it retained the general prohibition on disclosing confidential information in Section 14(a). Congress also retained "virtually verbatim" the language in Section 14(b) governing the disclosure of health and safety studies. S. Rep. No. 114-67, at 22 (2015). The legislative history referenced "EPA's interpretation of the provision to date," though the decision to leave Section 14(b) mostly unchanged did not signal an "intent to agree or disagree with EPA's interpretation[.]" *Id.* The fact remains, however, that when presented with an opportunity to override EPA's interpretation, Congress passed.

Elsewhere, Congress made important changes to TSCA Section 14 in 2016, such as: adding requirements for asserting and substantiating confidentiality claims, while exempting several categories of information from substantiation requirements, 15 U.S.C. § 2613(c); specifying the duration of protection for confidential information, *id.* § 2613(e)(1); providing for discretionary and mandatory review and resubstantiation, *id.* § 2613(f); and imposing default deadlines for EPA review and action on confidentiality claims, while clarifying that EPA's failure to act within the deadlines does not constitute a constructive denial of confidentiality protections, *id.* § 2613(g)(1).

The Final Rule updates EPA's TSCA regulations in part to account for the "many new provisions [in the 2016 TSCA amendments] concerning the assertion, Agency review, and treatment of confidentiality claims." 88 Fed. Reg. at 37,155. The Final Rule retains some longstanding provisions, but centralizes and consolidates regulations that were previously scattered throughout Title 40 of the Code of Federal Regulations in the new 40 C.F.R. Part 703.

## SUMMARY OF ARGUMENT

EDF's contentions that three aspects of the Final Rule violate TSCA are based on strained interpretations of the regulatory and statutory language. This Court should reject each of EDF's arguments.

*First*, the Final Rule lawfully excludes certain categories of information from "health and safety study" where such information is not necessary to interpret a health and safety study. EPA's exclusions are grounded in TSCA's text, and they appropriately balance competing concerns under TSCA. Moreover, EPA's exclusions are supported by the legislative history and are consistent with longstanding agency practice.

*Second*, TSCA exempts pre-commercialization confidentiality claims for chemical identity from substantiation requirements, and Congress did not require submitters to revisit and substantiate such claims upon commercialization. *See* 15 U.S.C. § 2613(c)(2)(G). Instead, Congress protected information in those pre-commercialization claims from disclosure until either a submitter withdraws the claim or one of six statutory triggering events for reassertion and substantiation is satisfied. *See id.* §§ 2613(e)(1)(A), 2613(f). Because commercialization is not among those triggering events, the Final Rule faithfully implements the statutory text.

*Finally*, the Final Rule does not grant EPA discretion to withhold non-confidential information from disclosure. The Final Rule allows for the possibility that submitters may overcome deficiencies in their CBI claims and gives EPA flexibility over timing of disclosure and workload management. There are sound

policy reasons for the challenged provisions, which do not represent a change in EPA's position.

## ARGUMENT

I. **EPA Lawfully Excluded Categories of Information from the Definition of "Health and Safety Study" Where Such Information Is Not Relevant to Interpreting the Study.**

  A. **EPA's regulatory definition is grounded in TSCA's text, structure, purpose, and history.**

EPA's brief ably explains how the definition of "health and safety study" in 40 C.F.R. § 703.3 aligns with the statutory definition of that term in 15 U.S.C. § 2602(8) and gives effect to 15 U.S.C. § 2613(b)(1). *See* EPA Br. at 25-27 & 28-29. Rather than repeat those arguments, ACC underscores how EPA's interpretation follows from TSCA's context, purpose, and history. *See Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) ("[S]tatutory interpretation [is] a holistic endeavor which determines meaning by looking not to isolated words, but to text in context, along with purpose and history.") (citation and internal quotation marks omitted).

The statutory definition of "health and safety study" must be read in context within TSCA Section 14 and with a view to its place in the overall statutory scheme. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). TSCA Section 14(b)(2), which authorizes the disclosure of health and safety studies, operates as a limited exception to the general prohibition on disclosure of confidential and trade secret information in Section 14(a), which states that EPA "shall not disclose

information" that is exempt from disclosure under FOIA exemption 4. 15 U.S.C. § 2613(a). Section 14(b), in turn, states that "[s]ubsection (a) does not prohibit the disclosure of" health and safety studies, but it does not affirmatively mandate disclosure of health and safety studies. *Compare id.* § 2613(b) (using the phrase "does not prohibit") *with id.* § 2613(d) (directing that information described in subsection (a) "shall be disclosed" in certain enumerated circumstances). Because Section 14(b)(2) is an exemption from mandatory non-disclosure, as opposed to a mandate to disclose health and safety studies, it should be narrowly construed.

EPA's determination that certain information is unnecessary to interpret a health and safety study—and thus is not part of a "health and safety study"—advances the Congressional policy in TSCA Section 2(b). 15 U.S.C. § 2601(b)(3) (regulation of chemical substances should not "impede unduly or create unnecessary economic barriers to technological innovation while fulfilling the primary purpose of this chapter to assure that such innovation and commerce . . . do not present an unreasonable risk of injury to health or the environment"); *see also* H. Rep. No. 94-1341, at 50 (1976) (recognizing importance of Section 14's specific prohibitions on the release of certain CBI to offset EPA's broad information gathering authority under TSCA and to protect "the competitive position" of regulated parties). EPA avoids unnecessarily penalizing companies that conduct health and safety studies by

continuing to protect some information within a study that is not necessary to interpret the study.

Importantly, when Congress originally drafted the language in what is now Section 14(b)(2), it intended to permit the disclosure of health and safety *data* and *substantive information* concerning the effects of a chemical on health and the environment. H. Rep. No. 94-1679, at 58 (1976) (Conf. Rep.). Congress explained that the term "health and safety study" should be interpreted to include "[n]ot only [] *information which arises as a result of a formal, disciplined study* . . . but other *information relating to the effects* of a chemical substance or mixture on health and the environment[.]" *Id.* (emphasis added). Congress added that "[a]ny *data* which bears on the effects of a chemical substance on health or the environment would be included." *Id.* (emphasis added). But nothing in the legislative history of TSCA or the 2016 amendments indicates that Congress intended Section 14(b)(2) to mandate disclosure of the information now at issue. To the contrary, Congress "expect[ed] that EPA w[ould] ensure that health and environmental effects information from health and safety studies is disclosed, while appropriately protecting CBI contained within a study." S. Rep. No. 114-67, at 22.

Additional legislative history supports EPA's interpretation. Congress was aware in 2016 of EPA's longstanding interpretation that sensitive information such as company name should be protected from disclosure and not considered as part of

a "health and safety study." *See supra* at 3 (quoting regulatory preambles). After "significant debate over the scope and interpretation of the provision," Congress could not "agree or disagree with EPA's interpretation of the provision to date." S. Rep. No. 114-67, at 22. That said, Congress did not override EPA's regulatory interpretation. Congress's "failure to revise or repeal the agency's interpretation" is persuasive evidence that Congress did not clearly define "health and safety study" to encompass all information in and from such studies, as EDF suggests (at 18). *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 274-75 (1974).

While the views of Congress in 2016 as to the meaning of the statute are not controlling, *see O'Gilvie v. United States*, 519 U.S. 79, 90 (1996), it is Congress's prerogative under our Constitution to correct any perceived misinterpretations—whether by the agencies or the courts—by amending the law to make the meaning clear. *See United States v. Johnson*, 481 U.S. 681, 686 (1987). That Congress did not do that in 2016, despite having the opportunity to do so, it effectively cemented EPA's longstanding interpretation.

Finally, EPA's interpretation of "health and safety study" draws support from the "commonsense canon" of *noscitur a sociis*. *United States v. Williams*, 553 U.S. 285, 294 (2008). This canon instructs that a statutory term or principle should be construed in light of the words accompanying it and is used to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words,

thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015) (citation omitted). Applying that canon here, the phrase "underlying information" in the statutory definition of "health and safety study" should be construed by reference to the other terms in the definition, including "epidemiological studies, studies of occupational exposure . . ., and ecological studies[.]" *See* 15 U.S.C. § 2602(8). "Underlying information" should be read to refer to substantive information and data on effects that are contained in or relied on by a health and safety study, which is consistent with the aforementioned legislative history. *See Gutierrez v. Ada*, 528 U.S. 250, 254-58 (2000) (applying the canon to narrow the phrase, "any election," where it was closely surrounded by six specific references to gubernatorial elections); *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961) (applying the canon to narrow the term "discoveries" to discoveries of mineral resources where it was contained in a list of three words that all applied to the oil, gas, and mining industries).

## B. EPA's definition of "health and safety study" is consistent with longstanding regulations and well-reasoned.

Since TSCA's enactment in 1976, EPA has consistently recognized that certain information included in a health and safety study document could be protectable as CBI. This Court "may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration." *NLRB*, 416 U.S. at 274-75.

As EPA explains (at 29-30), nearly all of the exclusions in the definition of "health and safety study," § 703.3, have been protectable as CBI in prior TSCA regulations. *See, e.g.*, Inventory Reporting Regulations, 42 Fed. Reg. 64,572, 64,592 (Dec. 23, 1977) (acknowledging "[t]he fact that a certain company manufactures a particular chemical substance may be a confidential trade secret"); Health and Safety Data Reporting, 51 Fed. Reg. at 32,724 ("Section 14(b) protects from disclosure certain types of information that may be part of a health and safety study[,]" including "company name or address, financial statistics, and product codes used by a company."); *see also* 40 C.F.R. § 720.90(a)(3) (repealed 2023) (data from health and safety studies "not in any way related to the effects of a substance on human health or the environment, such as the name of the submitting company, cost or other financial data, product development or marketing plans, and advertising plans" may nonetheless be subject to confidential treatment).

Although EPA has not previously excluded identifying information for laboratories, that exclusion traces directly to the longstanding exclusion for company names. As EPA explained, that addition is "intended to permit confidentiality claims for . . . information that would disclose company identity" and would only apply if "the laboratory that conducted the study was part of or closely related to the submitting company[.]" JA__ (Response to Comments Document "RTC" at 13).

This addition better protects submitting company identity, which EPA has historically recognized as protectable CBI.

EDF nevertheless counters (at 21-22) that company and laboratory identity are relevant because they can be helpful for evaluating the reliability and objectivity of the study and may "serve as a starting point" to understand the uses and exposure pathways of a chemical substance. EDF states that "knowledge of the [company or lab] identities, *if* traceable to the facilities making or using the subject chemicals, *can potentially* point to communities and environments that may be impacted by those chemicals." EDF Br. at 22-23 (emphasis added). Notwithstanding the uncertain potential for such information to reveal the effects of a chemical substance on the environment or human health, EDF's overbroad understanding of whether information is "relevant" to a health and safety study finds no basis in the statutory text and ignores Congress's intent to balance the disclosure of information to protect human health and the environment against the protection of proprietary commercial information to encourage competition and innovation. *See* S. Rep. No. 114-67, at 21 ("Striking a balance between protecting trade secrets and sensitive commercial and financial information and broadening access to information on chemicals is essential to encourage innovation and economic competitiveness within the chemical industry[.]").

The importance of protecting company identity in the context of a "health and safety study" cannot be overstated. In the highly competitive chemical industry, companies often gather intelligence by identifying and connecting information in TSCA filings, including manufacturer identity, to glean the types of products competitors are trying to bring to market. In this cutthroat environment, it is important to obscure information from competitors or else risk losing one's competitive position. To illustrate, if a "particular company is well-recognized as a manufacturer of similar classes of substances" and it is made public that the company manufactures a particular chemical substance, "the particular synthesis route that the company has selected along with downstream substances and uses for those downstream substances" would become public, as would "the fact that [a] market exists for those downstream substances." JA__ (3M Comments at 6).

Moreover, health and safety studies are valuable intellectual property costing sometimes millions of dollars. Companies typically redact company and laboratory names so that other entities cannot download the "full, unredacted report and use it without compensating the study sponsor." *See* JA__ (New Chemicals Coalition Comments at 7-8).

Finally, EDF argues (at 23) that "product information" (in 40 C.F.R. § 703.3(4)) is relevant to understanding the potential for exposure to a chemical that is the subject of a health and safety study. Beyond broadly asserting that "product

information" (*i.e.*, "information pertaining to test substance product development, advertising, or marketing plans, or to cost and other financial data") is relevant to understanding potential exposure, EDF fails to explain how any of these specific categories of information, as included in a health and safety study, would help the public interpret such study or otherwise understand the effects of a chemical substance on health or the environment.

In conclusion, EPA appropriately balanced the competing concerns under TSCA and reasonably carried forward longstanding exclusions from the definition of "health and safety study" in the Final Rule.

## II. EPA Correctly Concluded That TSCA § 14 Does Not Authorize Automatic Review of Pre-Commercialization Confidentiality Claims for Chemical Identities.

### A. TSCA exempts pre-commercialization confidentiality claims for chemical identity from substantiation requirements.

EPA's brief (at 34-39) quotes extensively from the relevant statutory provisions that plainly exempt pre-commercialization confidentiality claims for chemical identity from substantiation and routine claim review. Read together, those provisions make it clear that there is no requirement for EPA to revisit those claims upon commercialization. 15 U.S.C. § 2613(e), entitled "Duration of protection from disclosure", is particularly instructive on this point, yet EDF fails to even acknowledge that provision.

Contrary to EDF's claim (at 27), Congress *did* effectively make all of the substantiation exemptions in Section 14(c)(2) indefinite in duration. Congress plainly stated in Section 14(e) that EPA "shall protect from disclosure" any information that is exempt from substantiation under subsection (c)(2) "until such time as" either: (1) the submitter notifies EPA that it is withdrawing the claim; or (2) EPA becomes aware that the information "does not qualify for protection from disclosure" in which case EPA "shall take any actions required under subsections (f) and (g)[.]" 15 U.S.C. § 2613(e)(1)(A). Nothing in the Act conditions this indefinite protection on reasserting and substantiating pre-commercialization confidentiality claims for chemical identity upon commercialization. As EPA notes (at 38-39), this indefinite protection contrasts sharply with the 10-year limit that Congress placed on protections for CBI "other than information described in subsection (c)(2)[.]" *Id.* § 2613(e)(1)(B). EDF's assertion (at 26) that pre-commercialization CBI claims for chemical identity automatically become subject to TSCA's general substantiation and review requirements upon commercialization improperly renders these duration provisions "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citation omitted).

It is equally telling that EDF ignores Section 14(f), which carefully circumscribes when EPA has the discretion or obligation to require a submitter to "reassert and substantiate" previously submitted confidentiality claims, including

pre-commercialization CBI claims for chemical identity. *See* 15 U.S.C. §§ 2613(f), 2613(c)(2)(G). Congress specified three circumstances in which EPA has discretion to require reassertion and substantiation, § 2613(f)(1), and three circumstances in which EPA must require reassertion and substantiation, § 2613(f)(2). None of these six circumstances encompasses what EDF complains about. If Congress intended for commercialization to trigger a requirement to reassert and substantiate pre-commercialization CBI claims for chemical identity, it could have done so in either 15 U.S.C. § 2613(e) or 15 U.S.C. § 2613(f).

**B.     EPA adequately explained that changes to its prior CBI regulations ensure consistency with Congress's 2016 TSCA amendments.**

EDF's assertions (at 28-30) that EPA "reversed" two longstanding regulations—40 C.F.R. §§ 720.85 and 720.90—without acknowledgment or explanation mischaracterize the record. EPA adequately explained why the deletion of these two provisions was appropriate following Congress's 2016 TSCA amendments. *See Air Line Pilots Ass'n, Int'l v. Dep't of Transp.*, 791 F.2d 172, 175-76 (D.C. Cir. 1986) (agency's change in longstanding policy was reasonable where implemented in response to Congress's "change in the *statute* from which that policy derived").

Contrary to EDF's claim that EPA inadequately justified deleting 40 C.F.R. § 720.90, the Agency explained why that regulation was no longer consistent with the statute following the 2016 amendments. *See* EPA Br. at 43-44; *see also* 87 Fed. Reg.

29,078, 29,089-90 (May 12, 2022) (former Section 720.90 "is a poor fit with new TSCA section 14(g) requirements that confidentiality claims be reviewed within 90 days of receipt, or in accordance with the discretionary or mandatory provisions of TSCA section 14(f)"). Amending the regulations to ensure consistency with superseding statutory amendments is the only justification EPA needed to delete 40 C.F.R. § 720.90. *See Air Line Pilots Ass'n, Int'l*, 791 F.2d at 175-76.

EDF's claim that EPA's deletion of 40 C.F.R. § 720.85 "radically changed" its approach without adequate justification similarly fails. EDF wrongly claims (at 28-29) that under former § 720.85, pre-commercialization claims of confidentiality made without substantiation would last only until commercialization. As EPA explained in responding to this comment, that former regulation "is mostly redundant with [the amended] TSCA section 14, the final rule, or both." JA__ (RTC at 47). EPA further explained why EDF mischaracterized former § 720.85, because that provision was "not a means of making an event-limited claim that automatically expires upon [commercialization]." *Id.* at 48. Instead, that regulation simply meant the pre-commercialization claim lasts only until the filing of a Notice of Commencement, at which point a CBI claim for chemical identity "may be reasserted, and must be reasserted for the chemical identity to remain confidential." *Id.* That is precisely what happens under the Final Rule (40 C.F.R. § 703.5(b)(5)(ii)(A)) and the 2016 TSCA amendments, both of which provide that the

substantiation exemption for pre-commercialization CBI claims for chemical identity "continues to apply to the pre-commercialization claim, but any chemical identity claim asserted post-commercialization does not qualify for the exemption." JA__ (RTC at 27).

## III.  The Final Rule's Procedures for Deficient CBI Claims Are Reasonable.

EDF claims that various provisions in the Final Rule violate TSCA by improperly giving EPA discretion to treat non-confidential information as CBI and withhold information where disclosure is required. As EPA explains (at 45-46), EDF mischaracterizes the challenged provisions, because none of them authorize EPA to withhold non-confidential information as CBI. EPA's brief further provides important statutory context (at 48-52) and recounts how EPA appropriately addressed EDF's comments on this issue (at 52-54).

ACC separately emphasizes that the challenged provisions reflect an appropriate balancing of competing statutory goals. EPA reasonably interprets TSCA as providing flexibility for addressing potentially deficient claims, including over the timing of disclosure if EPA ultimately concludes that information is not CBI. As EPA explains (at 47), EDF's position would unreasonably require EPA to predetermine the outcome of Section 2613(g) review. Moreover, EDF ignores 15 U.S.C. § 2613(g)(1)(D), which states that EPA's failure to make a final decision on a CBI claim within the allotted time "shall not have the effect of denying or

eliminating a claim or request for protection from disclosure." The Final Rule's provisions allowing submitters to correct deficiencies fits comfortably within a statutory scheme that gives EPA flexibility on timing and decision-making and explicitly forecloses constructive denials.

Practical considerations reinforce EPA's textual arguments. In promulgating the challenged provisions, EPA drew on its implementation experience and "recogniz[ed] that some perceived deficiencies may be subject to reasonable (often technical) debate or simply more efficiently dealt with by permitting correction, rather than proceeding with a more punitive denial[.]" JA__ (RTC at 33). Moreover, EPA acknowledged that "innocent mistakes and technical errors" occur, and therefore, "immediately releasing information for which a CBI claim had evidently been attempted would be unduly punitive." *Id.* at 34. EPA's interpretation appropriately "protects companies who make innocent errors without adversely impacting public access to information that is not entitled to CBI treatment." *Id.* at 33.

The flexibility EPA embraces is especially important in the chemistry industry, where disclosure of trade secrets and other proprietary information would irreparably harm submitting companies. Put simply, the disclosure of proprietary information is irreversible. When EPA publishes information submitted under

TSCA to its online ChemView system,[4] anyone can instantly access and utilize that information. An erroneous disclosure of CBI would have devastating consequences for manufacturers who often spend years and millions of dollars developing innovative, specialty chemicals and rely on EPA to protect the proprietary information submitted to the Agency. Equally important, the Final Rule's flexibility in allowing submitters to correct errors in submissions is key to the small companies that seek to enter the market each year. JA__ (New Chemicals Coalition Comments, at 14-15). Were EPA to deny submitters the opportunity to correct deficiencies and instead mandate immediate disclosure, it "would unfairly penalize new TSCA submitters that are unfamiliar with the process and standards." *Id.* at 15.

EDF's final contention (at 40) is that EPA replaced regulations mandating disclosure with discretionary provisions without explanation. Not so. EPA acknowledged and explained the changes it made to the regulatory text. According to EPA, the Final Rule would "largely centralize CBI requirements in one section of the rules," JA__ (RTC at 46), and "include adaptations to reflect the requirements of TSCA section 14, and to facilitate the high volume, time-limited review process required to meet the requirements of TSCA", 87 Fed. Reg. at 29,087. EPA accounted

---

[4] EPA developed ChemView to improve chemical safety and provide more streamlined access to information on chemicals. *See* https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/introduction-chemview (last visited Feb. 8, 2024).

for statutory changes to which EPA was required to adapt.

To the extent EPA changed its policy by deleting a provision that deemed the failure to furnish a second (redacted) copy of its information as a presumptive waiver causing the first (unredacted) copy to be released to the public, EPA explained why that provision was no longer appropriate: "The provision that failing to provide a public copy is a presumptive waiver of any CBI claim made in a submission under 40 C.F.R. § 704 does not reflect the fact that TSCA e-reporting tools now automatically prompt the submitter for a public copy of CBI submissions when required (making failure to provide a public copy much less likely), and TSCA requirements (section 14(g)) that CBI claims in a submission must generally be denied before the submission is disclosed to the public." JA__ (RTC at 46). This adequately explains the change.

## CONCLUSION

EDF's petition should be denied.

Dated: February 9, 2024         Respectfully submitted,

/s/ David Y. Chung
David Y. Chung
Warren Lehrenbaum
Lynn T. Phan
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2587
dchung@crowell.com

Laura Gooding
American Chemistry Council
700 2nd Street, NE
Washington, DC 20002

*Counsel for Intervenor-Respondent*
*American Chemistry Council*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and this Court's briefing order because this brief contains 4,536 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: February 9, 2024

*/s/ David Y. Chung*
David Y. Chung

# CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, I have caused the foregoing to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ David Y. Chung*
David Y. Chung