# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

ENVIRONMENTAL DEFENSE FUND,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents*.

———————————

On Petition for Review of Final Action
by the United States Environmental Protection Agency

———————————

## FINAL REPLY BRIEF OF PETITIONER
## ENVIRONMENTAL DEFENSE FUND

———————————

Samantha Liskow
ENVIRONMENTAL DEFENSE FUND
257 Park Ave S
New York, NY 10010
(212) 616-1247
sliskow@edf.org

*Counsel for Petitioner*
*Environmental Defense Fund*

April 11, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

GLOSSARY OF ABBREVIATIONS .................................................................... iv

STATUTES AND REGULATIONS...................................................................... iv

INTRODUCTION ……………………………………………………………1

ARGUMENT ……………………………………………………………...…….1

I. TSCA does not support EPA's exclusions of health and safety information ……1

II. EPA did not adequately justify blocking public access to chemical identities in new chemical documents ...........................................................................................7

    A. EPA fundamentally misconstrues the statutory requirement…………….7

    B. EPA is incorrect in asserting that the public has reasonable alternative mechanisms for accessing the information ………………………………..10

III. TSCA does not support EPA's claimed discretion to withhold non-confidential information…………………………………………………………………….…12

    A. EPA wrongly asserts that it need not disclose information about chemicals that it reviewed and determined to be non-confidential...............12

    B. Shifting burden onto the public to extract from EPA the non-confidential documents about chemicals from EPA is unreasonable and contrary to TSCA…………………………………………………………………….15

    C. EPA's failure to deny deficient confidentiality claims is not legally supported…………………………………………………………..…......18

CONCLUSION ……………………………………………………………..20

CERTIFICATES OF COMPLIANCE AND SERVICE ........................................21

# TABLE OF AUTHORITIES

**Cases**

*AHA v. Azar*, 983 F.3d 528 (D.C. Cir. 2020) …………………………..…..…2, 16

*Env't Comm. of the Fla. Elec. Power Coordinating Grp., Inc. v. EPA*, __ F.4th __, 2024 WL 876819, 2024 U.S. App. LEXIS 4994 (D.C. Cir. Mar. 1, 2024)……..3

*McDonald vs. Household Int'l, Inc.*, 425 F.3d 424 (7th Cir. 2005)……………..…3

*Montello Salt Co. v. Utah*, 221 U.S. 452 ……………………………….…….2

*Samantar v. Yousuf*, 560 U.S. 305 (2010) …………………………..…………..2

*Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264 (2023) ………….…16

*United States v. Robertson*, 86 F.4th 355 (D.C. Cir. 2023) …………………..…3

**Statutes**

15 U.S.C. § 2602(8) ………………………………………………………..3

15 U.S.C. § 2604(d)……………………………………………………………10

15 U.S.C. § 2613 …………………………………………...……..8, 14

15 U.S.C. § 2613(b)(1) …………………………………………..…...4, 5

15 U.S.C. § 2613(b)(2) …………………………………………………….5

15 U.S.C. § 2613(b)(2)(B) …………………………………………………..4

15 U.S.C. § 2613(c)(1)(iii) …………………………………………………..6

15 U.S.C. § 2613(c)(2)………………………………………………………..8

15 U.S.C. § 2613(c)(2)(G) …………………………………………..7, 8, 9, 10

15 U.S.C. § 2613(c)(3) ………………………………………………………9

15 U.S.C. § 2613(d) ………………………………………………………14

15 U.S.C. § 2613(d)(7) …………………………………………………....15

15 U.S.C. § 2613(e)(1)(A) …………………………………………...……8

15 U.S.C. § 2613(f) ………………………………………………….…...13

15 U.S.C. § 2613(f)(2)(A) …………………………………………………..14

15 U.S.C. § 2613(g) ………………………………………….…13, 18

15 U.S.C. § 2613(g)(1)………………………………………….14

15 U.S.C. § 2613(g)(1)(A) ………………………………...……….8

15 U.S.C. § 2613(g)(4) ……………………………………..…….12

15 U.S.C. § 2613(i)(1)(B) …………………………………………8

**Other Authorities**

EPA, "Downloaded data on completed TSCA CBI determinations," available at
https://www.epa.gov/tsca-cbi/statistics-tsca-cbi-review-program#reviews (last
visited March 22, 2024) …………………………………………...10, 11

United States Government Accountability Office, "Freedom of Information Act,"
https://www.gao.gov/assets/d24106535.pdf (March 2024) …………………...18

**Regulations**

40 C.F.R. § 703.5(e) ……………………………………….……18, 20

40 C.F.R. § 703.8(g) ……………………………………………...13

40 C.F.R. § 720.90(a)(3) (2022) (repealed 2023) ……………………………....6

40 C.F.R. § 720.90(b)(2) (repealed 2023) …………………………………....9

**Legislative Materials**

S. Rep. No. 114-67 (2015)..........................................................15

# GLOSSARY OF ABBREVIATIONS

Pursuant to Circuit Rule 28(a)(3), the following is a glossary of abbreviations used in this brief:

| | |
|---|---|
| CBI | Confidential Business Information |
| EDF | Environmental Defense Fund |
| EPA | Respondents United States Environmental Protection Agency and Administrator Michael Regan |
| FOIA | Freedom of Information Act |
| JA | Joint Appendix |
| Rule | United States Environmental Protection Agency, "Confidential Business Information Claims Under the Toxic Substances Control Act (TSCA)," 88 Fed. Reg. 37,155 (June 7, 2023) |
| TSCA | Toxic Substances Control Act |

# STATUTES AND REGULATIONS

All pertinent statutes and regulations were filed with EDF's opening brief addendum.

**INTRODUCTION**

In EPA's response brief, the Agency concedes that TSCA has a foundational purpose to inform the public about chemicals to which they may be exposed. This makes it particularly puzzling that the Agency promulgated numerous provisions that not only fail to fulfill this purpose, but also undermine it, and in this case takes a stand against affirmative public disclosure of nonconfidential TSCA information. These actions are inconsistent with TSCA's plain language and contrary to its structure and purpose. The Court should reject EPA's contentions and vacate the unlawful provisions challenged by EDF.

**ARGUMENT**

**I.    TSCA does not support EPA's exclusions of health and safety information**

EPA agrees with EDF that health and safety studies may not be claimed confidential under TSCA, but nevertheless has limited the reach of this principle by redefining "health and safety studies." EPA Brief ("EPA") at 24. EPA's position is circular: it may declare parts of a health and safety study not part of a health and safety study, thereby denying the public access to significant information. To support its circular approach, EPA cobbles together various erroneous interpretations of TSCA.

First, EPA points to Congress' use of the phrase "including underlying information." EDF argued in its brief that this phrase is expansive, and EPA

1

acknowledges that "include," as the Supreme Court has affirmed, "can signal that the list that follows is meant to be illustrative rather than exhaustive." *Samantar v. Yousuf*, 560 U.S. 305, 317 (2010). Bizarrely, however, the Agency pivots to a 1911 case stating that "include" may "specify particularly that which belongs to the genus." *Montello Salt Co. v. Utah*, 221 U.S. 452[1]; EPA at 26. Yet "[i]t is hornbook law that the use of the word 'including' indicates that the specified list . . . that follows is illustrative, not exclusive." *AHA v. Azar*, 983 F.3d 528, 534 (D.C. Cir. 2020) (quoting *Puerto Rico Maritime Shipping Authority v. Interstate Commerce Commission,* 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981)).

Next, EPA argues that EDF has "substitute[d] a lay concept of "study" for the statutory definition" of the phrase "health and safety study." EPA at 25. EDF has done no such thing. Rather, EDF pointed to a Merriam-Webster definition of the word "study,"[2] which TSCA does not define, to inform how the statutory definition of the phrase "health and safety study" should be understood. EPA does not dispute that the dictionary definition, if relied on, undermines the validity of its carveouts, nor does EPA provide an alternative dictionary definition of "study."

---

[1] Unremarked by EPA, the Court also acknowledged that "include" could "have the sense of addition … and of 'also.'" *Id.* at 464-65.

[2] It is unclear what EPA means by a "lay" definition. The Agency does not discount the use of dictionary definitions, invoking a Cambridge definition later. EPA at 26.

Because Congress defined the phrase "health and safety study," as "any study…." 15 U.S.C. § 2602(8), but did not define "study" itself, it is reasonable to look to "normal usage" and "ordinary" meanings, including dictionary definitions, of that word to understand the entire phrase. *See Env't Comm. of the Fla. Elec. Power Coordinating Grp., Inc. v. EPA*, __ F.4th __, 2024 WL 876819, 2024 U.S. App. LEXIS 4994, at *21, 23-24 (D.C. Cir. Mar. 1, 2024) (relying on a dictionary definition of "find" in Clean Air Act provisions); *United States v. Robertson*, 86 F.4th 355, 365, 371 (D.C. Cir. 2023). EPA's cited case *McDonald vs. Household Int'l, Inc.*, 425 F.3d 424 (7th Cir. 2005) does not help its cause. There, the court applied a clear ERISA definition of a term, rather than the plaintiffs' competing, non-dictionary definition. *Id.* at 429.

To support its carveouts, EPA invented a test that is nowhere to be found in TSCA. Specifically, the Agency decided to limit public access to information in health and safety studies based on its own notion of whether information "pertain[s] to" or "bear[s] on" the effects of the studied chemical. EPA at 2, 21. But Congress did not permit the Agency to keep health and safety information from the public based on such judgments. EPA claims that its categorical exclusions are "reasonably chosen" and "narrowly tailored," *id.* at 21, but by its plain language TSCA does not give EPA discretion to make such choices, reasonably tailored or otherwise.

Assuming *arguendo* that EPA has the authority to create exclusions, EDF demonstrated that EPA's carveouts are arbitrary and capricious because the information EPA excluded may indeed "pertain" to or "bear on" chemicals' effects. EDF Brief ("EDF") at 20-24. Indeed, EPA concedes that the excluded information "could be relevant to evaluating study reliability or for learning potentially useful information about the subject chemical substance," but still insists that it may withhold the same information from the public (while appearing to fully dismiss the public's same interest in evaluating health and safety studies). EPA at 32-33. In any event, EPA misread EDF's point, asserting that it is EDF (and not the Agency) that proposed a non-statutory "criterion" for inclusion of information in a health and safety study. EPA at 26-27. To the contrary, EDF's position is that EPA's carveouts are invalid because Congress established that, other than the two narrow exceptions discussed below, health and safety study information may not be withheld.

EPA attempts to make use of 15 U.S.C. § 2613(b)(1), but this provision is perfectly consistent with Congress' 2613(b)(2)(B) exclusions (in which Congress recognized that two specific categories of information were so sensitive (i.e., business competitive) that they should not be disclosed). A health and safety study may contain such information, making it a document with "mixed confidential and non-confidential information." 15 U.S.C. § 2613(b)(1). In light of TSCA's

specificity about the categories of information that may be considered confidential in a health and safety study, EPA does not convincingly explain how 15 U.S.C. § 2613(b)(1) supports its newly-created exclusions.

EPA also cites a Senate Committee report accompanying a bill to amend TSCA. EPA at 31. While the report refers to an EPA "interpretation" of subsection 2613(b)(2) with which the Committee could not agree or disagree, it is not clear to what "interpretation" it refers—all EPA interpretations of the provision? One particular interpretation? As efforts to reform TSCA gained steam, however, there was "significant debate" in Congress over a particular issue: whether chemical identity in a health and safety study may be protected from disclosure. *See, e.g.*, Letter of Democratic Members of Congress to OIRA Administrator Sunstein (July 2012), https://bit.ly/4aFo1V1, responding to Letter of Republican Members of Congress to Sunstein (May 2012), https://bit.ly/4cmRBjA.

Even assuming that Congress instead had in mind the past practices to which EPA refers, EPA at 30, this would not support the challenged provision by which the Agency has, for the first time, entirely exempted categories of health and safety information from all CBI requirements.[3] In the former regulations EPA cites, EPA described certain information that it determined *may* warrant protection as CBI,

---

[3] Moreover, had Congress wanted to see such a major change to subsection 2613(b)(2), it presumably would have done so while overhauling TSCA in 2016.

and therefore was *eligible* to be *claimed* as CBI. *See, e.g.*, 40 C.F.R. § 720.90(a)(3) (2022) (repealed 2023) (requiring assertion of a confidentiality claim for information not to be subject to disclosure). In contrast, EPA now is automatically shielding swaths of information without even requiring submitters to make a claim of confidentiality or that the redacted information meets TSCA's most basic requirements for confidentiality, such as that disclosure of the information is likely to cause substantial competitive harm. 15 U.S.C. § 2613(c)(1)(iii). Finally, even assuming EPA's past practice was congruent with its Rule, past practice cannot support a statutorily-invalid regulation.

Last, EPA argues that its exclusions are reasonable because of a claimed need to balance the TSCA policy of "promoting disclosure of health and safety information pertaining to chemicals" with a purported policy focused on "concerns about protecting from disclosure information that does not underlie the study document." EPA at 24. Certainly, Congress intended to promote public disclosure public of health and safety information, but EPA's "competing" purpose does not appear anywhere in TSCA; the Agency merely cites itself. *Id.* Such "concerns" are plainly EPA's own, unconnected to any statutory purpose, and cannot support its Rule.

## II. EPA did not adequately justify blocking public access to chemical identities in new chemical documents

### A. EPA fundamentally misconstrues the statutory requirement

EPA has erroneously affixed the timing provision of 15 U.S.C. § 2613(c)(2)(G) to when the confidentiality claim is asserted as opposed to what stage (before or after commercialization) the chemical is in its development. EPA's summary of the argument contains a revealing grammatical error: it describes its decision not to require companies to substantiate and EPA to review "CBI claims for chemical identity that were asserted prior to commercialization and which were later commercialized…" EPA at 21. But it is not the *CBI claims* that are commercialized—it is the *chemical substances*. "Prior to" is a time-referent phrase. By the statute's plain text, the exclusions for substantiation and review of the CBI claims cease when chemicals are commercialized.

EPA's reading requires the "prior to" clause to be written out of the statute. For example, EPA maintains that 15 U.S.C. § 2613(c)(2)(G) "categorically excludes" pre-commercialization CBI claims for chemical identity from substantiation and review. EPA at 21. However, when comparing this provision with the six others of 15 U.S.C. § 2613(c)(2)—none of which include the "prior to" clause—it is clear that subsection (c)(2)(G) is distinctly non-categorical, and instead is temporally limited. EDF at 27-28. By ignoring the "prior to" unique to

15 U.S.C. § 2613(c)(2)(G), EPA equates all provisions of subsection (c)(2). EPA has not responded to this plain language argument.

EPA makes numerous arguments that presume the validity of its erroneous statutory construction. First, EPA invokes 15 U.S.C. § 2613(e)(1)(A), which precludes the expiration of confidentiality claims for information described in 15 U.S.C. § 2613(c)(2). But this does not apply to the specific chemical identity in documents concerning a now-commercialized chemical, because upon commercialization this information no longer falls under subsection 2613(c)(2).

Second, EPA gestures to 15 U.S.C. § 2613(i)(1)(B), where Congress generally instructed EPA not to impose substantiation requirements more extensive than laid out in 15 U.S.C. § 2613. This argument is only helpful to EPA if its statutory construction is accepted; in EDF's view Congress plainly did require substantiation for chemical identity claims once the chemical is commercialized, and hence a regulation codifying this would not impose any "more extensive" requirements.

Third, EPA hangs its hat on a TSCA provision that limits certain claim review to a period "not later than 90 days" after assertion of a claim. 15 U.S.C. § 2613(g)(1)(A). But that provision expressly excludes "claims regarding information described in subsection (c)(2)," which means the 90-day timeline does not apply to claims for information described in 15 U.S.C. § 2613(c)(2)(G) before

commercialization. The exclusion expires upon commercialization, subjecting the earlier claims to substantiation and review requirements. Nothing in the statute suggests Congress intended those claims to remain untouched indefinitely after a chemical enters the market, therefore denying the public access to important information about a chemical even after it is being manufactured and used, and potentially exposing people and the environment.

Moreover, EPA could have readily solved its invented timing problem by requiring claimants to reassert their claims upon commercialization of their chemicals, thereby starting the 90-day clock. Reassertion is a concept with which EPA is familiar. In its superseded regulations, for example, EPA required reassertion. *See, e.g.,* 40 C.F.R. § 720.90(b)(2) (repealed 2023) ("To maintain the confidential status of the chemical identity of a chemical substance for which a health and safety study was submitted after commencement of manufacture or import, the claim must be reasserted and substantiated …").

Fourth, EPA's attempt to employ 15 U.S.C. § 2613(c)(3) fails. The provision's substantiation instructions explicitly do not apply to subsection (c)(2)(G) before commercialization of a chemical. In addition, the provision does not instruct that substantiation must happen at the time of assertion for all claims, as EPA maintains. Rather, subsection 2613(c)(3) gives EPA authority to issue rules addressing when substantiation must occur. EPA clearly could have specified in

regulations that previously-asserted claims initially exempted from substantiation must be substantiated upon a chemical's commercialization.

## B. EPA is incorrect in asserting that the public has reasonable alternative mechanisms for accessing the information

EPA acknowledges that "[m]ost TSCA Section 2613(c)(2)(G) claims accompany Premanufacture Notices ["new chemical applications"]…" EPA at 37 n.17. TSCA requires that companies submit a variety of documents with these new chemical applications, such as all available health and safety studies, to assess the risks the chemicals may pose after commercialization. 15 U.S.C. § 2604(d). Companies redact chemical identities in such health and safety documents when they submit them.[4] Under the Rule, therefore, identities of chemicals in documents about the effects and exposures of chemicals on the market will be kept confidential, indefinitely.

EPA attempts to minimize this reality by implying that the public can access the information in some other way. This is not the case. First, EPA's own data show that it approves virtually all claims for chemical identity confidentiality (greater than 97%) that companies make at commercialization. *See* EPA, "Downloaded data on completed TSCA CBI determinations," available at

---

[4] By definition, the chemicals for which companies submit new chemical applications are not yet commercialized, so chemical identities in these documents qualify for the time-limited exemption.

https://www.epa.gov/tsca-cbi/statistics-tsca-cbi-review-program#reviews (last visited March 22, 2024). This near-total approval of confidentiality for the identities of chemicals that are commercialized, combined with EPA's decision not to review the earlier chemical identity claims for these substances, means that for practically all chemicals that enter commerce, EPA's Rule hides from the public the chemical identities in the health and safety documents submitted with the new chemical application.

It is no defense for EPA to assert that review at the commercialization stage is sufficient to determine if the pre-commercialization chemical identity claims are valid, because the claims in health and safety documents submitted with the earlier new chemical application would be evaluated on more criteria and would be less likely to be approved. EDF at 33-34. (Contrary to EPA's contention that EDF waived this point, EPA at 44, EDF explained in comments the importance of the context in which confidentiality claims are asserted, including claims for chemical identity and the timing of such claims. *See* EDF's CBI Rule Comments, EPA-HQ-OPPT-2021-0419-0050 [JA068], at 2, 55, 57-59, 68-9.

Finally, EPA asserts that the public would be able to trace a chemical identity claim that EPA reviews at commercialization back to earlier information about that chemical subject to unreviewed confidentiality claims. First, EPA argues its "unique identifier" numbering system, which in theory provides the public an

EPA-assigned number for each chemical in lieu of the chemical's actual identity, should alleviate concerns about un-substantiated and un-reviewed confidentiality claims. But EPA is silent about how it complies with the unique identifier requirement, 15 U.S.C. § 2613(g)(4), and how the public may practically use this system to access information. No mention of unique identifiers appears anywhere in EPA's regulations.[5] Second, in the few cases in which EPA has denied a chemical identity claim made by a company at commercialization, EPA has not addressed how it will ensure these specific chemical identities that should now be public will be published and applied back to the documents about the chemical that were submitted to EPA. EPA's regulations are silent about whether or how it will make such links.

## III. TSCA does not support EPA's claimed discretion to withhold non-confidential information

### A. EPA wrongly asserts that it need not disclose information about chemicals that it reviewed and determined to be non-confidential

EPA recognizes that a key purpose of TSCA is to affirmatively provide information about chemicals to the public. "The CBI Rule reasonably balances, in a manner consistent with the statute, *disclosure of information to the public* and

---

[5] EPA also argues that placing the burden on the public to identify documents in which chemical identity is concealed and to go through the FOIA process to attempt to access them allays concerns about the Rule's exclusions. EPA at 40-41. This is not the case, as described *infra*, at Section III.B.

protection of CBI." EPA at 20 (emphasis added). And yet, to support its Rule, EPA waters down TSCA's public information provisions until they are, at base, about nothing more than an internal agency review process. EPA maintains that even when it goes through the process of reviewing a company's confidentiality claim, finds that a claim must be denied, and in fact denies it, public disclosure of the non-confidential information is still not required. In essence, EPA's position renders meaningless its determinations that chemical information is not confidential under TSCA.[6]

EPA frames EDF's challenge as being about public disclosure of all non-confidential information EPA may receive under TSCA. In fact, the focus in this case is narrower: EDF challenges EPA's position that it may withhold from the public *information that has been claimed confidential, and then reviewed by EPA and found to be non-confidential*. EPA states that TSCA "provides that 'CBI claims in a submission must generally be denied before the submission is disclosed to the public.'" EPA at 54. However, EPA travels far beyond that understanding of TSCA, now taking the stance that even when the Agency denies a claim for

---

[6] It is notable that EPA included in the Rule a mandatory public disclosure provision for information subject to denied claims. 40 C.F.R. § 703.8(g). But that provision applies only to claims reviewed under 15 U.S.C. § 2613(f), not 2613(g). TSCA provides no basis for such selectivity, nor has EPA provide any rationale for it.

confidentiality, it can simply choose not to release the non-confidential information.

In 2016, Congress heavily amended 15 U.S.C. § 2613 to establish a formalized process by which confidentiality claims must be asserted and, with certain exceptions, substantiated and reviewed. It mandated that EPA decide whether the confidentiality claim should be approved or denied. EPA would have us believe that Congress intended the following: after EPA reviews an invalid confidentiality claim and denies it under 15 U.S.C. § 2613(g)(1), the public may not access the reviewed information unless it starts a process by which it files a FOIA request, triggering 2613(f)(2)(A) and requiring EPA to completely redo the review and confidentiality determination it concluded earlier under subsection (g)(1). (In fact, per EPA's reading of its Rule, the Agency is likely to have previously completed *two* reviews—at both 10 days and 90 days after a company's submission. *See* EPA at 46.) It simply does not make sense that Congress would require the public to go through this process and EPA to perform entirely duplicative reviews under entirely different subsections before the non-confidential information could be made public, nor does anything in TSCA suggest that Congress intended such redundancy.

EPA's attempts to find support in the statute are not persuasive. For example, 15 U.S.C. § 2613(d) applies only to "information described in subsection

(a)," which is information that has been deemed "not subject to disclosure" (i.e., CBI). In other words, these provisions are about disclosure of *confidential information* to specific entities in specific circumstances. EDF's challenge, on the other hand, concerns information that EPA has already determined to qualify as non-confidential.[7]

## B. Shifting burden onto the public to extract from EPA the non-confidential documents about chemicals is unreasonable and contrary to TSCA

EPA recognizes that the purposes of TSCA include broadening access to information and "better informing the decisions made about chemicals by different levels of government, companies throughout the supply chain, and the general public." EPA at 4-5 (citing S. Rep. No. 114-67, at 21 (2015)). But the public cannot be informed by information that is not disclosed to them. Chemical information under TSCA comes to the Agency first and reaches the public only to the extent EPA provides access to it; EPA's insistence on a prerogative not to automatically disclose the information it has deemed non-confidential poses a potentially insurmountable barrier to public access and should be rejected as

---

[7] EPA also attempts to make something of the fact that § 2613(d)(7), alone among the 9 subsections, merely says "may be disclosed." EPA at 49. But this subsection refers to a discretionary determination of EPA as a condition of release, rather than to a discretionary release once EPA makes that determination.

contrary to Congress' intent to increase public access. "The words of the statute should be read in context, … and the problem Congress sought to solve should be taken into account." *AHA v. Azar*, 983 F.3d 528, 535 (2020) (quoting *PDK Laboratories, Inc. v. DEA*, 362 F.3d 786, 796 (D.C. Cir. 2004)).

Moreover, EPA's position is nonsensical. EPA has access to all the information that comes to it under TSCA, whether or not the Agency deems it confidential. Thus, EPA's confidentiality claim reviews are entirely about whether the *public* should or should not access the underlying information. Inherent in this fact is that the public should be provided the information that EPA determines is not confidential. Courts have a "duty to construe statutes, not isolated provisions," and read Congress' words "in their context and with a view to their place in the overall statutory scheme." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 143 S.Ct. 940, 948 (2023) (citations and internal quotations omitted). EPA's rejection of confidentiality claims lacks meaning if it does not lead to disclosure to the group—the public—from which the CBI claims sought to shield the information. In other words, EPA's position raises a fundamental question: why would Congress have intended, under a statute with a purpose to publicly inform, that such information sit in a proverbial file cabinet?

On the one hand, EPA appears to agree that disclosure is mandated where information is not entitled to confidential treatment, but on the other hand asserts it

does not have to automatically disclose any of this information, and defends this sweeping position by suggesting that the public may make FOIA requests for the non-confidential information EPA withholds from them. (EPA also suggests that they public may get access to certain information via the Agency placing items on Chemview when it chooses to[8]). EPA at 51, n.21.

This blithe "solution" is premised on the notion that FOIA is a substitute for direct public disclosure, ignoring the burden it places on the public to have to seek access to the non-confidential information that Congress granted it. Under EPA's information-restrictive view of TSCA, a non-governmental person or group (e.g., a small community nonprofit with volunteer staff and a minuscule budget) must muster and invest the resources needed to investigate and uncover the existence of information they have never seen. The nonprofit then must file appropriately-specific FOIA requests for the unseen information, wait for EPA to process the requests—including for the duration of time it takes the Agency to redo the reviews and confidentiality determinations it already completed—and, as acknowledged by EPA, the Agency may even then deem some or all of the requested information confidential and fail to disclose it to the community group. *See* EPA at 40-41.

---

[8] The Chemview database is not mentioned anywhere in statute or regulations, and therefore EPA is under no obligation to post information there, or even to maintain the database's existence.

EPA also conveniently ignores another essential problem with offloading its document disclosure responsibility onto the public: perennial FOIA delays and backlogs. *See, e.g.*, United States Government Accountability Office, "Freedom of Information Act," https://www.gao.gov/assets/d24106535.pdf, at 40 (March 2024) ("the persistent and growing government-wide request backlog undermines transparency and accountability").

EPA's decision to impose such time-intensive and potentially fruitless tasks on the public to access the non-confidential information is especially egregious considering that EPA will have already spent public resources on a lengthy, resource-intensive review under 15 U.S.C. § 2613(g) to deny the same CBI claim. *See supra*, Section III.A. The requirement that the public FOIA for the same information, triggering an entirely *new* review, amounts to redundant government processes that in the end serve only to delay or deny public access. In short, for EPA to so burden the public, rather than disclose non-confidential information after its previous review and period of notification to claimants, 15 U.S.C. § 2613(g), is unreasonable.

## C. EPA's failure to deny deficient confidentiality claims is not legally supported

EPA insists that its conditional "may deny" language of 40 C.F.R. § 703.5(e) is not about retaining discretion to approve a deficient confidentiality claim. However, EPA offers conflicting—and practically unworkable—explanations for

what else the language may mean. At first, EPA portrays the regulation as pertaining to the 10-day "correction" period it created in the Rule, EPA at 46, and defends the inclusion of the conditional language by claiming that submitters should be allowed "a reasonable, 10-day window of opportunity ... to fix minor mistakes or technical errors." EPA at 47. The problem with this argument is that the "may deny" language of the provision is keyed to the period *after* this opportunity "to fix minor mistakes or technical errors," not during it.

Elsewhere, EPA has a competing take on the meaning of "may deny": that a CBI claim found deficient at the end of the 10-day period could ultimately become non-deficient. EPA at 46. Under this alternate reading, EPA's correction period becomes puzzlingly redundant. EPA would expend the time and resources to review confidentiality claims, make determinations, and inform companies of deficiencies, but in the end would not allow these processes to have any effect. Claimants would see no consequence for making clearly deficient claims and then refusing to address them within the window, and the public's access to information that EPA already determined did not meet confidentiality requirements would be significantly delayed, or denied.

Moreover, EPA is vague about what may later transform a deficient claim into a non-deficient one. EPA at 47-48. The only specific example the Agency gives—that a company may withdraw its CBI claim—is irrelevant, because when a

company withdraws a CBI claim there is no longer a CBI claim, and therefore no basis for EPA to protect the information from disclosure. *Id.*

EPA also claims that its conditional language "balances the Congressional mandate that claims meet the assertion requirements in 15 U.S.C. § 2613(c) with the administrative requirement that an adjudication be based upon the facts before the adjudicator at the time of adjudication." EPA at 46. EPA never raised this argument in rulemaking, depriving EDF of the ability to address it in comments. *See* EPA at 44. Even if the argument was not waived, EPA does not explain how framing CBI claim review as an adjudication supports, for example, its position that EPA does not have to reject deficient CBI claims that are not corrected per 40 C.F.R. § 703.5(e).

## CONCLUSION

EDF respectfully requests that this Court grant its petition.

Respectfully submitted,

DATED: April 11, 2024

*/s/ Samantha Liskow*

Samantha Liskow
ENVIRONMENTAL DEFENSE FUND
257 Park Ave S
New York, NY 10010
(212) 616-1247
sliskow@edf.org

*Counsel for Petitioner*
*Environmental Defense Fund*

20

## CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I also certify that this brief complies with the Court's September 26, 2023 order because by Microsoft Word's count, it contains 4,487 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

Finally, I certify that today I electronically filed this Final Reply Brief of Petitioner Environmental Defense Fund on all registered counsel through the Electronic Case Filing (ECF) system for the United States Court of Appeals for the D.C. Circuit.

*/s/ Samantha Liskow*
Samantha Liskow

DATED: April 11, 2024