IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN CHEMISTRY COUNCIL, ET AL.,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Respondent.*

ON PETITIONS FOR REVIEW OF FINAL AGENCY ACTION
OF THE ENVIRONMENTAL PROTECTION AGENCY

**ADDENDUM OF STATUTES AND REGULATIONS OF
PETITIONERS AMERICAN CHEMISTRY COUNCIL AND
AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS**

David Y. Chung
Warren Lehrenbaum
Lynn T. Phan
Crowell & Moring LLP
1001 Pennsylvania
Avenue, NW
Washington, DC
20004-2595
(202) 624-2500
dchung@crowell.com

*Counsel for Petitioners
American Chemistry
Council and American
Fuel & Petrochemical
Manufacturers*

Laura Gooding
American Chemistry
Council
700 2nd Street, NE
Washington, DC 20002

*Counsel for Petitioner
American Chemistry
Council*

Richard S. Moskowitz
Tyler J. Kubik
American Fuel &
Petrochemical
Manufacturers
1800 M Street, NW,
Suite 900N
Washington, DC 20036

*Counsel for Petitioner
American Fuel &
Petrochemical
Manufacturers*

# TABLE OF CONTENTS

**Addendum Page**

**Statutes**

5 U.S.C. §552(a), (b).............................................................1

15 U.S.C. §2602...................................................................7

15 U.S.C. §2604...................................................................10

15 U.S.C. §2607...................................................................17

15 U.S.C. §2613...................................................................23

**Regulations**

40 C.F.R. §703.5..................................................................30

40 C.F.R. §711.8..................................................................37

40 C.F.R. §711.15................................................................38

40 C.F.R. §711.20................................................................49

40 C.F.R. §711.30................................................................49

40 C.F.R. §720.25................................................................53

40 C.F.R. §720.85................................................................56

40 C.F.R. §720.102..............................................................60



of the Treasury issuing the subpoena and imposing the charges.

''(2) EXPIRATION.—The reporting requirement of this subsection shall terminate in 3 years after the date of the enactment of this section [Dec. 19, 2000].''

### Executive Documents

#### EXECUTIVE ORDER NO. 13892

Ex. Ord. No. 13892, Oct. 9, 2019, 84 F.R. 55239, which related to civil administrative enforcement and adjudication, was revoked by Ex. Ord. No. 13992, § 2, Jan. 20, 2021, 86 F.R. 7049, set out below.

#### EXECUTIVE ORDER NO. 13979

Ex. Ord. No. 13979, Jan. 18, 2021, 86 F.R. 6813, which required senior appointee participation in agency rule-making, was revoked by Ex. Ord. No. 14018, § 1, Feb. 24, 2021, 86 F.R. 11855.

EX. ORD. NO. 13992. REVOCATION OF CERTAIN EXECUTIVE ORDERS CONCERNING FEDERAL REGULATION

Ex. Ord. No. 13992, Jan. 20, 2021, 86 F.R. 7049, provided:

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered that:

SECTION 1. *Policy.* It is the policy of my Administration to use available tools to confront the urgent challenges facing the Nation, including the coronavirus disease 2019 (COVID–19) pandemic, economic recovery, racial justice, and climate change. To tackle these challenges effectively, executive departments and agencies (agencies) must be equipped with the flexibility to use robust regulatory action to address national priorities. This order revokes harmful policies and directives that threaten to frustrate the Federal Government's ability to confront these problems, and empowers agencies to use appropriate regulatory tools to achieve these goals.

SEC. 2. *Revocation of Orders.* Executive Order 13771 of January 30, 2017 (Reducing Regulation and Controlling Regulatory Costs) [former 5 U.S.C. 601 note], Executive Order 13777 of February 24, 2017 (Enforcing the Regulatory Reform Agenda) [former 5 U.S.C. 601 note], Executive Order 13875 of June 14, 2019 (Evaluating and Improving the Utility of Federal Advisory Committees) [former 5 U.S.C. App. note], Executive Order 13891 of October 9, 2019 (Promoting the Rule of Law Through Improved Agency Guidance Documents) [former 5 U.S.C. 601 note], Executive Order 13892 of October 9, 2019 (Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication) [formerly set out above], and Executive Order 13893 of October 10, 2019 (Increasing Government Accountability for Administrative Actions by Reinvigorating Administrative PAYGO) [former 5 U.S.C. 601 note], are hereby revoked.

SEC. 3. *Implementation.* The Director of the Office of Management and Budget and the heads of agencies shall promptly take steps to rescind any orders, rules, regulations, guidelines, or policies, or portions thereof, implementing or enforcing the Executive Orders identified in section 2 of this order, as appropriate and consistent with applicable law, including the Administrative Procedure Act, 5 U.S.C. 551 *et seq.* If in any case such rescission cannot be finalized immediately, the Director and the heads of agencies shall promptly take steps to provide all available exemptions authorized by any such orders, rules, regulations, guidelines, or policies, as appropriate and consistent with applicable law. In addition, any personnel positions, committees, task forces, or other entities established pursuant to the Executive Orders identified in section 2 of this order, including the regulatory reform officer positions and regulatory reform task forces established by sections 2 and 3 of Executive Order 13777 [former 5 U.S.C. 601 note], shall be abolished, as appropriate and consistent with applicable law.

SEC. 4. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented in a manner consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

J.R. BIDEN, JR.

### § 552. Public information; agency rules, opinions, orders, records, and proceedings

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

(2) Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

(C) administrative staff manuals and instructions to staff that affect a member of the public;

(D) copies of all records, regardless of form or format—

(i) that have been released to any person under paragraph (3); and

(ii)(I) that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or

(II) that have been requested 3 or more times; and

(E) a general index of the records referred to under subparagraph (D);

unless the materials are promptly published and copies offered for sale. For records created on or after November 1, 1996, within one year after such date, each agency shall make such records available, including by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means. To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in subparagraph (D). However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made. If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made. Each agency shall also maintain and make available for public inspection in an electronic format current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published. Each agency shall promptly publish, quarterly or more frequently, and distribute (by sale or otherwise) copies of each index or supplements thereto unless it determines by order published in the Federal Register that the publication would be unnecessary and impracticable, in which case the agency shall nonetheless provide copies of such index on request at a cost not to exceed the direct cost of duplication. Each agency shall make the index referred to in subparagraph (E) available by computer telecommunications by December 31, 1999. A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if—

(i) it has been indexed and either made available or published as provided by this paragraph; or

(ii) the party has actual and timely notice of the terms thereof.

(3)(A) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

(B) In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

(C) In responding under this paragraph to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system.

(D) For purposes of this paragraph, the term "search" means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request.

(E) An agency, or part of an agency, that is an element of the intelligence community (as that term is defined in section 3(4) of the National Security Act of 1947 (50 U.S.C. 401a(4)))[1] shall not make any record available under this paragraph to—

(i) any government entity, other than a State, territory, commonwealth, or district of the United States, or any subdivision thereof; or

(ii) a representative of a government entity described in clause (i).

(4)(A)(i) In order to carry out the provisions of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced. Such schedule shall conform to the guidelines which shall be promulgated, pursuant to notice and receipt of public comment, by the Director of the Office of Management and Budget and which shall provide for a uniform schedule of fees for all agencies.

(ii) Such agency regulations shall provide that—

(I) fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;

(II) fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media; and

(III) for any request not described in (I) or (II), fees shall be limited to reasonable standard charges for document search and duplication.

In this clause, the term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and

---

[1] See References in Text note below.

distributes that work to an audience. In this clause, the term ''news'' means information that is about current events or that would be of current interest to the public. Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify as disseminators of ''news'') who make their products available for purchase by or subscription by or free distribution to the general public. These examples are not all-inclusive. Moreover, as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities. A freelance journalist shall be regarded as working for a news-media entity if the journalist can demonstrate a solid basis for expecting publication through that entity, whether or not the journalist is actually employed by the entity. A publication contract would present a solid basis for such an expectation; the Government may also consider the past publication record of the requester in making such a determination.

(iii) Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

(iv) Fee schedules shall provide for the recovery of only the direct costs of search, duplication, or review. Review costs shall include only the direct costs incurred during the initial examination of a document for the purposes of determining whether the documents must be disclosed under this section and for the purposes of withholding any portions exempt from disclosure under this section. Review costs may not include any costs incurred in resolving issues of law or policy that may be raised in the course of processing a request under this section. No fee may be charged by any agency under this section—

(I) if the costs of routine collection and processing of the fee are likely to equal or exceed the amount of the fee; or

(II) for any request described in clause (ii) (II) or (III) of this subparagraph for the first two hours of search time or for the first one hundred pages of duplication.

(v) No agency may require advance payment of any fee unless the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250.

(vi) Nothing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records.

(vii) In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: *Provided*, That the court's review of the matter shall be limited to the record before the agency.

(viii)(I) Except as provided in subclause (II), an agency shall not assess any search fees (or in the case of a requester described under clause (ii)(II)

of this subparagraph, duplication fees) under this subparagraph if the agency has failed to comply with any time limit under paragraph (6).

(II)(aa) If an agency has determined that unusual circumstances apply (as the term is defined in paragraph (6)(B)) and the agency provided a timely written notice to the requester in accordance with paragraph (6)(B), a failure described in subclause (I) is excused for an additional 10 days. If the agency fails to comply with the extended time limit, the agency may not assess any search fees (or in the case of a requester described under clause (ii)(II) of this subparagraph, duplication fees).

(bb) If an agency has determined that unusual circumstances apply and more than 5,000 pages are necessary to respond to the request, an agency may charge search fees (or in the case of a requester described under clause (ii)(II) of this subparagraph, duplication fees) if the agency has provided a timely written notice to the requester in accordance with paragraph (6)(B) and the agency has discussed with the requester via written mail, electronic mail, or telephone (or made not less than 3 good-faith attempts to do so) how the requester could effectively limit the scope of the request in accordance with paragraph (6)(B)(ii).

(cc) If a court has determined that exceptional circumstances exist (as that term is defined in paragraph (6)(C)), a failure described in subclause (I) shall be excused for the length of time provided by the court order.

(B) On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

(C) Notwithstanding any other provision of law, the defendant shall serve an answer or otherwise plead to any complaint made under this subsection within thirty days after service upon the defendant of the pleading in which such complaint is made, unless the court otherwise directs for good cause shown.

[(D) Repealed. Pub. L. 98–620, title IV, § 402(2), Nov. 8, 1984, 98 Stat. 3357.]

(E)(i) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

(ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—

(I) a judicial order, or an enforceable written agreement or consent decree; or

(II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

(F)(i) Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding. The Special Counsel, after investigation and consideration of the evidence submitted, shall submit his findings and recommendations to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative. The administrative authority shall take the corrective action that the Special Counsel recommends.

(ii) The Attorney General shall—

(I) notify the Special Counsel of each civil action described under the first sentence of clause (i); and

(II) annually submit a report to Congress on the number of such civil actions in the preceding year.

(iii) The Special Counsel shall annually submit a report to Congress on the actions taken by the Special Counsel under clause (i).

(G) In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee, and in the case of a uniformed service, the responsible member.

(5) Each agency having more than one member shall maintain and make available for public inspection a record of the final votes of each member in every agency proceeding.

(6)(A) Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—

(i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of—

(I) such determination and the reasons therefor;

(II) the right of such person to seek assistance from the FOIA Public Liaison of the agency; and

(III) in the case of an adverse determination—

(aa) the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination; and

(bb) the right of such person to seek dispute resolution services from the FOIA Public Liaison of the agency or the Office of Government Information Services; and

(ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

The 20-day period under clause (i) shall commence on the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this section to receive requests under this section. The 20-day period shall not be tolled by the agency except—

(I) that the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section; or

(II) if necessary to clarify with the requester issues regarding fee assessment. In either case, the agency's receipt of the requester's response to the agency's request for information or clarification ends the tolling period.

(B)(i) In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days, except as provided in clause (ii) of this subparagraph.

(ii) With respect to a request for which a written notice under clause (i) extends the time limits prescribed under clause (i) of subparagraph (A), the agency shall notify the person making the request if the request cannot be processed within the time limit specified in that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request. To aid the requester, each agency shall make available its FOIA Public Liaison, who shall assist in the resolution of any disputes between the requester and the agency, and notify the requester of the right of the requester to seek dispute resolution services from the Office of Government Information Services. Refusal by the person to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist for purposes of subparagraph (C).

(iii) As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests—

(I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

(II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

(iv) Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for the aggregation of certain requests by the same requestor, or by a group of requestors acting in concert, if the agency reasonably believes that such requests actually constitute a single request, which would otherwise satisfy the unusual circumstances specified in this subparagraph, and the requests involve clearly related matters. Multiple requests involving unrelated matters shall not be aggregated.

(C)(i) Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request. Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request.

(ii) For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

(iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

(D)(i) Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for multitrack processing of requests for records based on the amount of work or time (or both) involved in processing requests.

(ii) Regulations under this subparagraph may provide a person making a request that does not qualify for the fastest multitrack processing an opportunity to limit the scope of the request in order to qualify for faster processing.

(iii) This subparagraph shall not be considered to affect the requirement under subparagraph (C) to exercise due diligence.

(E)(i) Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records—

(I) in cases in which the person requesting the records demonstrates a compelling need; and

(II) in other cases determined by the agency.

(ii) Notwithstanding clause (i), regulations under this subparagraph must ensure—

(I) that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request; and

(II) expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing.

(iii) An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing under this subparagraph. Agency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

(iv) A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request.

(v) For purposes of this subparagraph, the term "compelling need" means—

(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

(vi) A demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief.

(F) In denying a request for records, in whole or in part, an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request, unless providing such estimate would harm an interest protected by the exemption in subsection (b) pursuant to which the denial is made.

(7) Each agency shall—

(A) establish a system to assign an individualized tracking number for each request received that will take longer than ten days to process and provide to each person making a request the tracking number assigned to the request; and

(B) establish a telephone line or Internet service that provides information about the status of a request to the person making the

request using the assigned tracking number, including—

    (i) the date on which the agency originally received the request; and

    (ii) an estimated date on which the agency will complete action on the request.

(8)(A) An agency shall—

    (i) withhold information under this section only if—

       (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

       (II) disclosure is prohibited by law; and

    (ii)(I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

    (II) take reasonable steps necessary to segregate and release nonexempt information; and

(B) Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3).

(b) This section does not apply to matters that are—

    (1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

    (2) related solely to the internal personnel rules and practices of an agency;

    (3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—

       (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

       (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

    (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

    (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

    (5) inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested;

    (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

    (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

    (8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

    (9) geological and geophysical information and data, including maps, concerning wells.

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

(c)(1) Whenever a request is made which involves access to records described in subsection (b)(7)(A) and—

    (A) the investigation or proceeding involves a possible violation of criminal law; and

    (B) there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings,

the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.

(2) Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.

(3) Whenever a request is made which involves access to records maintained by the Federal Bureau of Investigation pertaining to foreign intelligence or counterintelligence, or international terrorism, and the existence of the records is classified information as provided in subsection (b)(1), the Bureau may, as long as the existence of the records remains classified information,

SHORT TITLE OF 1986 AMENDMENT

Pub. L. 99–519, §1, Oct. 22, 1986, 100 Stat. 2970, provided that: "This Act [enacting sections 2641 to 2654 of this title and section 4022 of Title 20, Education, amending sections 2614, 2618, and 2619 of this title and sections 4014 and 4021 of Title 20, and enacting provisions set out as a note under section 4014 of Title 20] may be cited as the 'Asbestos Hazard Emergency Response Act of 1986'."

SHORT TITLE

Pub. L. 94–469, §1, Oct. 11, 1976, 90 Stat. 2003; renumbered title I, Pub. L. 99–519, §3(c), Oct. 22, 1986, 100 Stat. 2989, provided that: "This Act [enacting this chapter and provisions set out as notes under this section] may be cited as the 'Toxic Substances Control Act'."

MODIFICATION OF DEFINITION OF SPORT FISHING EQUIPMENT UNDER TOXIC SUBSTANCES CONTROL ACT

Pub. L. 116–188, title I, §108, Oct. 30, 2020, 134 Stat. 920, provided that:

"(a) PROHIBITION.—During the 5-year period beginning on the date of enactment of this Act [Oct. 30, 2020], the Administrator of the Environmental Protection Agency shall not take any action to regulate the lead content of sport fishing equipment or sport fishing equipment components under the Toxic Substances Control Act (15 U.S.C. 2601 et seq.).

"(b) DEFINITION OF SPORT FISHING EQUIPMENT.—In this section, the term 'sport fishing equipment' means any sport fishing equipment (as such term is defined in section 4162(a) of the Internal Revenue Code of 1986 [26 U.S.C. 4162(a)]) the sale of which is subject to the tax imposed by section 4161(a) of such Code [26 U.S.C. 4161(a)] (determined without regard to any exemptions from such tax provided by section 4162 or 4221 or any other provision of such Code [26 U.S.C. 4162, 4221])."

NO RETROACTIVITY OF PUB. L. 114–182 AMENDMENTS

Pub. L. 114–182, title I, §20, June 22, 2016, 130 Stat. 510, provided that: "Nothing in sections 1 through 19 [amending this section, sections 2602 to 2611, 2613 to 2615, 2617 to 2620, 2623, 2625 to 2627, and 2629 of this title, and section 6939f of Title 42, The Public Health and Welfare, repealing section 2624 of this title, and enacting provisions set out as a note under this section], or the amendments made by sections 1 through 19, shall be interpreted to apply retroactively to any State, Federal, or maritime legal action filed before the date of enactment of this Act [June 22, 2016]."

Executive Documents

FEDERAL COMPLIANCE WITH POLLUTION CONTROL STANDARDS

For provisions relating to the responsibility of the head of each Executive agency for compliance with applicable pollution control standards, see Ex. Ord. No. 12088, Oct. 13, 1978, 43 F.R. 47707, set out as a note under section 4321 of Title 42, The Public Health and Welfare.

§ 2602. Definitions

As used in this chapter:

(1) the[1] term "Administrator" means the Administrator of the Environmental Protection Agency.

(2)(A) Except as provided in subparagraph (B), the term "chemical substance" means any organic or inorganic substance of a particular molecular identity, including—

(i) any combination of such substances occurring in whole or in part as a result of a chemical reaction or occurring in nature, and

(ii) any element or uncombined radical.

(B) Such term does not include—
(i) any mixture,
(ii) any pesticide (as defined in the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C. 136 et seq.]) when manufactured, processed, or distributed in commerce for use as a pesticide,
(iii) tobacco or any tobacco product,
(iv) any source material, special nuclear material, or byproduct material (as such terms are defined in the Atomic Energy Act of 1954 [42 U.S.C. 2011 et seq.] and regulations issued under such Act),
(v) any article the sale of which is subject to the tax imposed by section 4181 of the Internal Revenue Code of 1986 [26 U.S.C. 4181] (determined without regard to any exemptions from such tax provided by section 4182 or 4221 or any other provision of such Code) and any component of such an article (limited to shot shells, cartridges, and components of shot shells and cartridges), and
(vi) any food, food additive, drug, cosmetic, or device (as such terms are defined in section 201 of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 321]) when manufactured, processed, or distributed in commerce for use as a food, food additive, drug, cosmetic, or device.

The term "food" as used in clause (vi) of this subparagraph includes poultry and poultry products (as defined in sections 4(e) and 4(f) of the Poultry Products Inspection Act [21 U.S.C. 453(e) and (f)]), meat and meat food products (as defined in section 1(j) of the Federal Meat Inspection Act [21 U.S.C. 601(j)]), and eggs and egg products (as defined in section 4 of the Egg Products Inspection Act [21 U.S.C. 1033]).

(3) The term "commerce" means trade, traffic, transportation, or other commerce (A) between a place in a State and any place outside of such State, or (B) which affects trade, traffic, transportation, or commerce described in clause (A).

(4) The term "conditions of use" means the circumstances, as determined by the Administrator, under which a chemical substance is intended, known, or reasonably foreseen to be manufactured, processed, distributed in commerce, used, or disposed of.

(5) The terms "distribute in commerce" and "distribution in commerce" when used to describe an action taken with respect to a chemical substance or mixture or article containing a substance or mixture mean to sell, or the sale of, the substance, mixture, or article in commerce; to introduce or deliver for introduction into commerce, or the introduction or delivery for introduction into commerce of, the substance, mixture, or article; or to hold, or the holding of, the substance, mixture, or article after its introduction into commerce.

(6) The term "environment" includes water, air, and land and the interrelationship which exists among and between water, air, and land and all living things.

(7) The term "guidance" means any significant written guidance of general applicability prepared by the Administrator.

(8) The term "health and safety study" means any study of any effect of a chemical substance or mixture on health or the environment or on both, including underlying information and epi-

---

[1] So in original. Probably should be capitalized.

demiological studies, studies of occupational exposure to a chemical substance or mixture, toxicological, clinical, and ecological studies of a chemical substance or mixture, and any test performed pursuant to this chapter.

(9) The term ''manufacture'' means to import into the customs territory of the United States (as defined in general note 2 of the Harmonized Tariff Schedule of the United States), produce, or manufacture.

(10) The term ''mixture'' means any combination of two or more chemical substances if the combination does not occur in nature and is not, in whole or in part, the result of a chemical reaction; except that such term does include any combination which occurs, in whole or in part, as a result of a chemical reaction if none of the chemical substances comprising the combination is a new chemical substance and if the combination could have been manufactured for commercial purposes without a chemical reaction at the time the chemical substances comprising the combination were combined.

(11) The term ''new chemical substance'' means any chemical substance which is not included in the chemical substance list compiled and published under section 2607(b) of this title.

(12) The term ''potentially exposed or susceptible subpopulation'' means a group of individuals within the general population identified by the Administrator who, due to either greater susceptibility or greater exposure, may be at greater risk than the general population of adverse health effects from exposure to a chemical substance or mixture, such as infants, children, pregnant women, workers, or the elderly.

(13) The term ''process'' means the preparation of a chemical substance or mixture, after its manufacture, for distribution in commerce—

(A) in the same form or physical state as, or in a different form or physical state from, that in which it was received by the person so preparing such substance or mixture, or

(B) as part of an article containing the chemical substance or mixture.

(14) The term ''processor'' means any person who processes a chemical substance or mixture.

(15) The term ''protocols and methodologies for the development of information'' means a prescription of—

(A) the—

(i) health and environmental effects, and

(ii) information relating to toxicity, persistence, and other characteristics which affect health and the environment,

for which information for a chemical substance or mixture are to be developed and any analysis that is to be performed on such information, and

(B) to the extent necessary to assure that information respecting such effects and characteristics are reliable and adequate—

(i) the manner in which such information are[2] to be developed,

(ii) the specification of any test protocol or methodology to be employed in the development of such information, and

(iii) such other requirements as are necessary to provide such assurance.

(16) The term ''State'' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the Canal Zone, American Samoa, the Northern Mariana Islands, or any other territory or possession of the United States.

(17) The term ''United States'', when used in the geographic sense, means all of the States.

(Pub. L. 94–469, title I, §3, Oct. 11, 1976, 90 Stat. 2004; Pub. L. 99–514, §2, Oct. 22, 1986, 100 Stat. 2095; renumbered title I, Pub. L. 99–519, §3(c)(1), Oct. 22, 1986, 100 Stat. 2989; Pub. L. 100–418, title I, §1214(e)(1), Aug. 23, 1988, 102 Stat. 1156; Pub. L. 114–92, div. A, title III, §315, Nov. 25, 2015, 129 Stat. 791; Pub. L. 114–182, title I, §§3, 19(c), June 22, 2016, 130 Stat. 448, 505.)

### Editorial Notes

#### References in Text

The Federal Insecticide, Fungicide, and Rodenticide Act, referred to in par. (2)(B)(ii), is act June 25, 1947, ch. 125, as amended generally by Pub. L. 92–516, Oct. 21, 1972, 86 Stat. 973, which is classified generally to subchapter II (§136 et seq.) of chapter 6 of Title 7, Agriculture. For complete classification of this Act to the Code, see Short Title note set out under section 136 of Title 7 and Tables.

The Atomic Energy Act of 1954, referred to in par. (2)(B)(iv), is act Aug. 1, 1946, ch. 724, as added by act Aug. 30, 1954, ch. 1073, §1, 68 Stat. 919, and amended, which is classified principally to chapter 23 (§2011 et seq.) of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 2011 of Title 42 and Tables.

The Harmonized Tariff Schedule of the United States, referred to in par. (9), is not set out in the Code. See Publication of Harmonized Tariff Schedule note set out under section 1202 of Title 19, Customs Duties.

For definition of Canal Zone, Governor of the Canal Zone, and Panama Canal Company, referred to in par. (16), see section 3602(b) of Title 22, Foreign Relations and Intercourse.

#### Amendments

2016—Pars. (4) to (7). Pub. L. 114–182, §3(1)–(3), added pars. (4) and (7) and redesignated former pars. (4) and (5) as (5) and (6), respectively. Former pars. (6) and (7) redesignated (8) and (9), respectively.

Par. (8). Pub. L. 114–182, §19(c)(1), substituted ''information'' for ''data''.

Pub. L. 114–182, §3(1), redesignated par. (6) as (8). Former par. (8) redesignated (10).

Pars. (9) to (14). Pub. L. 114–182, §3(1), (4), added par. (12) and redesignated former pars. (7) to (11) as (9), (10), (11), (13), and (14), respectively. Former pars. (12) to (14) redesignated (15) to (17), respectively.

Par. (15). Pub. L. 114–182, §19(c)(2)(A), (B), in introductory provisions, substituted ''protocols and methodologies for the development of information'' for ''standards for the development of test data''.

Pub. L. 114–182, §3(1), redesignated par. (12) as (15).

Par. (15)(A). Pub. L. 114–182, §19(c)(2)(C), substituted ''on such information'' for ''on such data'' in concluding provisions.

Pub. L. 114–182, §19(c)(2)(B), substituted ''for which information'' for ''for which test data'' in concluding provisions.

Par. (15)(B). Pub. L. 114–182, §19(c)(2)(C), substituted ''information'' for ''data'' wherever appearing.

Pars. (16), (17). Pub. L. 114–182, §3(1), redesignated pars. (13) and (14) as (16) and (17), respectively.

2015—Par. (2)(B)(v). Pub. L. 114–92 substituted ''and any component of such an article (limited to shot shells, cartridges, and components of shot shells and cartridges), and'' for '', and''.

---

[2] So in original. Probably should be ''is''.

1988—Par. (7). Pub. L. 100–418 substituted ''general note 2 of the Harmonized Tariff Schedule of the United States'' for ''general headnote 2 of the Tariff Schedules of the United States''.

1986—Par. (2)(B)(v). Pub. L. 99–514 substituted ''Internal Revenue Code of 1986'' for ''Internal Revenue Code of 1954''.

#### Statutory Notes and Related Subsidiaries

##### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–418 effective Jan. 1, 1989, and applicable with respect to articles entered on or after such date, see section 1217(b)(1) of Pub. L. 100–418, set out as an Effective Date note under section 3001 of Title 19, Customs Duties.

##### EFFECTIVE DATE

Section effective Jan. 1, 1977, see section 31 of Pub. L. 94–469, set out as a note under section 2601 of this title.

### § 2603. Testing of chemical substances and mixtures

#### (a) Testing requirements

(1) If the Administrator finds that—

(A)(i)(I) the manufacture, distribution in commerce, processing, use, or disposal of a chemical substance or mixture, or that any combination of such activities, may present an unreasonable risk of injury to health or the environment,

(II) there is insufficient information and experience upon which the effects of such manufacture, distribution in commerce, processing, use, or disposal of such substance or mixture or of any combination of such activities on health or the environment can reasonably be determined or predicted, and

(III) testing of such substance or mixture with respect to such effects is necessary to develop such information; or

(ii)(I) a chemical substance or mixture is or will be produced in substantial quantities, and (aa) it enters or may reasonably be anticipated to enter the environment in substantial quantities or (bb) there is or may be significant or substantial human exposure to such substance or mixture,

(II) there is insufficient information and experience upon which the effects of the manufacture, distribution in commerce, processing, use, or disposal of such substance or mixture or of any combination of such activities on health or the environment can reasonably be determined or predicted, and

(III) testing of such substance or mixture with respect to such effects is necessary to develop such information; and

(B) in the case of a mixture, the effects which the mixture's manufacture, distribution in commerce, processing, use, or disposal or any combination of such activities may have on health or the environment may not be reasonably and more efficiently determined or predicted by testing the chemical substances which comprise the mixture;

the Administrator shall by rule, or, in the case of a chemical substance or mixture described in subparagraph (A)(i), by rule, order, or consent agreement, require that testing be conducted on such substance or mixture to develop informa-

tion with respect to the health and environmental effects for which there is an insufficiency of information and experience and which is relevant to a determination that the manufacture, distribution in commerce, processing, use, or disposal of such substance or mixture, or that any combination of such activities, does or does not present an unreasonable risk of injury to health or the environment.

(2) ADDITIONAL TESTING AUTHORITY.—In addition to the authority provided under paragraph (1), the Administrator may, by rule, order, or consent agreement—

(A) require the development of new information relating to a chemical substance or mixture if the Administrator determines that the information is necessary—

(i) to review a notice under section 2604 of this title or to perform a risk evaluation under section 2605(b) of this title;

(ii) to implement a requirement imposed in a rule, order, or consent agreement under subsection (e) or (f) of section 2604 of this title or in a rule promulgated under section 2605(a) of this title;

(iii) at the request of a Federal implementing authority under another Federal law, to meet the regulatory testing needs of that authority with regard to toxicity and exposure; or

(iv) pursuant to section 2611(a)(2) of this title; and

(B) require the development of new information for the purposes of prioritizing a chemical substance under section 2605(b) of this title only if the Administrator determines that such information is necessary to establish the priority of the substance, subject to the limitations that—

(i) not later than 90 days after the date of receipt of information regarding a chemical substance complying with a rule, order, or consent agreement under this subparagraph, the Administrator shall designate the chemical substance as a high-priority substance or a low-priority substance; and

(ii) information required by the Administrator under this subparagraph shall not be required for the purposes of establishing or implementing a minimum information requirement of broader applicability.

(3) STATEMENT OF NEED.—When requiring the development of new information relating to a chemical substance or mixture under paragraph (2), the Administrator shall identify the need for the new information, describe how information reasonably available to the Administrator was used to inform the decision to require new information, explain the basis for any decision that requires the use of vertebrate animals, and, as applicable, explain why issuance of an order is warranted instead of promulgating a rule or entering into a consent agreement.

(4) TIERED TESTING.—When requiring the development of new information under this subsection, the Administrator shall employ a tiered screening and testing process, under which the results of screening-level tests or assessments of available information inform the decision as to whether 1 or more additional tests are nec-

Subsec. (e)(1)(A)(vi), (vii). Pub. L. 114–182, § 4(6)(A)(i)(II), substituted "information" for "data".

Subsec. (e)(1)(B). Pub. L. 114–182, § 4(6)(A)(ii), substituted "issue an order, enter into a consent agreement, or initiate a rulemaking proceeding under subsection (a), or, if such an order or consent agreement is not issued or such a proceeding is not initiated within such period, publish in the Federal Register the Administrator's reason for not issuing such an order, entering into such a consent agreement, or initiating such a proceeding" for "either initiate a rulemaking proceeding under subsection (a) or if such a proceeding is not initiated within such period, publish in the Federal Register the Administrator's reason for not initiating such a proceeding".

Subsec. (e)(2)(A). Pub. L. 114–182, § 4(6)(B)(i), substituted "ten members" for "eight members" in introductory provisions.

Subsec. (e)(2)(A)(ix), (x). Pub. L. 114–182, § 4(6)(B)(ii), added cls. (ix) and (x).

Subsec. (f). Pub. L. 114–182, § 4(7)(B), in concluding provisions, struck out "or will present" after "mixture presents" and "from cancer, gene mutations, or birth defects" after "human beings", substituted "applicable" for "appropriate", and inserted ", made without consideration of costs or other nonrisk factors," after "publish in the Federal Register a finding".

Subsec. (f)(1). Pub. L. 114–182, § 4(7)(A), substituted "information" for "test data".

Subsec. (g). Pub. L. 114–182, § 19(d)(4), substituted "rule, order, or consent agreement" for "rule".

Pub. L. 114–182, § 4(8), substituted "Petition for protocols and methodologies for the development of information" for "Petition for standards for the development of test data" in heading and "submit information" for "submit data" and "development of information" for "development of test data" in text.

Pub. L. 114–182, § 4(1), substituted "protocols and methodologies" for "standards" in two places.

Subsec. (h). Pub. L. 114–182, § 4(9), added subsec. (h).

#### Statutory Notes and Related Subsidiaries

##### Effective Date

Section effective Jan. 1, 1977, except as provided in subsec. (f) of this section, see section 31 of Pub. L. 94–469, set out as a note under section 2601 of this title.

### § 2604. Manufacturing and processing notices

#### (a) In general

(1)(A) Except as provided in subparagraph (B) of this paragraph and subsection (h), no person may—

　(i) manufacture a new chemical substance on or after the 30th day after the date on which the Administrator first publishes the list required by section 2607(b) of this title, or

　(ii) manufacture or process any chemical substance for a use which the Administrator has determined, in accordance with paragraph (2), is a significant new use.

(B) A person may take the actions described in subparagraph (A) if—

　(i) such person submits to the Administrator, at least 90 days before such manufacture or processing, a notice, in accordance with subsection (d), of such person's intention to manufacture or process such substance and such person complies with any applicable requirement of, or imposed pursuant to, subsection (b), (e), or (f); and

　(ii) the Administrator—

　　(I) conducts a review of the notice; and

　　(II) makes a determination under subparagraph (A), (B), or (C) of paragraph (3) and takes the actions required in association with that determination under such subparagraph within the applicable review period.

(2) A determination by the Administrator that a use of a chemical substance is a significant new use with respect to which notification is required under paragraph (1) shall be made by a rule promulgated after a consideration of all relevant factors, including—

　(A) the projected volume of manufacturing and processing of a chemical substance,

　(B) the extent to which a use changes the type or form of exposure of human beings or the environment to a chemical substance,

　(C) the extent to which a use increases the magnitude and duration of exposure of human beings or the environment to a chemical substance, and

　(D) the reasonably anticipated manner and methods of manufacturing, processing, distribution in commerce, and disposal of a chemical substance.

(3) Review and determination.—Within the applicable review period, subject to section 2617 of this title, the Administrator shall review such notice and determine—

　(A) that the relevant chemical substance or significant new use presents an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant by the Administrator under the conditions of use, in which case the Administrator shall take the actions required under subsection (f);

　(B) that—

　　(i) the information available to the Administrator is insufficient to permit a reasoned evaluation of the health and environmental effects of the relevant chemical substance or significant new use; or

　　(ii)(I) in the absence of sufficient information to permit the Administrator to make such an evaluation, the manufacture, processing, distribution in commerce, use, or disposal of such substance, or any combination of such activities, may present an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant by the Administrator; or

　　(II) such substance is or will be produced in substantial quantities, and such substance either enters or may reasonably be anticipated to enter the environment in substantial quantities or there is or may be significant or substantial human exposure to the substance,

in which case the Administrator shall take the actions required under subsection (e); or

　(C) that the relevant chemical substance or significant new use is not likely to present an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant

by the Administrator under the conditions of use, in which case the submitter of the notice may commence manufacture of the chemical substance or manufacture or processing for a significant new use.

(4) FAILURE TO RENDER DETERMINATION.—

(A) FAILURE TO RENDER DETERMINATION.—If the Administrator fails to make a determination on a notice under paragraph (3) by the end of the applicable review period and the notice has not been withdrawn by the submitter, the Administrator shall refund to the submitter all applicable fees charged to the submitter for review of the notice pursuant to section 2625(b) of this title, and the Administrator shall not be relieved of any requirement to make such determination.

(B) LIMITATIONS.—(i) A refund of applicable fees under subparagraph (A) shall not be made if the Administrator certifies that the submitter has not provided information required under subsection (b) or has otherwise unduly delayed the process such that the Administrator is unable to render a determination within the applicable review period.

(ii) A failure of the Administrator to render a decision shall not be deemed to constitute a withdrawal of the notice.

(iii) Nothing in this paragraph shall be construed as relieving the Administrator or the submitter of the notice from any requirement of this section.

(5) ARTICLE CONSIDERATION.—The Administrator may require notification under this section for the import or processing of a chemical substance as part of an article or category of articles under paragraph (1)(A)(ii) if the Administrator makes an affirmative finding in a rule under paragraph (2) that the reasonable potential for exposure to the chemical substance through the article or category of articles subject to the rule justifies notification.

**(b) Submission of information**

(1)(A) If (i) a person is required by subsection (a)(1) to submit a notice to the Administrator before beginning the manufacture or processing of a chemical substance, and (ii) such person is required to submit information for such substance pursuant to a rule, order, or consent agreement under section 2603 of this title before the submission of such notice, such person shall submit to the Administrator such information in accordance with such rule, order, or consent agreement at the time notice is submitted in accordance with subsection (a)(1).

(B) If—

(i) a person is required by subsection (a)(1) to submit a notice to the Administrator, and

(ii) such person has been granted an exemption under section 2603(c) of this title from the requirements of a rule or order under section 2603 of this title before the submission of such notice,

such person may not, before the expiration of the 90 day period which begins on the date of the submission in accordance with such rule of the information the submission or development of which was the basis for the exemption, manufacture such substance if such person is subject to

subsection (a)(1)(A)(i) or manufacture or process such substance for a significant new use if the person is subject to subsection (a)(1)(A)(ii).

(2)(A) If a person—

(i) is required by subsection (a)(1) to submit a notice to the Administrator before beginning the manufacture or processing of a chemical substance listed under paragraph (4), and

(ii) is not required by a rule, order, or consent agreement under section 2603 of this title before the submission of such notice to submit information for such substance,

such person may submit to the Administrator information prescribed by subparagraph (B) at the time notice is submitted in accordance with subsection (a)(1).

(B) Information submitted pursuant to subparagraph (A) shall be information which the person submitting the information believes shows that—

(i) in the case of a substance with respect to which notice is required under subsection (a)(1)(A)(i), the manufacture, processing, distribution in commerce, use, and disposal of the chemical substance or any combination of such activities will not present an unreasonable risk of injury to health or the environment, or

(ii) in the case of a chemical substance with respect to which notice is required under subsection (a)(1)(A)(ii), the intended significant new use of the chemical substance will not present an unreasonable risk of injury to health or the environment.

(3) Information submitted under paragraph (1) or (2) of this subsection or under subsection (e) shall be made available, subject to section 2613 of this title, for examination by interested persons.

(4)(A)(i) The Administrator may, by rule, compile and keep current a list of chemical substances with respect to which the Administrator finds that the manufacture, processing, distribution in commerce, use, or disposal, or any combination of such activities, presents or may present an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors.

(ii) In making a finding under clause (i) that the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or any combination of such activities presents or may present an unreasonable risk of injury to health or the environment, the Administrator shall consider all relevant factors, including—

(I) the effects of the chemical substance on health and the magnitude of human exposure to such substance; and

(II) the effects of the chemical substance on the environment and the magnitude of environmental exposure to such substance.

(B) The Administrator shall, in prescribing a rule under subparagraph (A) which lists any chemical substance, identify those uses, if any, which the Administrator determines, by rule under subsection (a)(2), would constitute a significant new use of such substance.

(C) Any rule under subparagraph (A), and any substantive amendment or repeal of such a rule,

shall be promulgated pursuant to the procedures specified in section 553 of title 5.

**(c) Extension of review period**

The Administrator may for good cause extend for additional periods (not to exceed in the aggregate 90 days) the period, prescribed by subsection (a) or (b). Subject to section 2613 of this title, such an extension and the reasons therefor shall be published in the Federal Register and shall constitute a final agency action subject to judicial review.

**(d) Content of notice; publications in the Federal Register**

(1) The notice required by subsection (a) shall include—

(A) insofar as known to the person submitting the notice or insofar as reasonably ascertainable, the information described in subparagraphs (A), (B), (C), (D), (F), and (G) of section 2607(a)(2) of this title, and

(B) in such form and manner as the Administrator may prescribe, any information in the possession or control of the person giving such notice which are related to the effect of any manufacture, processing, distribution in commerce, use, or disposal of such substance or any article containing such substance, or of any combination of such activities, on health or the environment, and

(C) a description of any other information concerning the environmental and health effects of such substance, insofar as known to the person making the notice or insofar as reasonably ascertainable.

Such a notice shall be made available, subject to section 2613 of this title, for examination by interested persons.

(2) Subject to section 2613 of this title, not later than five days (excluding Saturdays, Sundays and legal holidays) after the date of the receipt of a notice under subsection (a) or of information under subsection (b), the Administrator shall publish in the Federal Register a notice which—

(A) identifies the chemical substance for which notice or information has been received;

(B) lists the uses of such substance identified in the notice; and

(C) in the case of the receipt of information under subsection (b), describes the nature of the tests performed on such substance and any information which was developed pursuant to subsection (b) or a rule, order, or consent agreement under section 2603 of this title.

A notice under this paragraph respecting a chemical substance shall identify the chemical substance by generic class unless the Administrator determines that more specific identification is required in the public interest.

(3) At the beginning of each month the Administrator shall publish a list in the Federal Register of (A) each chemical substance for which notice has been received under subsection (a) and for which the applicable review period has not expired, and (B) each chemical substance for which such period has expired since the last publication in the Federal Register of such list.

**(e) Regulation pending development of information**

(1)[1](A) If the Administrator determines that—

(i) the information available to the Administrator is insufficient to permit a reasoned evaluation of the health and environmental effects of a chemical substance with respect to which notice is required by subsection (a); or

(ii)(I) in the absence of sufficient information to permit the Administrator to make such an evaluation, the manufacture, processing, distribution in commerce, use, or disposal of such substance, or any combination of such activities, may present an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed subpopulation identified as relevant by the Administrator under the conditions of use; or

(II) such substance is or will be produced in substantial quantities, and such substance either enters or may reasonably be anticipated to enter the environment in substantial quantities or there is or may be significant or substantial human exposure to the substance,

the Administrator shall issue an order, to take effect on the expiration of the applicable review period, to prohibit or limit the manufacture, processing, distribution in commerce, use, or disposal of such substance or to prohibit or limit any combination of such activities to the extent necessary to protect against an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant by the Administrator under the conditions of use, and the submitter of the notice may commence manufacture of the chemical substance, or manufacture or processing of the chemical substance for a significant new use, including while any required information is being developed, only in compliance with the order.

(B) An order may not be issued under subparagraph (A) respecting a chemical substance (i) later than 45 days before the expiration of the applicable review period, and (ii) unless the Administrator has, on or before the issuance of the order, notified, in writing, each manufacturer or processor, as the case may be, of such substance of the determination which underlies such order.

**(f) Protection against unreasonable risks**

(1) If the Administrator determines that a chemical substance or significant new use with respect to which notice is required by subsection (a) presents an unreasonable risk of injury to health or environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed subpopulation identified as relevant by the Administrator under the conditions of use, the Administrator shall, before the expiration of the applicable review period, take the action authorized by paragraph (2) or (3) to the extent necessary to protect against such risk.

---

[1] So in original. There is no par. (2).

(2) The Administrator may issue a proposed rule under section 2605(a) of this title to apply to a chemical substance with respect to which a finding was made under paragraph (1)—

(A) a requirement limiting the amount of such substance which may be manufactured, processed, or distributed in commerce,

(B) a requirement described in paragraph (2), (3), (4), (5), (6), or (7) of section 2605(a) of this title, or

(C) any combination of the requirements referred to in subparagraph (B).

Such a proposed rule shall be effective upon its publication in the Federal Register. Section 2605(d)(3)(B) of this title shall apply with respect to such rule.

(3)(A) The Administrator may issue an order to prohibit or limit the manufacture, processing, or distribution in commerce of a substance with respect to which a finding was made under paragraph (1). Such order shall take effect on the expiration of the applicable review period.

(B) The provisions of subparagraph (B) of subsection (e)(1) shall apply with respect to an order issued under subparagraph (A).

(4) TREATMENT OF NONCONFORMING USES.—Not later than 90 days after taking an action under paragraph (2) or (3) or issuing an order under subsection (e) relating to a chemical substance with respect to which the Administrator has made a determination under subsection (a)(3)(A) or (B), the Administrator shall consider whether to promulgate a rule pursuant to subsection (a)(2) that identifies as a significant new use any manufacturing, processing, use, distribution in commerce, or disposal of the chemical substance that does not conform to the restrictions imposed by the action or order, and, as applicable, initiate such a rulemaking or publish a statement describing the reasons of the Administrator for not initiating such a rulemaking.

(5) WORKPLACE EXPOSURES.—To the extent practicable, the Administrator shall consult with the Assistant Secretary of Labor for Occupational Safety and Health prior to adopting any prohibition or other restriction relating to a chemical substance with respect to which the Administrator has made a determination under subsection (a)(3)(A) or (B) to address workplace exposures.

**(g) Statement on Administrator finding**

If the Administrator finds in accordance with subsection (a)(3)(C) that a chemical substance or significant new use is not likely to present an unreasonable risk of injury to health or the environment, then notwithstanding any remaining portion of the applicable review period, the submitter of the notice may commence manufacture of the chemical substance or manufacture or processing for the significant new use, and the Administrator shall make public a statement of the Administrator's finding. Such a statement shall be submitted for publication in the Federal Register as soon as is practicable before the expiration of such period. Publication of such statement in accordance with the preceding sentence is not a prerequisite to the manufacturing or processing of the substance with respect to which the statement is to be published.

**(h) Exemptions**

(1) The Administrator may, upon application, exempt any person from any requirement of subsection (a) or (b) to permit such person to manufacture or process a chemical substance for test marketing purposes—

(A) upon a showing by such person satisfactory to the Administrator that the manufacture, processing, distribution in commerce, use, and disposal of such substance, and that any combination of such activities, for such purposes will not present any unreasonable risk of injury to health or the environment, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified by the Administrator for the specific conditions of use identified in the application, and

(B) under such restrictions as the Administrator considers appropriate.

(2)(A) The Administrator may, upon application, exempt any person from the requirement of subsection (b)(2) to submit information for a chemical substance. If, upon receipt of an application under the preceding sentence, the Administrator determines that—

(i) the chemical substance with respect to which such application was submitted is equivalent to a chemical substance for which information has been submitted to the Administrator as required by subsection (b)(2), and

(ii) submission of information by the applicant on such substance would be duplicative of information which has been submitted to the Administrator in accordance with such subsection,

the Administrator shall exempt the applicant from the requirement to submit such information on such substance. No exemption which is granted under this subparagraph with respect to the submission of information for a chemical substance may take effect before the beginning of the reimbursement period applicable to such information.

(B) If the Administrator exempts any person, under subparagraph (A), from submitting information required under subsection (b)(2) for a chemical substance because of the existence of previously submitted information and if such exemption is granted during the reimbursement period for such information, then (unless such person and the persons referred to in clauses (i) and (ii) agree on the amount and method of reimbursement) the Administrator shall order the person granted the exemption to provide fair and equitable reimbursement (in an amount determined under rules of the Administrator)—

(i) to the person who previously submitted the information on which the exemption was based, for a portion of the costs incurred by such person in complying with the requirement under subsection (b)(2) to submit such information, and

(ii) to any other person who has been required under this subparagraph to contribute with respect to such costs, for a portion of the amount such person was required to contribute.

In promulgating rules for the determination of fair and equitable reimbursement to the persons

described in clauses (i) and (ii) for costs incurred with respect to a chemical substance, the Administrator shall, after consultation with the Attorney General and the Federal Trade Commission, consider all relevant factors, including the effect on the competitive position of the person required to provide reimbursement in relation to the persons to be reimbursed and the share of the market for such substance of the person required to provide reimbursement in relation to the share of such market of the persons to be reimbursed. For purposes of judicial review, an order under this subparagraph shall be considered final agency action.

(C) For purposes of this paragraph, the reimbursement period for any previously submitted information for a chemical substance is a period—

(i) beginning on the date of the termination of the prohibition, imposed under this section, on the manufacture or processing of such substance by the person who submitted such information to the Administrator, and

(ii) ending—

(I) five years after the date referred to in clause (i), or

(II) at the expiration of a period which begins on the date referred to in clause (i) and is equal to the period which the Administrator determines was necessary to develop such information,

whichever is later.

(3) The requirements of subsections (a) and (b) do not apply with respect to the manufacturing or processing of any chemical substance which is manufactured or processed, or proposed to be manufactured or processed, only in small quantities (as defined by the Administrator by rule) solely for purposes of—

(A) scientific experimentation or analysis, or

(B) chemical research on, or analysis of such substance or another substance, including such research or analysis for the development of a product,

if all persons engaged in such experimentation, research, or analysis for a manufacturer or processor are notified (in such form and manner as the Administrator may prescribe) of any risk to health which the manufacturer, processor, or the Administrator has reason to believe may be associated with such chemical substance.

(4) The Administrator may, upon application and by rule, exempt the manufacturer of any new chemical substance from all or part of the requirements of this section if the Administrator determines that the manufacture, processing, distribution in commerce, use, or disposal of such chemical substance, or that any combination of such activities, will not present an unreasonable risk of injury to health or the environment, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified by the Administrator under the conditions of use.

(5) The Administrator may, upon application, make the requirements of subsections (a) and (b) inapplicable with respect to the manufacturing or processing of any chemical substance (A) which exists temporarily as a result of a chemical reaction in the manufacturing or processing of a mixture or another chemical substance, and (B) to which there is no, and will not be, human or environmental exposure.

(6) Immediately upon receipt of an application under paragraph (1) or (5) the Administrator shall publish in the Federal Register notice of the receipt of such application. The Administrator shall give interested persons an opportunity to comment upon any such application and shall, within 45 days of its receipt, either approve or deny the application. The Administrator shall publish in the Federal Register notice of the approval or denial of such an application.

**(i) Definitions**

(1) For purposes of this section, the terms "manufacture" and "process" mean manufacturing or processing for commercial purposes.

(2) For purposes of this chapter, the term "requirement" as used in this section shall not displace any statutory or common law.

(3) For purposes of this section, the term "applicable review period" means the period starting on the date the Administrator receives a notice under subsection (a)(1) and ending 90 days after that date, or on such date as is provided for in subsection (b)(1) or (c).

(Pub. L. 94–469, title I, §5, Oct. 11, 1976, 90 Stat. 2012; renumbered title I, Pub. L. 99–519, §3(c)(1), Oct. 22, 1986, 100 Stat. 2989; amended Pub. L. 114–182, title I, §§5, 19(e), June 22, 2016, 130 Stat. 454, 506.)

**Editorial Notes**

AMENDMENTS

2016—Subsec. (a)(1). Pub. L. 114–182, §5(1)(A), designated existing provisions as subpar. (A) and redesignated former subpars. (A) and (B) as cls. (i) and (ii), respectively; substituted "Except as provided in subparagraph (B) of this paragraph and" for "Except as provided in" in introductory provisions; substituted "significant new use." for "significant new use," at end of cl. (ii); struck out concluding provisions "unless such person submits to the Administrator, at least 90 days before such manufacture or processing, a notice, in accordance with subsection (d), of such person's intention to manufacture or process such substance and such person complies with any applicable requirement of subsection (b)."; and added subpar. (B).

Subsec. (a)(3) to (5). Pub. L. 114–182, §5(1)(B), added pars. (3) to (5).

Subsec. (b). Pub. L. 114–182, §5(2)(A), substituted "information" for "test data" in heading.

Subsec. (b)(1)(A). Pub. L. 114–182, §19(e)(1)(A), substituted "a rule, order, or consent agreement" for "a rule promulgated" and "such rule, order, or consent agreement" for "such rule".

Pub. L. 114–182, §5(2)(B)(i), substituted "submit information" for "submit test data" and "such information" for "such data".

Subsec. (b)(1)(B). Pub. L. 114–182, §5(2)(B)(ii), in concluding provisions, substituted "information" for "test data", "subsection (a)(1)(A)(i)" for "subsection (a)(1)(A)", and "subsection (a)(1)(A)(ii)" for "subsection (a)(1)(B)".

Subsec. (b)(1)(B)(ii). Pub. L. 114–182, §19(e)(1)(B), substituted "rule or order" for "rule promulgated".

Subsec. (b)(2)(A). Pub. L. 114–182, §5(2)(C)(i)(I), (III), in concluding provisions, substituted "may" for "shall" and "information prescribed" for "data prescribed".

Subsec. (b)(2)(A)(ii). Pub. L. 114–182, §19(e)(1)(C), substituted "rule, order, or consent agreement" for "rule promulgated".

Pub. L. 114–182, §5(2)(C)(i)(I), substituted "information" for "test data".

Subsec. (b)(2)(B). Pub. L. 114–182, §5(2)(C)(ii)(I)–(III), in introductory provisions, substituted "Information" for "Data", "be information" for "be data", "the information" for "the data", and "shows" for "show".

Subsec. (b)(2)(B)(i). Pub. L. 114–182, §5(2)(C)(ii)(IV), substituted "subsection (a)(1)(A)(i)" for "subsection (a)(1)(A)".

Subsec. (b)(2)(B)(ii). Pub. L. 114–182, §5(2)(C)(ii)(V), substituted "subsection (a)(1)(A)(ii)" for "subsection (a)(1)(B)".

Subsec. (b)(3). Pub. L. 114–182, §5(2)(D), substituted "Information" for "Data" and "paragraph (1) or (2) of this subsection or under subsection (e)" for "paragraph (1) or (2)".

Subsec. (b)(4)(A)(i). Pub. L. 114–182, §5(2)(E)(i), inserted ", without consideration of costs or other nonrisk factors" after "health or the environment".

Subsec. (b)(4)(C). Pub. L. 114–182, §5(2)(E)(ii), struck out ", except that (i) the Administrator shall give interested persons an opportunity for the oral presentation of data, views, or arguments, in addition to an opportunity to make written submissions, (ii) a transcript shall be kept of any oral presentation, and (iii) the Administrator shall make and publish with the rule the finding described in subparagraph (A)" before period at end.

Subsec. (c). Pub. L. 114–182, §5(3), substituted "review" for "notice" in heading and struck out "before which the manufacturing or processing of a chemical substance subject to such subsection may begin" after "subsection (a) or (b)" in text.

Subsec. (d)(1)(B). Pub. L. 114–182, §5(4)(A), substituted "information" for "test data".

Subsec. (d)(1)(C). Pub. L. 114–182, §5(4)(B), substituted "information" for "data".

Subsec. (d)(2). Pub. L. 114–182, §5(4)(B), substituted "information" for "data" wherever appearing.

Subsec. (d)(2)(B). Pub. L. 114–182, §5(4)(C), substituted "uses of such substance identified in the notice" for "uses or intended uses of such substance".

Subsec. (d)(2)(C). Pub. L. 114–182, §19(e)(2), substituted "rule, order, or consent agreement" for "rule".

Subsec. (d)(3). Pub. L. 114–182, §5(4)(D), substituted "for which the applicable review period" for "for which the notification period prescribed by subsection (a), (b), or (c)" and "such period" for "such notification period".

Subsec. (e)(1)(A). Pub. L. 114–182, §5(5)(A)(iii)(III), inserted before period at end of concluding provisions "to the extent necessary to protect against an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant by the Administrator under the conditions of use, and the submitter of the notice may commence manufacture of the chemical substance, or manufacture or processing of the chemical substance for a significant new use, including while any required information is being developed, only in compliance with the order".

Pub. L. 114–182, §5(5)(A)(iii)(II), which directed substitution of "applicable review period" for "notification period applicable to the manufacturing or processing of such substance under subsection (a), (b), (c)" in concluding provisions, was executed by making the substitution for "notification period applicable to the manufacturing or processing of such substance under subsection (a), (b), or (c)" to reflect the probable intent of Congress.

Pub. L. 114–182, §5(5)(A)(iii)(I), substituted "shall issue an order" for "may issue a proposed order" in concluding provisions.

Subsec. (e)(1)(A)(i). Pub. L. 114–182, §5(5)(A)(i), substituted "; or" for "; and" at end.

Subsec. (e)(1)(A)(ii)(I). Pub. L. 114–182, §5(5)(A)(ii), inserted "without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed subpopulation identified as relevant by the Ad-

ministrator under the conditions of use;" after "health or the environment,".

Subsec. (e)(1)(B). Pub. L. 114–182, §5(5)(B)(iii), substituted "of the order" for "of the proposed order".

Pub. L. 114–182, §5(5)(B)(ii), which directed substitution of "applicable review period" for "notification period applicable to the manufacture or processing of such substance under subsection (a), (b), (c)", was executed by making the substitution for "notification period applicable to the manufacture or processing of such substance under subsection (a), (b), or (c)" to reflect the probable intent of Congress.

Pub. L. 114–182, §5(5)(B)(i), substituted "An order" for "A proposed order".

Subsec. (e)(1)(C). Pub. L. 114–182, §5(5)(C), struck out subpar. (C) which read as follows: "If a manufacturer or processor of a chemical substance to be subject to a proposed order issued under subparagraph (A) files with the Administrator (within the 30-day period beginning on the date such manufacturer or processor received the notice required by subparagraph (B)(ii)) objections specifying with particularity the provisions of the order deemed objectionable and stating the grounds therefor, the proposed order shall not take effect."

Subsec. (e)(2). Pub. L. 114–182, §5(5)(D), struck out par. (2) which related to injunctions to prohibit or limit the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance.

Subsec. (f)(1). Pub. L. 114–182, §5(6)(A), substituted "determines that a chemical substance or significant new use with" for "finds that there is a reasonable basis to conclude that the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance with", ", without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed subpopulation identified as relevant by the Administrator under the conditions of use," for "before a rule promulgated under section 2605 of this title can protect against such risk," and "applicable review period" for "notification period applicable under subsection (a), (b), or (c) to the manufacturing or processing of such substance" and struck out ", or that any combination of such activities," after "required by subsection (a)" and "or will present" after "presents".

Subsec. (f)(2). Pub. L. 114–182, §5(6)(B), substituted "Section 2605(d)(3)(B)" for "Section 2605(d)(2)(B)" in concluding provisions.

Subsec. (f)(3)(A). Pub. L. 114–182, §5(6)(C)(i), substituted "Administrator may" for "Administrator may—", struck out cl. (i) designation before "issue", substituted "an order to prohibit or limit the" for "a proposed order to prohibit or limit the" and "under paragraph (1). Such order shall take effect on the expiration of the applicable review period." for "under paragraph (1), or", and struck out cl. (ii) and concluding provisions which read as follows:

"(ii) apply, through attorneys of the Environmental Protection Agency, to the United States District Court for the District of Columbia or the United States district court for the judicial district in which the manufacturer, or processor, as the case may be, of such substance, is found, resides, or transacts business for an injunction to prohibit the manufacture, processing, or distribution in commerce of such substance.

A proposed order issued under clause (i) respecting a chemical substance shall take effect on the expiration of the notification period applicable under subsection (a), (b), or (c) to the manufacture or processing of such substance."

Subsec. (f)(3)(B), (C). Pub. L. 114–182, §5(6)(C)(ii), (iii), redesignated subpar. (C) as (B), substituted "subparagraph (B)" for "subparagraphs (B) and (C)", struck out "clause (i) of" after "order issued under" and "; and the provisions of subparagraph (C) of subsection (e)(2) shall apply with respect to an injunction issued under subparagraph (B)" after "subparagraph (A)", and struck out former subpar. (B) which read as follows: "If the district court of the United States to which an application has been made under subparagraph (A)(ii) finds that there is a reasonable basis to conclude that

the manufacture, processing, distribution in commerce, use, or disposal of the chemical substance with respect to which such application was made, or that any combination of such activities, presents or will present an unreasonable risk of injury to health or the environment before a rule promulgated under section 2605 of this title can protect against such risk, the court shall issue an injunction to prohibit the manufacture, processing, or distribution in commerce of such substance or to prohibit any combination of such activities.''

Subsec. (f)(3)(D). Pub. L. 114–182, § 5(6)(C)(iv), struck out subpar. (D) which read as follows: ''If the Administrator issues an order pursuant to subparagraph (A)(i) respecting a chemical substance and objections are filed in accordance with subsection (e)(1)(C), the Administrator shall seek an injunction under subparagraph (A)(ii) respecting such substance unless the Administrator determines, on the basis of such objections, that such substance does not or will not present an unreasonable risk of injury to health or the environment.''

Subsec. (f)(4), (5). Pub. L. 114–182, § 5(6)(D), added pars. (4) and (5).

Subsec. (g). Pub. L. 114–182, § 5(7), amended subsec. (g) generally. Prior to amendment, text read as follows: ''If the Administrator has not initiated any action under this section or section 2605 or 2606 of this title to prohibit or limit the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance, with respect to which notification or data is required by subsection (a)(1)(B) or (b), before the expiration of the notification period applicable to the manufacturing or processing of such substance, the Administrator shall publish a statement of the Administrator's reasons for not initiating such action. Such a statement shall be published in the Federal Register before the expiration of such period. Publication of such statement in accordance with the preceding sentence is not a prerequisite to the manufacturing or processing of the substance with respect to which the statement is to be published.''

Subsec. (h)(1)(A). Pub. L. 114–182, § 5(8)(A), inserted '', including an unreasonable risk to a potentially exposed or susceptible subpopulation identified by the Administrator for the specific conditions of use identified in the application'' after ''health or the environment''.

Subsec. (h)(2). Pub. L. 114–182, § 5(8)(B), substituted ''information'' for ''data'' wherever appearing.

Subsec. (h)(4). Pub. L. 114–182, § 5(8)(C), substituted ''environment, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified by the Administrator under the conditions of use'' for ''environment. A rule promulgated under this paragraph (and any substantive amendment to, or repeal of, such a rule) shall be promulgated in accordance with paragraphs (2) and (3) of section 2605(c) of this title''.

Subsec. (i). Pub. L. 114–182, § 5(9), amended subsec. (i) generally. Prior to amendment, text read as follows: ''For purposes of this section, the terms 'manufacture' and 'process' mean manufacturing or processing for commercial purposes.''

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE

Section effective Jan. 1, 1977, see section 31 of Pub. L. 94–469, set out as a note under section 2601 of this title.

## § 2605. Prioritization, risk evaluation, and regulation of chemical substances and mixtures

### (a) Scope of regulation

If the Administrator determines in accordance with subsection (b)(4)(A) that the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture, or that any combination of such activities, pre-

sents an unreasonable risk of injury to health or the environment, the Administrator shall by rule and subject to section 2617 of this title, and in accordance with subsection (c)(2), apply one or more of the following requirements to such substance or mixture to the extent necessary so that the chemical substance or mixture no longer presents such risk:

(1) A requirement (A) prohibiting or otherwise restricting the manufacturing, processing, or distribution in commerce of such substance or mixture, or (B) limiting the amount of such substance or mixture which may be manufactured, processed, or distributed in commerce.

(2) A requirement—

(A) prohibiting or otherwise restricting the manufacture, processing, or distribution in commerce of such substance or mixture for (i) a particular use or (ii) a particular use in a concentration in excess of a level specified by the Administrator in the rule imposing the requirement, or

(B) limiting the amount of such substance or mixture which may be manufactured, processed, or distributed in commerce for (i) a particular use or (ii) a particular use in a concentration in excess of a level specified by the Administrator in the rule imposing the requirement.

(3) A requirement that such substance or mixture or any article containing such substance or mixture be marked with or accompanied by clear and adequate minimum warnings and instructions with respect to its use, distribution in commerce, or disposal or with respect to any combination of such activities. The form and content of such minimum warnings and instructions shall be prescribed by the Administrator.

(4) A requirement that manufacturers and processors of such substance or mixture make and retain records of the processes used to manufacture or process such substance or mixture or monitor or conduct tests which are reasonable and necessary to assure compliance with the requirements of any rule applicable under this section.

(5) A requirement prohibiting or otherwise regulating any manner or method of commercial use of such substance or mixture.

(6)(A) A requirement prohibiting or otherwise regulating any manner or method of disposal of such substance or mixture, or of any article containing such substance or mixture, by its manufacturer or processor or by any other person who uses, or disposes of, it for commercial purposes.

(B) A requirement under subparagraph (A) may not require any person to take any action which would be in violation of any law or requirement of, or in effect for, a State or political subdivision, and shall require each person subject to it to notify each State and political subdivision in which a required disposal may occur of such disposal.

(7) A requirement directing manufacturers or processors of such substance or mixture (A) to give notice of such determination to distributors in commerce of such substance or mixture and, to the extent reasonably ascer-

zure and condemnation. Proceedings in such an action shall conform as nearly as possible to proceedings in rem in admiralty.

**(c) Venue and consolidation**

(1)(A) An action under subsection (a) against a person who manufactures, processes, or distributes a chemical substance or mixture or an article containing a chemical substance or mixture may be brought in the United States District Court for the District of Columbia or for any judicial district in which any of the defendants is found, resides, or transacts business; and process in such an action may be served on a defendant in any other district in which such defendant resides or may be found. An action under subsection (a) against a chemical substance, mixture, or article may be brought in any United States district court within the jurisdiction of which the substance, mixture, or article is found.

(B) In determining the judicial district in which an action may be brought under subsection (a) in instances in which such action may be brought in more than one judicial district, the Administrator shall take into account the convenience of the parties.

(C) Subpoenas[1] requiring attendance of witnesses in an action brought under subsection (a) may be served in any judicial district.

(2) Whenever proceedings under subsection (a) involving identical chemical substances, mixtures, or articles are pending in courts in two or more judicial districts, they shall be consolidated for trial by order of any such court upon application reasonably made by any party in interest, upon notice to all parties in interest.

**(d) Action under section 2605**

Where appropriate, concurrently with the filing of an action under subsection (a) or as soon thereafter as may be practicable, the Administrator shall initiate a proceeding for the promulgation of a rule under section 2605(a) of this title.

**(e) Representation**

Notwithstanding any other provision of law, in any action under subsection (a), the Administrator may direct attorneys of the Environmental Protection Agency to appear and represent the Administrator in such an action.

**(f) "Imminently hazardous chemical substance or mixture" defined**

For purposes of subsection (a), the term "imminently hazardous chemical substance or mixture" means a chemical substance or mixture which presents an imminent and unreasonable risk of serious or widespread injury to health or the environment, without consideration of costs or other nonrisk factors. Such a risk to health or the environment shall be considered imminent if it is shown that the manufacture, processing, distribution in commerce, use, or disposal of the chemical substance or mixture, or that any combination of such activities, is likely to result in such injury to health or the environment before a final rule under section 2605 of this title can protect against such risk.

(Pub. L. 94–469, title I, §7, Oct. 11, 1976, 90 Stat. 2026; renumbered title I, Pub. L. 99–519, §3(c)(1), Oct. 22, 1986, 100 Stat. 2989; amended Pub. L. 102–550, title X, §1021(b)(1), Oct. 28, 1992, 106 Stat. 3923; Pub. L. 114–182, title I, §§7, 19(f), June 22, 2016, 130 Stat. 470, 507.)

**Editorial Notes**

AMENDMENTS

2016—Subsec. (a)(1). Pub. L. 114–182, §19(f)(1), in concluding provisions, substituted "a determination under section 2604 or 2605 of this title, a rule under section 2603, 2604, or 2605 of this title or subchapter IV, an order under section 2603, 2604, or 2605 of this title or subchapter IV, or a consent agreement under section 2603 of this title" for "a rule under section 2603 of this title, 2604 of this title, 2605 of this title, or subchapter IV or an order under section 2604 of this title or subchapter IV".

Subsec. (a)(2). Pub. L. 114–182, §19(f)(2), substituted "section 2605(d)(3)(A)(i)" for "section 2605(d)(2)(A)(i)".

Subsec. (b)(1). Pub. L. 114–182, §7(1), inserted "(as identified by the Administrator without consideration of costs or other nonrisk factors)" after "from the unreasonable risk".

Subsec. (f). Pub. L. 114–182, §7(2), inserted ", without consideration of costs or other nonrisk factors" after "widespread injury to health or the environment".

1992—Subsec. (a)(1). Pub. L. 102–550 substituted "section 2603 of this title, 2604 of this title, 2605 of this title, or subchapter IV" for "section 2603, 2604, or 2605 of this title" in last sentence.

Pub. L. 102–550, which directed the insertion of "or subchapter IV" after "2604", was executed by making the insertion after "2604" the second time appearing in last sentence, to reflect the probable intent of Congress.

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE

Section effective Jan. 1, 1977, see section 31 of Pub. L. 94–469, set out as a note under section 2601 of this title.

**§ 2607. Reporting and retention of information**

**(a) Reports**

(1) The Administrator shall promulgate rules under which—

(A) each person (other than a small manufacturer or processor) who manufactures or processes or proposes to manufacture or process a chemical substance (other than a chemical substance described in subparagraph (B)(ii)) shall maintain such records, and shall submit to the Administrator such reports, as the Administrator may reasonably require, and

(B) each person (other than a small manufacturer or processor) who manufactures or processes or proposes to manufacture or process—

(i) a mixture, or

(ii) a chemical substance in small quantities (as defined by the Administrator by rule) solely for purposes of scientific experimentation or analysis or chemical research on, or analysis of, such substance or another substance, including any such research or analysis for the development of a product,

shall maintain records and submit to the Administrator reports but only to the extent the Administrator determines the maintenance of

---

[1] So in original. Probably should be "Subpoenas".

records or submission of reports, or both, is necessary for the effective enforcement of this chapter.

The Administrator may not require in a rule promulgated under this paragraph the maintenance of records or the submission of reports with respect to changes in the proportions of the components of a mixture unless the Administrator finds that the maintenance of such records or the submission of such reports, or both, is necessary for the effective enforcement of this chapter. For purposes of the compilation of the list of chemical substances required under subsection (b), the Administrator shall promulgate rules pursuant to this subsection not later than 180 days after January 1, 1977.

(2) The Administrator may require under paragraph (1) maintenance of records and reporting with respect to the following insofar as known to the person making the report or insofar as reasonably ascertainable:

(A) The common or trade name, the chemical identity, and the molecular structure of each chemical substance or mixture for which such a report is required.

(B) The categories or proposed categories of use of each such substance or mixture.

(C) The total amount of each such substance and mixture manufactured or processed, reasonable estimates of the total amount to be manufactured or processed, the amount manufactured or processed for each of its categories of use, and reasonable estimates of the amount to be manufactured or processed for each of its categories of use or proposed categories of use.

(D) A description of the byproducts resulting from the manufacture, processing, use, or disposal of each such substance or mixture.

(E) All existing information concerning the environmental and health effects of such substance or mixture.

(F) The number of individuals exposed, and reasonable estimates of the number who will be exposed, to such substance or mixture in their places of employment and the duration of such exposure.

(G) In the initial report under paragraph (1) on such substance or mixture, the manner or method of its disposal, and in any subsequent report on such substance or mixture, any change in such manner or method.

(3)(A)(i) The Administrator may by rule require a small manufacturer or processor of a chemical substance to submit to the Administrator such information respecting the chemical substance as the Administrator may require for publication of the first list of chemical substances required by subsection (b).

(ii) The Administrator may by rule require a small manufacturer or processor of a chemical substance or mixture—

(I) subject to a rule proposed or promulgated under section 2603, 2604(b)(4), or 2605 of this title,[1] an order in effect under section 2603 or 2604(e) of this title, or a consent agreement under section 2603 of this title, or

(II) with respect to which relief has been granted pursuant to a civil action brought under section 2604 or 2606 of this title,

to maintain such records on such substance or mixture, and to submit to the Administrator such reports on such substance or mixture, as the Administrator may reasonably require. A rule under this clause requiring reporting may require reporting with respect to the matters referred to in paragraph (2).

(B) The Administrator, after consultation with the Administrator of the Small Business Administration, shall by rule prescribe standards for determining the manufacturers and processors which qualify as small manufacturers and processors for purposes of this paragraph and paragraph (1).

(C) Not later than 180 days after June 22, 2016, and not less frequently than once every 10 years thereafter, the Administrator, after consultation with the Administrator of the Small Business Administration, shall—

(i) review the adequacy of the standards prescribed under subparagraph (B); and

(ii) after providing public notice and an opportunity for comment, make a determination as to whether revision of the standards is warranted.

(4) CONTENTS.—The rules promulgated pursuant to paragraph (1)—

(A) may impose differing reporting and recordkeeping requirements on manufacturers and processors; and

(B) shall include the level of detail necessary to be reported, including the manner by which use and exposure information may be reported.

(5) ADMINISTRATION.—In carrying out this section, the Administrator shall, to the extent feasible—

(A) not require reporting which is unnecessary or duplicative;

(B) minimize the cost of compliance with this section and the rules issued thereunder on small manufacturers and processors; and

(C) apply any reporting obligations to those persons likely to have information relevant to the effective implementation of this subchapter.

(6) NEGOTIATED RULEMAKING.—(A) The Administrator shall enter into a negotiated rulemaking pursuant to subchapter III of chapter 5 of title 5 to develop and publish, not later than 3 years after June 22, 2016, a proposed rule providing for limiting the reporting requirements, under this subsection, for manufacturers of any inorganic byproducts, when such byproducts, whether by the byproduct manufacturer or by any other person, are subsequently recycled, reused, or reprocessed.

(B) Not later than 3 and one-half years after June 22, 2016, the Administrator shall publish a final rule resulting from such negotiated rulemaking.

(7) PFAS DATA.—Not later than January 1, 2023, the Administrator shall promulgate a rule in accordance with this subsection requiring each person who has manufactured a chemical substance that is a perfluoroalkyl or polyfluoroalkyl substance in any year since January 1, 2011, to submit to the Administrator a report that includes, for each year since January 1, 2011, the information described in subparagraphs (A) through (G) of paragraph (2).

---

[1] So in original.

**(b) Inventory**

(1) The Administrator shall compile, keep current, and publish a list of each chemical substance which is manufactured or processed in the United States. Such list shall at least include each chemical substance which any person reports, under section 2604 of this title or subsection (a) of this section, is manufactured or processed in the United States. Such list may not include any chemical substance which was not manufactured or processed in the United States within three years before the effective date of the rules promulgated pursuant to the last sentence of subsection (a)(1). In the case of a chemical substance for which a notice is submitted in accordance with section 2604 of this title, such chemical substance shall be included in such list as of the earliest date (as determined by the Administrator) on which such substance was manufactured or processed in the United States. The Administrator shall first publish such a list not later than 315 days after January 1, 1977. The Administrator shall not include in such list any chemical substance which is manufactured or processed only in small quantities (as defined by the Administrator by rule) solely for purposes of scientific experimentation or analysis or chemical research on, or analysis of, such substance or another substance, including such research or analysis for the development of a product.

(2) To the extent consistent with the purposes of this chapter, the Administrator may, in lieu of listing, pursuant to paragraph (1), a chemical substance individually, list a category of chemical substances in which such substance is included.

(3) NOMENCLATURE.—

(A) IN GENERAL.—In carrying out paragraph (1), the Administrator shall—

(i) maintain the use of Class 2 nomenclature in use on June 22, 2016;

(ii) maintain the use of the Soap and Detergent Association Nomenclature System, published in March 1978 by the Administrator in section 1 of addendum III of the document entitled ''Candidate List of Chemical Substances'', and further described in the appendix A of volume I of the 1985 edition of the Toxic Substances Control Act Substances Inventory (EPA Document No. EPA–560/7–85–002a); and

(iii) treat the individual members of the categories of chemical substances identified by the Administrator as statutory mixtures, as defined in Inventory descriptions established by the Administrator, as being included on the list established under paragraph (1).

(B) MULTIPLE NOMENCLATURE LISTINGS.—If a manufacturer or processor demonstrates to the Administrator that a chemical substance appears multiple times on the list published under paragraph (1) under different CAS numbers, the Administrator may recognize the multiple listings as a single chemical substance.

(4) CHEMICAL SUBSTANCES IN COMMERCE.—

(A) RULES.—

(i) IN GENERAL.—Not later than 1 year after June 22, 2016, the Administrator, by rule, shall require manufacturers, and may require processors, subject to the limitations under subsection (a)(5)(A), to notify the Administrator, by not later than 180 days after the date on which the final rule is published in the Federal Register, of each chemical substance on the list published under paragraph (1) that the manufacturer or processor, as applicable, has manufactured or processed for a nonexempt commercial purpose during the 10-year period ending on the day before June 22, 2016.

(ii) ACTIVE SUBSTANCES.—The Administrator shall designate chemical substances for which notices are received under clause (i) to be active substances on the list published under paragraph (1).

(iii) INACTIVE SUBSTANCES.—The Administrator shall designate chemical substances for which no notices are received under clause (i) to be inactive substances on the list published under paragraph (1).

(iv) LIMITATION.—No chemical substance on the list published under paragraph (1) shall be removed from such list by reason of the implementation of this subparagraph, or be subject to section 2604(a)(1)(A)(i) of this title by reason of a change to active status under paragraph (5)(B).

(B) CONFIDENTIAL CHEMICAL SUBSTANCES.—In promulgating a rule under subparagraph (A), the Administrator shall—

(i) maintain the list under paragraph (1), which shall include a confidential portion and a nonconfidential portion consistent with this section and section 2613 of this title;

(ii) require any manufacturer or processor of a chemical substance on the confidential portion of the list published under paragraph (1) that seeks to maintain an existing claim for protection against disclosure of the specific chemical identity of the chemical substance as confidential pursuant to section 2613 of this title to submit a notice under subparagraph (A) that includes such request;

(iii) require the substantiation of those claims pursuant to section 2613 of this title and in accordance with the review plan described in subparagraph (C); and

(iv) move any active chemical substance for which no request was received to maintain an existing claim for protection against disclosure of the specific chemical identity of the chemical substance as confidential from the confidential portion of the list published under paragraph (1) to the nonconfidential portion of that list.

(C) REVIEW PLAN.—Not later than 1 year after the date on which the Administrator compiles the initial list of active substances pursuant to subparagraph (A), the Administrator shall promulgate a rule that establishes a plan to review all claims to protect the specific chemical identities of chemical substances on the confidential portion of the list published under paragraph (1) that are asserted pursuant to subparagraph (B).

(D) REQUIREMENTS OF REVIEW PLAN.—In establishing the review plan under subparagraph (C), the Administrator shall—

(i) require, at a time specified by the Administrator, all manufacturers or processors asserting claims under subparagraph (B) to substantiate the claim, in accordance with section 2613 of this title, unless the manufacturer or processor has substantiated the claim in a submission made to the Administrator during the 5-year period ending on the last day of the of the time period specified by the Administrator; and

(ii) in accordance with section 2613 of this title—

(I) review each substantiation—

(aa) submitted pursuant to clause (i) to determine if the claim qualifies for protection from disclosure; and

(bb) submitted previously by a manufacturer or processor and relied on in lieu of the substantiation required pursuant to clause (i), if the substantiation has not been previously reviewed by the Administrator, to determine if the claim warrants protection from disclosure;

(II) approve, approve in part and deny in part, or deny each claim; and

(III) except as provided in this section and section 2613 of this title, protect from disclosure information for which the Administrator approves such a claim for a period of 10 years, unless, prior to the expiration of the period—

(aa) the person notifies the Administrator that the person is withdrawing the claim, in which case the Administrator shall not protect the information from disclosure; or

(bb) the Administrator otherwise becomes aware that the information does not qualify for protection from disclosure, in which case the Administrator shall take the actions described in section 2613(g)(2) of this title.

(E) TIMELINE FOR COMPLETION OF REVIEWS.—

(i) IN GENERAL.—The Administrator shall implement the review plan so as to complete reviews of all claims specified in subparagraph (C) not later than 5 years after the date on which the Administrator compiles the initial list of active substances pursuant to subparagraph (A).

(ii) CONSIDERATIONS.—

(I) IN GENERAL.—The Administrator may extend the deadline for completion of the reviews for not more than 2 additional years, after an adequate public justification, if the Administrator determines that the extension is necessary based on the number of claims needing review and the available resources.

(II) ANNUAL REVIEW GOAL AND RESULTS.—At the beginning of each year, the Administrator shall publish an annual goal for reviews and the number of reviews completed in the prior year.

(5) ACTIVE AND INACTIVE SUBSTANCES.—

(A) IN GENERAL.—The Administrator shall keep designations of active substances and inactive substances on the list published under paragraph (1) current.

(B) CHANGE TO ACTIVE STATUS.—

(i) IN GENERAL.—Any person that intends to manufacture or process for a nonexempt commercial purpose a chemical substance that is designated as an inactive substance shall notify the Administrator before the date on which the inactive substance is manufactured or processed.

(ii) CONFIDENTIAL CHEMICAL IDENTITY.—If a person submitting a notice under clause (i) for an inactive substance on the confidential portion of the list published under paragraph (1) seeks to maintain an existing claim for protection against disclosure of the specific chemical identity of the inactive substance as confidential, the person shall, consistent with the requirements of section 2613 of this title—

(I) in the notice submitted under clause (i), assert the claim; and

(II) by not later than 30 days after providing the notice under clause (i), substantiate the claim.

(iii) ACTIVE STATUS.—On receiving a notification under clause (i), the Administrator shall—

(I) designate the applicable chemical substance as an active substance;

(II) pursuant to section 2613 of this title, promptly review any claim and associated substantiation submitted pursuant to clause (ii) for protection against disclosure of the specific chemical identity of the chemical substance and approve, approve in part and deny in part, or deny the claim;

(III) except as provided in this section and section 2613 of this title, protect from disclosure the specific chemical identity of the chemical substance for which the Administrator approves a claim under subclause (II) for a period of 10 years, unless, prior to the expiration of the period—

(aa) the person notifies the Administrator that the person is withdrawing the claim, in which case the Administrator shall not protect the information from disclosure; or

(bb) the Administrator otherwise becomes aware that the information does not qualify for protection from disclosure, in which case the Administrator shall take the actions described in section 2613(g)(2) of this title; and

(IV) pursuant to section 2605(b) of this title, review the priority of the chemical substance as the Administrator determines to be necessary.

(C) CATEGORY STATUS.—The list of inactive substances shall not be considered to be a category for purposes of section 2625(c) of this title.

(6) INTERIM LIST OF ACTIVE SUBSTANCES.—Prior to the promulgation of the rule required under paragraph (4)(A), the Administrator shall designate the chemical substances reported under part 711 of title 40, Code of Federal Regulations (as in effect on June 22, 2016), during the reporting period that most closely preceded June 22, 2016, as the interim list of active substances for the purposes of section 2605(b) of this title.

(7) PUBLIC INFORMATION.—Subject to this subsection and section 2613 of this title, the Administrator shall make available to the public—

(A) each specific chemical identity on the nonconfidential portion of the list published under paragraph (1) along with the Administrator's designation of the chemical substance as an active or inactive substance;

(B) the unique identifier assigned under section 2613 of this title, accession number, generic name, and, if applicable, premanufacture notice case number for each chemical substance on the confidential portion of the list published under paragraph (1) for which a claim of confidentiality was received; and

(C) the specific chemical identity of any active substance for which—

(i) a claim for protection against disclosure of the specific chemical identity of the active substance was not asserted, as required under this subsection or section 2613 of this title;

(ii) all claims for protection against disclosure of the specific chemical identity of the active substance have been denied by the Administrator; or

(iii) the time period for protection against disclosure of the specific chemical identity of the active substance has expired.

(8) LIMITATION.—No person may assert a new claim under this subsection or section 2613 of this title for protection from disclosure of a specific chemical identity of any active or inactive substance for which a notice is received under paragraph (4)(A)(i) or (5)(B)(i) that is not on the confidential portion of the list published under paragraph (1).

(9) CERTIFICATION.—Under the rules promulgated under this subsection, manufacturers and processors, as applicable, shall be required—

(A) to certify that each notice or substantiation the manufacturer or processor submits complies with the requirements of the rule, and that any confidentiality claims are true and correct; and

(B) to retain a record documenting compliance with the rule and supporting confidentiality claims for a period of 5 years beginning on the last day of the submission period.

(10) MERCURY.—

(A) DEFINITION OF MERCURY.—In this paragraph, notwithstanding section 2602(2)(B) of this title, the term ''mercury'' means—

(i) elemental mercury; and

(ii) a mercury compound.

(B) PUBLICATION.—Not later than April 1, 2017, and every 3 years thereafter, the Administrator shall carry out and publish in the Federal Register an inventory of mercury supply, use, and trade in the United States.

(C) PROCESS.—In carrying out the inventory under subparagraph (B), the Administrator shall—

(i) identify any manufacturing processes or products that intentionally add mercury; and

(ii) recommend actions, including proposed revisions of Federal law or regulations, to achieve further reductions in mercury use.

(D) REPORTING.—

(i) IN GENERAL.—To assist in the preparation of the inventory under subparagraph (B), any person who manufactures mercury or mercury-added products or otherwise intentionally uses mercury in a manufacturing process shall make periodic reports to the Administrator, at such time and including such information as the Administrator shall determine by rule promulgated not later than 2 years after June 22, 2016.

(ii) COORDINATION.—To avoid duplication, the Administrator shall coordinate the reporting under this subparagraph with the Interstate Mercury Education and Reduction Clearinghouse.

(iii) EXEMPTION.—Clause (i) shall not apply to a person engaged in the generation, handling, or management of mercury-containing waste, unless that person manufactures or recovers mercury in the management of that waste.

**(c) Records**

Any person who manufactures, processes, or distributes in commerce any chemical substance or mixture shall maintain records of significant adverse reactions to health or the environment, as determined by the Administrator by rule, alleged to have been caused by the substance or mixture. Records of such adverse reactions to the health of employees shall be retained for a period of 30 years from the date such reactions were first reported to or known by the person maintaining such records. Any other record of such adverse reactions shall be retained for a period of five years from the date the information contained in the record was first reported to or known by the person maintaining the record. Records required to be maintained under this subsection shall include records of consumer allegations of personal injury or harm to health, reports of occupational disease or injury, and reports or complaints of injury to the environment submitted to the manufacturer, processor, or distributor in commerce from any source. Upon request of any duly designated representative of the Administrator, each person who is required to maintain records under this subsection shall permit the inspection of such records and shall submit copies of such records.

**(d) Health and safety studies**

The Administrator shall promulgate rules under which the Administrator shall require any person who manufactures, processes, or distributes in commerce or who proposes to manufacture, process, or distribute in commerce any chemical substance or mixture (or with respect to paragraph (2), any person who has possession of a study) to submit to the Administrator—

(1) lists of health and safety studies (A) conducted or initiated by or for such person with respect to such substance or mixture at any time, (B) known to such person, or (C) reasonably ascertainable by such person, except that the Administrator may exclude certain types or categories of studies from the requirements of this subsection if the Administrator finds that submission of lists of such studies are unnecessary to carry out the purposes of this chapter; and

(2) copies of any study contained on a list submitted pursuant to paragraph (1) or otherwise known by such person.

**(e) Notice to Administrator of substantial risks**

Any person who manufactures, processes, or distributes in commerce a chemical substance or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the Administrator of such information unless such person has actual knowledge that the Administrator has been adequately informed of such information.

**(f) "Manufacture" and "process" defined**

For purposes of this section, the terms "manufacture" and "process" mean manufacture or process for commercial purposes.

(Pub. L. 94–469, title I, §8, Oct. 11, 1976, 90 Stat. 2027; renumbered title I, Pub. L. 99–519, §3(c)(1), Oct. 22, 1986, 100 Stat. 2989; amended Pub. L. 114–182, title I, §§8, 19(g), June 22, 2016, 130 Stat. 470, 507; Pub. L. 116–92, div. F, title LXXIII, §7351, Dec. 20, 2019, 133 Stat. 2289.)

### Editorial Notes

#### Amendments

2019—Subsec. (a)(7). Pub. L. 116–92 added par. (7).

2016—Subsec. (a)(2). Pub. L. 114–182, §8(a)(1)(A), struck out concluding provisions which read as follows: "To the extent feasible, the Administrator shall not require under paragraph (1), any reporting which is unnecessary or duplicative."

Subsec. (a)(2)(E). Pub. L. 114–182, §19(g)(1), substituted "information" for "data".

Subsec. (a)(3)(A)(ii)(I). Pub. L. 114–182, §19(g)(2), substituted ", an order in effect under section 2603 or 2604(e) of this title, or a consent agreement under section 2603 of this title" for "or an order in effect under section 2604(e) of this title".

Subsec. (a)(3)(C). Pub. L. 114–182, §8(a)(1)(B), added subpar. (C).

Subsec. (a)(4) to (6). Pub. L. 114–182, §8(a)(1)(C), added pars. (4) to (6).

Subsec. (b)(3) to (9). Pub. L. 114–182, §8(a)(2), added pars. (3) to (9).

Subsec. (b)(10). Pub. L. 114–182, §8(b), added par. (10).

### Statutory Notes and Related Subsidiaries

#### Effective Date

Section effective Jan. 1, 1977, see section 31 of Pub. L. 94–469, set out as a note under section 2601 of this title.

#### Asbestos Information

Pub. L. 100–577, Oct. 31, 1988, 102 Stat. 2901, provided that:

"SECTION 1. SHORT TITLE.

"This Act may be cited as the 'Asbestos Information Act of 1988'.

"SEC. 2. SUBMISSION OF INFORMATION BY MANUFACTURERS.

"Within 90 days after the date of the enactment of this Act [Oct. 31, 1988], any person who manufactured or processed, before the date of the enactment of this Act, asbestos or asbestos-containing material that was prepared for sale for use as surfacing material, thermal system insulation, or miscellaneous material in buildings (or whose corporate predecessor manufactured or processed such asbestos or material) shall submit to the Administrator of the Environmental Protection Agency the years of manufacture, the types or classes of product, and, to the extent available, other identifying characteristics reasonably necessary to identify or distinguish the asbestos or asbestos-containing material. Such person also may submit to the Administrator protocols for samples of asbestos and asbestos-containing material.

"SEC. 3. PUBLICATION OF INFORMATION.

"Within 30 days after the date of the enactment of this Act [Oct. 31, 1988], the Administrator shall publish a notice in the Federal Register that explains how, when, and where the information specified in section 2 is to be submitted. The Administrator shall receive and organize the information submitted under section 2 and, within 180 days after the date of the enactment of this Act, shall publish the information. In carrying out this section, the Administrator may not—

"(1) review the information submitted under section 2 for accuracy, or

"(2) analyze such information to determine whether it is reasonably necessary to identify or distinguish the particular asbestos or asbestos-containing material.

"SEC. 4. DEFINITIONS.

"In this Act:

"(1) The term 'asbestos' means—

"(A) chrysotile, amosite, or crocidolite, or

"(B) in fibrous form, tremolite, anthophyllite, or actinolite.

"(2) The term 'asbestos-containing material' means any material containing more than one percent asbestos by weight.

"(3) The term 'identifying characteristics' means a description of asbestos or asbestos-containing material, including—

"(A) the mineral or chemical constituents (or both) of the asbestos or material by weight or volume (or both),

"(B) the types or classes of the product in which the asbestos or material is contained,

"(C) the designs, patterns, or textures of the product in which the asbestos or material is contained, and

"(D) the means by which the product in which the asbestos or material is contained may be distinguishable from other products containing asbestos or asbestos-containing material.

"(4) The term 'miscellaneous material' means building material on structural components, structural members, or fixtures, such as floor and ceiling tiles. The term does not include surfacing material or thermal system insulation.

"(5) The term 'protocol' means any procedure for taking, handling, and preserving samples of asbestos and asbestos-containing material and for testing and analyzing such samples for the purpose of determining the person who manufactured or processed for sale such samples and the identifying characteristics of such samples.

"(6) The term 'surfacing material' means material in a building that is sprayed on surfaces, troweled on surfaces, or otherwise applied to surfaces for acoustical, fireproofing, or other purposes, such as acoustical plaster on ceilings and fireproofing material on structural members.

"(7) The term 'thermal system insulation' means material in a building applied to pipes, fittings, boilers, breeching, tanks, ducts, or other structural components to prevent heat loss or gain or water condensation, or for other purposes."

## § 2608. Relationship to other Federal laws

**(a) Laws not administered by the Administrator**

(1) If the Administrator determines that the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture, or that any combination of such ac-

of this title, 2605 of this title, or subchapter IV, or an order issued in a civil action brought under section 2604 of this title, 2606 of this title or subchapter IV.

(2) If a chemical substance, mixture, or article is refused entry under paragraph (1), the Secretary of the Treasury shall notify the consignee of such entry refusal, shall not release it to the consignee, and shall cause its disposal or storage (under such rules as the Secretary of the Treasury may prescribe) if it has not been exported by the consignee within 90 days from the date of receipt of notice of such refusal, except that the Secretary of the Treasury may, pending a review by the Administrator of the entry refusal, release to the consignee such substance, mixture, or article on execution of bond for the amount of the full invoice of such substance, mixture, or article (as such value is set forth in the customs entry), together with the duty thereon. On failure to return such substance, mixture, or article for any cause to the custody of the Secretary of the Treasury when demanded, such consignee shall be liable to the United States for liquidated damages equal to the full amount of such bond. All charges for storage, cartage, and labor on and for disposal of substances, mixtures, or articles which are refused entry or release under this section shall be paid by the owner or consignee, and in default of such payment shall constitute a lien against any future entry made by such owner or consignee.

**(b) Rules**

The Secretary of the Treasury, after consultation with the Administrator, shall issue rules for the administration of subsection (a) of this section.

(Pub. L. 94–469, title I, §13, Oct. 11, 1976, 90 Stat. 2034; renumbered title I, Pub. L. 99–519, §3(c)(1), Oct. 22, 1986, 100 Stat. 2989; amended Pub. L. 100–418, title I, §1214(e)(2), Aug. 23, 1988, 102 Stat. 1156; Pub. L. 102–550, title X, §1021(b)(4), Oct. 28, 1992, 106 Stat. 3923.)

### Editorial Notes
#### References in Text

The Harmonized Tariff Schedule of the United States, referred to in subsec. (a), is not set out in the Code. See Publication of Harmonized Tariff Schedule note set out under section 1202 of Title 19, Customs Duties.

#### Amendments

1992—Subsec. (a)(1)(B). Pub. L. 102–550 substituted "section 2604 of this title, 2605 of this title, or subchapter IV" for "section 2604 or 2605 of this title" in two places and "section 2604 of this title, 2606 of this title or subchapter IV" for "section 2604 or 2606 of this title".

1988—Subsec. (a)(1). Pub. L. 100–418 substituted "general note 2 of the Harmonized Tariff Schedule of the United States" for "general headnote 2 to the Tariff Schedules of the United States" in introductory text.

### Statutory Notes and Related Subsidiaries
#### Effective Date of 1988 Amendment

Amendment by Pub. L. 100–418 effective Jan. 1, 1989, and applicable with respect to articles entered on or after such date, see section 1217(b)(1) of Pub. L. 100–418, set out as an Effective Date note under section 3001 of Title 19, Customs Duties.

#### Effective Date

Section effective Jan. 1, 1977, see section 31 of Pub. L. 94–469, set out as a note under section 2601 of this title.

## § 2613. Confidential information

### (a) In general

Except as provided in this section, the Administrator shall not disclose information that is exempt from disclosure pursuant to subsection (a) of section 552 of title 5 by reason of subsection (b)(4) of that section—

(1) that is reported to, or otherwise obtained by, the Administrator under this chapter; and

(2) for which the requirements of subsection (c) are met.

In any proceeding under section 552(a) of title 5 to obtain information the disclosure of which has been denied because of the provisions of this subsection, the Administrator may not rely on section 552(b)(3) of such title to sustain the Administrator's action.

### (b) Information not protected from disclosure
#### (1) Mixed confidential and nonconfidential information

Information that is protected from disclosure under this section, and which is mixed with information that is not protected from disclosure under this section, does not lose its protection from disclosure notwithstanding that it is mixed with information that is not protected from disclosure.

#### (2) Information from health and safety studies

Subsection (a) does not prohibit the disclosure of—

(A) any health and safety study which is submitted under this chapter with respect to—

(i) any chemical substance or mixture which, on the date on which such study is to be disclosed has been offered for commercial distribution; or

(ii) any chemical substance or mixture for which testing is required under section 2603 of this title or for which notification is required under section 2604 of this title; and

(B) any information reported to, or otherwise obtained by, the Administrator from a health and safety study which relates to a chemical substance or mixture described in clause (i) or (ii) of subparagraph (A).

This paragraph does not authorize the disclosure of any information, including formulas (including molecular structures) of a chemical substance or mixture, that discloses processes used in the manufacturing or processing of a chemical substance or mixture or, in the case of a mixture, the portion of the mixture comprised by any of the chemical substances in the mixture.

#### (3) Other information not protected from disclosure

Subsection (a) does not prohibit the disclosure of—

(A) any general information describing the manufacturing volumes, expressed as specific aggregated volumes or, if the Adminis-

trator determines that disclosure of specific aggregated volumes would reveal confidential information, expressed in ranges; or

(B) a general description of a process used in the manufacture or processing and industrial, commercial, or consumer functions and uses of a chemical substance, mixture, or article containing a chemical substance or mixture, including information specific to an industry or industry sector that customarily would be shared with the general public or within an industry or industry sector.

**(4) Bans and phase-outs**

**(A) In general**

If the Administrator promulgates a rule pursuant to section 2605(a) of this title that establishes a ban or phase-out of a chemical substance or mixture, the protection from disclosure of any information under this section with respect to the chemical substance or mixture shall be presumed to no longer apply, subject to subsection (g)(1)(E) and subparagraphs (B) and (C) of this paragraph.

**(B) Limitations**

**(i) Critical use**

In the case of a chemical substance or mixture for which a specific condition of use is subject to an exemption pursuant to section 2605(g) of this title, if the Administrator establishes a ban or phase-out described in subparagraph (A) with respect to the chemical substance or mixture, the presumption against protection under such subparagraph shall only apply to information that relates solely to any conditions of use of the chemical substance or mixture to which the exemption does not apply.

**(ii) Export**

In the case of a chemical substance or mixture for which there is manufacture, processing, or distribution in commerce that meets the conditions of section 2611(a)(1) of this title, if the Administrator establishes a ban or phase-out described in subparagraph (A) with respect to the chemical substance or mixture, the presumption against protection under such subparagraph shall only apply to information that relates solely to any other manufacture, processing, or distribution in commerce of the chemical substance or mixture for the conditions of use subject to the ban or phase-out, unless the Administrator makes the determination in section 2611(a)(2) of this title.

**(iii) Specific conditions of use**

In the case of a chemical substance or mixture for which the Administrator establishes a ban or phase-out described in subparagraph (A) with respect to a specific condition of use of the chemical substance or mixture, the presumption against protection under such subparagraph shall only apply to information that relates solely to the condition of use of the chemical substance or mixture for which the ban or phase-out is established.

**(C) Request for nondisclosure**

**(i) In general**

A manufacturer or processor of a chemical substance or mixture subject to a ban or phase-out described in this paragraph may submit to the Administrator, within 30 days of receiving a notification under subsection (g)(2)(A), a request, including documentation supporting such request, that some or all of the information to which the notice applies should not be disclosed or that its disclosure should be delayed, and the Administrator shall review the request under subsection (g)(1)(E).

**(ii) Effect of no request or denial**

If no request for nondisclosure or delay is submitted to the Administrator under this subparagraph, or the Administrator denies such a request under subsection (g)(1)(A), the information shall not be protected from disclosure under this section.

**(5) Certain requests**

If a request is made to the Administrator under section 552(a) of title 5 for information reported to or otherwise obtained by the Administrator under this chapter that is not protected from disclosure under this subsection, the Administrator may not deny the request on the basis of section 552(b)(4) of title 5.

**(c) Requirements for confidentiality claims**

**(1) Assertion of claims**

**(A) In general**

A person seeking to protect from disclosure any information that person submits under this chapter (including information described in paragraph (2)) shall assert to the Administrator a claim for protection from disclosure concurrent with submission of the information, in accordance with such rules regarding a claim for protection from disclosure as the Administrator has promulgated or may promulgate pursuant to this subchapter.

**(B) Inclusion**

An assertion of a claim under subparagraph (A) shall include a statement that the person has—

(i) taken reasonable measures to protect the confidentiality of the information;

(ii) determined that the information is not required to be disclosed or otherwise made available to the public under any other Federal law;

(iii) a reasonable basis to conclude that disclosure of the information is likely to cause substantial harm to the competitive position of the person; and

(iv) a reasonable basis to believe that the information is not readily discoverable through reverse engineering.

**(C) Additional requirements for claims regarding chemical identity information**

In the case of a claim under subparagraph (A) for protection from disclosure of a specific chemical identity, the claim shall include a structurally descriptive generic

name for the chemical substance that the Administrator may disclose to the public, subject to the condition that such generic name shall—

(i) be consistent with guidance developed by the Administrator under paragraph (4)(A); and

(ii) describe the chemical structure of the chemical substance as specifically as practicable while protecting those features of the chemical structure—

(I) that are claimed as confidential; and

(II) the disclosure of which would be likely to cause substantial harm to the competitive position of the person.

**(2) Information generally not subject to substantiation requirements**

Subject to subsection (f), the following information shall not be subject to substantiation requirements under paragraph (3):

(A) Specific information describing the processes used in manufacture or processing of a chemical substance, mixture, or article.

(B) Marketing and sales information.

(C) Information identifying a supplier or customer.

(D) In the case of a mixture, details of the full composition of the mixture and the respective percentages of constituents.

(E) Specific information regarding the use, function, or application of a chemical substance or mixture in a process, mixture, or article.

(F) Specific production or import volumes of the manufacturer or processor.

(G) Prior to the date on which a chemical substance is first offered for commercial distribution, the specific chemical identity of the chemical substance, including the chemical name, molecular formula, Chemical Abstracts Service number, and other information that would identify the specific chemical substance, if the specific chemical identity was claimed as confidential at the time it was submitted in a notice under section 2604 of this title.

**(3) Substantiation requirements**

Except as provided in paragraph (2), a person asserting a claim to protect information from disclosure under this section shall substantiate the claim, in accordance with such rules as the Administrator has promulgated or may promulgate pursuant to this section.

**(4) Guidance**

The Administrator shall develop guidance regarding—

(A) the determination of structurally descriptive generic names, in the case of claims for the protection from disclosure of specific chemical identity; and

(B) the content and form of the statements of need and agreements required under paragraphs (4), (5), and (6) of subsection (d).

**(5) Certification**

An authorized official of a person described in paragraph (1)(A) shall certify that the statement required to assert a claim submitted pursuant to paragraph (1)(B), and any information required to substantiate a claim submitted pursuant to paragraph (3), are true and correct.

**(d) Exceptions to protection from disclosure**

Information described in subsection (a)—

(1) shall be disclosed to an officer or employee of the United States—

(A) in connection with the official duties of that person under any Federal law for the protection of health or the environment; or

(B) for a specific Federal law enforcement purpose;

(2) shall be disclosed to a contractor of the United States and employees of that contractor—

(A) if, in the opinion of the Administrator, the disclosure is necessary for the satisfactory performance by the contractor of a contract with the United States for the performance of work in connection with this chapter; and

(B) subject to such conditions as the Administrator may specify;

(3) shall be disclosed if the Administrator determines that disclosure is necessary to protect health or the environment against an unreasonable risk of injury to health or the environment, without consideration of costs or other nonrisk factors, including an unreasonable risk to a potentially exposed or susceptible subpopulation identified as relevant by the Administrator under the conditions of use;

(4) shall be disclosed to a State, political subdivision of a State, or tribal government, on written request, for the purpose of administration or enforcement of a law, if such entity has 1 or more applicable agreements with the Administrator that are consistent with the guidance developed under subsection (c)(4)(B) and ensure that the entity will take appropriate measures, and has adequate authority, to maintain the confidentiality of the information in accordance with procedures comparable to the procedures used by the Administrator to safeguard the information;

(5) shall be disclosed to a health or environmental professional employed by a Federal or State agency or tribal government or a treating physician or nurse in a nonemergency situation if such person provides a written statement of need and agrees to sign a written confidentiality agreement with the Administrator, subject to the conditions that—

(A) the statement of need and confidentiality agreement are consistent with the guidance developed under subsection (c)(4)(B);

(B) the statement of need shall be a statement that the person has a reasonable basis to suspect that—

(i) the information is necessary for, or will assist in—

(I) the diagnosis or treatment of 1 or more individuals; or

(II) responding to an environmental release or exposure; and

(ii) 1 or more individuals being diagnosed or treated have been exposed to the chem-

ical substance or mixture concerned, or an environmental release of or exposure to the chemical substance or mixture concerned has occurred; and

(C) the person will not use the information for any purpose other than the health or environmental needs asserted in the statement of need, except as otherwise may be authorized by the terms of the agreement or by the person who has a claim under this section with respect to the information;

(6) shall be disclosed in the event of an emergency to a treating or responding physician, nurse, agent of a poison control center, public health or environmental official of a State, political subdivision of a State, or tribal government, or first responder (including any individual duly authorized by a Federal agency, State, political subdivision of a State, or tribal government who is trained in urgent medical care or other emergency procedures, including a police officer, firefighter, or emergency medical technician) if such person requests the information, subject to the conditions that such person shall—

(A) have a reasonable basis to suspect that—

(i) a medical, public health, or environmental emergency exists;

(ii) the information is necessary for, or will assist in, emergency or first-aid diagnosis or treatment; or

(iii) 1 or more individuals being diagnosed or treated have likely been exposed to the chemical substance or mixture concerned, or a serious environmental release of or exposure to the chemical substance or mixture concerned has occurred; and

(B) if requested by a person who has a claim with respect to the information under this section—

(i) provide a written statement of need and agree to sign a confidentiality agreement, as described in paragraph (5); and

(ii) submit to the Administrator such statement of need and confidentiality agreement as soon as practicable, but not necessarily before the information is disclosed;

(7) may be disclosed if the Administrator determines that disclosure is relevant in a proceeding under this chapter, subject to the condition that the disclosure is made in such a manner as to preserve confidentiality to the extent practicable without impairing the proceeding;

(8) shall be disclosed if the information is required to be made public under any other provision of Federal law; and

(9) shall be disclosed as required pursuant to discovery, subpoena, other court order, or any other judicial process otherwise allowed under applicable Federal or State law.

### (e) Duration of protection from disclosure

#### (1) In general

Subject to paragraph (2), subsection (f)(3), and section 2607(b) of this title, the Administrator shall protect from disclosure information described in subsection (a)—

(A) in the case of information described in subsection (c)(2), until such time as—

(i) the person that asserted the claim notifies the Administrator that the person is withdrawing the claim, in which case the information shall not be protected from disclosure under this section; or

(ii) the Administrator becomes aware that the information does not qualify for protection from disclosure under this section, in which case the Administrator shall take any actions required under subsections (f) and (g); and

(B) in the case of information other than information described in subsection (c)(2)—

(i) for a period of 10 years from the date on which the person asserts the claim with respect to the information submitted to the Administrator; or

(ii) if applicable before the expiration of such 10-year period, until such time as—

(I) the person that asserted the claim notifies the Administrator that the person is withdrawing the claim, in which case the information shall not be protected from disclosure under this section; or

(II) the Administrator becomes aware that the information does not qualify for protection from disclosure under this section, in which case the Administrator shall take any actions required under subsections (f) and (g).

#### (2) Extensions

##### (A) In general

In the case of information other than information described in subsection (c)(2), not later than the date that is 60 days before the expiration of the period described in paragraph (1)(B)(i), the Administrator shall provide to the person that asserted the claim a notice of the impending expiration of the period.

##### (B) Request

###### (i) In general

Not later than the date that is 30 days before the expiration of the period described in paragraph (1)(B)(i), a person reasserting the relevant claim shall submit to the Administrator a request for extension substantiating, in accordance with subsection (c)(3), the need to extend the period.

###### (ii) Action by Administrator

Not later than the date of expiration of the period described in paragraph (1)(B)(i), the Administrator shall, in accordance with subsection (g)(1)—

(I) review the request submitted under clause (i);

(II) make a determination regarding whether the claim for which the request was submitted continues to meet the relevant requirements of this section; and

(III)(aa) grant an extension of 10 years; or

(bb) deny the request.

##### (C) No limit on number of extensions

There shall be no limit on the number of extensions granted under this paragraph, if

the Administrator determines that the relevant request under subparagraph (B)(i)—

(i) establishes the need to extend the period; and

(ii) meets the requirements established by the Administrator.

**(f) Review and resubstantiation**

**(1) Discretion of Administrator**

The Administrator may require any person that has claimed protection for information from disclosure under this section, whether before, on, or after June 22, 2016, to reassert and substantiate or resubstantiate the claim in accordance with this section—

(A) after the chemical substance is designated as a high-priority substance under section 2605(b) of this title;

(B) for any chemical substance designated as an active substance under section 2607(b)(5)(B)(iii) of this title; or

(C) if the Administrator determines that disclosure of certain information currently protected from disclosure would be important to assist the Administrator in conducting risk evaluations or promulgating rules under section 2605 of this title.

**(2) Review required**

The Administrator shall review a claim for protection of information from disclosure under this section and require any person that has claimed protection for that information, whether before, on, or after June 22, 2016, to reassert and substantiate or resubstantiate the claim in accordance with this section—

(A) as necessary to determine whether the information qualifies for an exemption from disclosure in connection with a request for information received by the Administrator under section 552 of title 5;

(B) if the Administrator has a reasonable basis to believe that the information does not qualify for protection from disclosure under this section; or

(C) for any chemical substance the Administrator determines under section 2605(b)(4)(A) of this title presents an unreasonable risk of injury to health or the environment.

**(3) Period of protection**

If the Administrator requires a person to reassert and substantiate or resubstantiate a claim under this subsection, and determines that the claim continues to meet the relevant requirements of this section, the Administrator shall protect the information subject to the claim from disclosure for a period of 10 years from the date of such determination, subject to any subsequent requirement by the Administrator under this subsection.

**(g) Duties of Administrator**

**(1) Determination**

**(A) In general**

Except for claims regarding information described in subsection (c)(2), the Administrator shall, subject to subparagraph (C), not later than 90 days after the receipt of a claim under subsection (c), and not later

than 30 days after the receipt of a request for extension of a claim under subsection (e) or a request under subsection (b)(4)(C), review and approve, approve in part and deny in part, or deny the claim or request.

**(B) Reasons for denial**

If the Administrator denies or denies in part a claim or request under subparagraph (A) the Administrator shall provide to the person that asserted the claim or submitted the request a written statement of the reasons for the denial or denial in part of the claim or request.

**(C) Subsets**

The Administrator shall—

(i) except with respect to information described in subsection (c)(2)(G), review all claims or requests under this section for the protection from disclosure of the specific chemical identity of a chemical substance; and

(ii) review a representative subset, comprising at least 25 percent, of all other claims or requests for protection from disclosure under this section.

**(D) Effect of failure to act**

The failure of the Administrator to make a decision regarding a claim or request for protection from disclosure or extension under this section shall not have the effect of denying or eliminating a claim or request for protection from disclosure.

**(E) Determination of requests under subsection (b)(4)(C)**

With respect to a request submitted under subsection (b)(4)(C), the Administrator shall, with the objective of ensuring that information relevant to the protection of health and the environment is disclosed to the extent practicable, determine whether the documentation provided by the person rebuts what shall be the presumption of the Administrator that the public interest in the disclosure of the information outweighs the public or proprietary interest in maintaining the protection for all or a portion of the information that the person has requested not be disclosed or for which disclosure be delayed.

**(2) Notification**

**(A) In general**

Except as provided in subparagraph (B) and subsections (b), (d), and (e), if the Administrator denies or denies in part a claim or request under paragraph (1), concludes, in accordance with this section, that the information does not qualify for protection from disclosure, intends to disclose information pursuant to subsection (d), or promulgates a rule under section 2605(a) of this title establishing a ban or phase-out with respect to a chemical substance or mixture, the Administrator shall notify, in writing, the person that asserted the claim or submitted the request of the intent of the Administrator to disclose the information or not protect the information from disclosure under this sec-

tion. The notice shall be furnished by certified mail (return receipt requested), by personal delivery, or by other means that allows verification of the fact and date of receipt.

**(B) Disclosure of information**

Except as provided in subparagraph (C), the Administrator shall not disclose information under this subsection until the date that is 30 days after the date on which the person that asserted the claim or submitted the request receives notification under subparagraph (A).

**(C) Exceptions**

**(i) Fifteen day notification**

For information the Administrator intends to disclose under subsections (d)(3), (d)(4), (d)(5), and (j), the Administrator shall not disclose the information until the date that is 15 days after the date on which the person that asserted the claim or submitted the request receives notification under subparagraph (A), except that, with respect to information to be disclosed under subsection (d)(3), if the Administrator determines that disclosure of the information is necessary to protect against an imminent and substantial harm to health or the environment, no prior notification shall be necessary.

**(ii) Notification as soon as practicable**

For information the Administrator intends to disclose under paragraph (6) of subsection (d), the Administrator shall notify the person that submitted the information that the information has been disclosed as soon as practicable after disclosure of the information.

**(iii) No notification required**

Notification shall not be required—
(I) for the disclosure of information under paragraphs (1), (2), (7), or (8) of subsection (d); or
(II) for the disclosure of information for which—
(aa) the Administrator has provided to the person that asserted the claim a notice under subsection (e)(2)(A); and
(bb) such person does not submit to the Administrator a request under subsection (e)(2)(B) on or before the deadline established in subsection (e)(2)(B)(i).

**(D) Appeals**

**(i) Action to restrain disclosure**

If a person receives a notification under this paragraph and believes the information is protected from disclosure under this section, before the date on which the information is to be disclosed pursuant to subparagraph (B) or (C) the person may bring an action to restrain disclosure of the information in—
(I) the United States district court of the district in which the complainant resides or has the principal place of business; or

(II) the United States District Court for the District of Columbia.

**(ii) No disclosure**

**(I) In general**

Subject to subsection (d), the Administrator shall not disclose information that is the subject of an appeal under this paragraph before the date on which the applicable court rules on an action under clause (i).

**(II) Exception**

Subclause (I) shall not apply to disclosure of information described under subsections (d)(4) and (j).

**(3) Request and notification system**

The Administrator, in consultation with the Director of the Centers for Disease Control and Prevention, shall develop a request and notification system that, in a format and language that is readily accessible and understandable, allows for expedient and swift access to information disclosed pursuant to paragraphs (5) and (6) of subsection (d).

**(4) Unique identifier**

The Administrator shall—
(A)(i) develop a system to assign a unique identifier to each specific chemical identity for which the Administrator approves a request for protection from disclosure, which shall not be either the specific chemical identity or a structurally descriptive generic term; and
(ii) apply that identifier consistently to all information relevant to the applicable chemical substance;
(B) annually publish and update a list of chemical substances, referred to by their unique identifiers, for which claims to protect the specific chemical identity from disclosure have been approved, including the expiration date for each such claim;
(C) ensure that any nonconfidential information received by the Administrator with respect to a chemical substance included on the list published under subparagraph (B) while the specific chemical identity of the chemical substance is protected from disclosure under this section identifies the chemical substance using the unique identifier; and
(D) for each claim for protection of a specific chemical identity that has been denied by the Administrator or expired, or that has been withdrawn by the person who asserted the claim, and for which the Administrator has used a unique identifier assigned under this paragraph to protect the specific chemical identity in information that the Administrator has made public, clearly link the specific chemical identity to the unique identifier in such information to the extent practicable.

**(h) Criminal penalty for wrongful disclosure**

**(1) Individuals subject to penalty**

**(A) In general**

Subject to subparagraph (C) and paragraph (2), an individual described in subparagraph

(B) shall be fined under title 18 or imprisoned for not more than 1 year, or both.

**(B) Description**

An individual referred to in subparagraph (A) is an individual who—

(i) pursuant to this section, obtained possession of, or has access to, information protected from disclosure under this section; and

(ii) knowing that the information is protected from disclosure under this section, willfully discloses the information in any manner to any person not entitled to receive that information.

**(C) Exception**

This paragraph shall not apply to any medical professional (including an emergency medical technician or other first responder) who discloses any information obtained under paragraph (5) or (6) of subsection (d) to a patient treated by the medical professional, or to a person authorized to make medical or health care decisions on behalf of such a patient, as needed for the diagnosis or treatment of the patient.

**(2) Other laws**

Section 1905 of title 18 shall not apply with respect to the publishing, divulging, disclosure, or making known of, or making available, information reported to or otherwise obtained by the Administrator under this chapter.

**(i) Applicability**

**(1) In general**

Except as otherwise provided in this section, section 2607 of this title, or any other applicable Federal law, the Administrator shall have no authority—

(A) to require the substantiation or resubstantiation of a claim for the protection from disclosure of information reported to or otherwise obtained by the Administrator under this chapter prior to June 22, 2016; or

(B) to impose substantiation or resubstantiation requirements, with respect to the protection of information described in subsection (a), under this chapter that are more extensive than those required under this section.

**(2) Actions prior to promulgation of rules**

Nothing in this chapter prevents the Administrator from reviewing, requiring substantiation or resubstantiation of, or approving, approving in part, or denying any claim for the protection from disclosure of information before the effective date of such rules applicable to those claims as the Administrator may promulgate after June 22, 2016.

**(j) Access by Congress**

Notwithstanding any limitation contained in this section or any other provision of law, all information reported to or otherwise obtained by the Administrator (or any representative of the Administrator) under this chapter shall be made available, upon written request of any duly authorized committee of the Congress, to such committee.

(Pub. L. 94–469, title I, § 14, Oct. 11, 1976, 90 Stat. 2034; renumbered title I, Pub. L. 99–519, § 3(c)(1), Oct. 22, 1986, 100 Stat. 2989; amended Pub. L. 114–182, title I, § 11, June 22, 2016, 130 Stat. 481.)

**Editorial Notes**

AMENDMENTS

2016—Pub. L. 114–182 amended section generally. Prior to amendment, section related to disclosure of data.

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE

Section effective Jan. 1, 1977, see section 31 of Pub. L. 94–469, set out as a note under section 2601 of this title.

**§ 2614. Prohibited acts**

It shall be unlawful for any person to—

(1) fail or refuse to comply with any requirement of this subchapter or any rule promulgated, order issued, or consent agreement entered into under this subchapter, or any requirement of subchapter II or any rule promulgated or order issued under subchapter II;

(2) use for commercial purposes a chemical substance or mixture which such person knew or had reason to know was manufactured, processed, or distributed in commerce in violation of section 2604 or 2605 of this title, a rule or order under section 2604 or 2605 of this title, or an order issued in action brought under section 2604 or 2606 of this title;

(3) fail or refuse to (A) establish or maintain records, (B) submit reports, notices, or other information, or (C) permit access to or copying of records, as required by this chapter or a rule thereunder; or

(4) fail or refuse to permit entry or inspection as required by section 2610 of this title.

(Pub. L. 94–469, title I, § 15, Oct. 11, 1976, 90 Stat. 2036; renumbered title I and amended Pub. L. 99–519, § 3(b)(1), (c)(1), Oct. 22, 1986, 100 Stat. 2988, 2989; Pub. L. 114–182, title I, § 19(*l*), June 22, 2016, 130 Stat. 508.)

**Editorial Notes**

AMENDMENTS

2016—Par. (1). Pub. L. 114–182 substituted "any requirement of this subchapter or any rule promulgated, order issued, or consent agreement entered into under this subchapter, or" for "(A) any rule promulgated or order issued under section 2603 of this title, (B) any requirement prescribed by section 2604 or 2605 of this title, (C) any rule promulgated or order issued under section 2604 or 2605 of this title, or (D)".

1986—Par. (1)(D). Pub. L. 99–519 added cl. (D).

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE

Section effective Jan. 1, 1977, see section 31 of Pub. L. 94–469, set out as a note under section 2601 of this title.

**§ 2615. Penalties**

**(a) Civil**

(1) Any person who violates a provision of section 2614 or 2689 of this title shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 for each such viola-

40 CFR 703.5 (up to date as of 11/03/2023)
Requirements for asserting and maintaining confidentiality claims.

40 CFR 703.5 (Nov. 3, 2023)

This content is from the eCFR and is authoritative but unofficial.

**Title 40 —Protection of Environment**
**Chapter I —Environmental Protection Agency**
**Subchapter R —Toxic Substances Control Act**
**Part 703 —Confidentiality Claims**
**Authority:** 15 U.S.C. 2613.
**Source:** 88 FR 37166, June 7, 2023, unless otherwise noted.

## § 703.5 Requirements for asserting and maintaining confidentiality claims.

Any person who submits information under TSCA or these implementing regulations may assert a business confidentiality claim to information included in such submission except where such a claim is disallowed by applicable regulation under this subchapter. Such claim must be made concurrent with submission of the information. If no such claim accompanies the submission, EPA will not recognize a confidentiality claim, and the information in or referred to in that submission may be made available to the public (e.g., by publication of specific chemical name and CASRN on the public portion of the TSCA Inventory) without further notice.

(a) *Supporting statement and certification.*

    (1) A person asserting a confidentiality claim must submit a statement that the person has:

        (i) Taken reasonable measures to protect the confidentiality of the information;

        (ii) Determined that the information is not required to be disclosed or otherwise made available to the public under any other Federal law;

        (iii) A reasonable basis to conclude that disclosure of the information is likely to cause substantial harm to the competitive position of the person; and

        (iv) A reasonable basis to believe that the information is not readily discoverable through reverse engineering.

    (2) The person must also certify that these four statements and any information required to substantiate the confidentiality claim in accordance with paragraph (b) of this section are true and correct.

(b) *Substantiation.*

    (1) Confidentiality claims must be substantiated at the time of submission to EPA, unless exempt under paragraph (b)(5) of this section. In the case of information collected by EPA or on behalf of EPA in person at the site of a TSCA inspection under section 11 of the Act, the affected company must assert its confidentiality claim(s) in writing at the time the information is collected, and then must provide substantiation of its confidentiality claims and the supporting statement and certification described in paragraph (a) of this section within ten business days after the inspection ends. Confidentiality claims lacking required substantiation after ten business days will be treated as deficient under paragraph (e) of this section. Unless otherwise directed by EPA, such information or materials must be submitted via CDX. In the case of an unusually voluminous document collection under section 11 of the Act, the affected company may request additional time to assert claims and provide substantiation, which EPA may grant at its discretion. The inspection is considered to have ended when the inspector physically exits the regulated facility on the last day of the inspection.

ADD-30

40 CFR 703.5 (up to date as of 11/03/2023)
Requirements for asserting and maintaining confidentiality claims.

40 CFR 703.5(b)(2)

(2) Information in substantiations may be claimed as confidential. Such claims must be accompanied by the certification described in paragraph (a) of this section but need not be themselves separately substantiated.

(3) Substantiation questions for all claims. Unless otherwise specified elsewhere in this subchapter (e.g., 40 CFR part 711), answers to the following questions must be provided for each confidentiality claim in a TSCA submission:

  (i) Please specifically explain what harm to the competitive position of your business would be likely to result from the release of the information claimed as confidential. How would that harm be *substantial*? Why is the substantial harm to your competitive position *likely* (*i.e.,* probable) to be caused by release of the information rather than just *possible*? If you claimed multiple types of information to be confidential (e.g., site information, exposure information, environmental release information, etc.), explain how disclosure of each type of information would be likely to cause substantial harm to the competitive position of your business.

  (ii) Has your business taken precautions to protect the confidentiality of the disclosed information? If yes, please explain and identify the specific measures, including but not limited to internal controls, that your business has taken to protect the information claimed as confidential. If the same or similar information was previously reported to EPA as non-confidential (such as in an earlier version of this submission), please explain the circumstances of that prior submission and reasons for believing the information is nonetheless still confidential.

  (iii)

    (A) Is any of the information claimed as confidential required to be publicly disclosed under any other Federal law? If yes, please explain.

    (B) Does any of the information claimed as confidential otherwise appear in any public documents, including (but not limited to) safety data sheets; advertising or promotional material; professional or trade publications; State, local, or Federal agency files; or any other media or publications available to the general public? If yes, please explain why the information should be treated as confidential. If this chemical is patented and the patent reveals the information you are claiming confidential, please explain your reasons for believing the information is nonetheless still confidential.

  (iv) Is the claim of confidentiality intended to last less than 10 years (see TSCA section 14(e)(1)(B))? If yes, please indicate the number of years (between 1 and 10 years) or the specific date after which the claim is withdrawn.

  (v) Has EPA, another Federal agency, or court made any confidentiality determination regarding information associated with this chemical substance? If yes, please provide the circumstances associated with the prior determination, whether or not the information was found to be entitled to confidential treatment, the entity that made the decision, and the date of the determination.

(4) Additional substantiation questions for chemical identity-related claims only. Unless otherwise specified in the relevant electronic reporting form, answers to the following questions must be provided for each chemical identity-related confidentiality claim in a TSCA submission:

  (i) Is this chemical substance publicly known (including by your competitors) to be in U.S. commerce? If yes, please explain why the specific chemical identity should still be afforded confidential status (e.g., the chemical substance is publicly known only as being distributed in

ADD-31

commerce for research and development purposes, but no other information about the current commercial distribution of the chemical substance in the United States is publicly available). If no, please complete the certification statement:

I certify that on the date referenced I searched the internet for the chemical substance identity (*i.e.,* by both chemical substance name and CASRN). I did not find a reference to this chemical substance and have no knowledge of public information that would indicate that the chemical is being manufactured or imported by anyone for a commercial purpose in the United States. [provide date].

(ii) Does this specific chemical substance leave the site of manufacture (including import) in any form, e.g., as a product, effluent, emission? If yes, please explain what measures have been taken to guard against the discovery of its identity.

(iii) If the chemical substance leaves the site in a form that is available to the public or your competitors, can the chemical identity be readily discovered by analysis of the substance (e.g., product, effluent, emission), in light of existing technologies and any costs, difficulties, or limitations associated with such technologies? Please explain why or why not.

(iv) Would disclosure of the specific chemical identity release confidential process information? If yes, please explain.

(5) Information described in paragraphs (b)(5)(i) and (ii) of this section is exempt from the requirement to substantiate the claim at the time of submission. EPA may identify on a reporting form certain information as exempt from substantiation. Additional assertions of exemption from substantiation may be asserted by the submitter. Each such assertion must include a detailed explanation for why the information falls within the claimed exemption. If the explanation is missing or inadequate, and the claim is not otherwise substantiated, EPA will place a hold on the submission, as described in paragraph (e) of this section.

(i) The following information types are exempt from the substantiation requirement at the time of information submission:

(A) Specific information describing the processes used in manufacture or processing of a chemical substance, mixture, or article;

(B) Marketing and sales information;

(C) Information identifying a supplier or customer;

(D) Details of the full composition of a mixture and the respective percentages of constituents;

(E) Specific information regarding the use, function, or application of a chemical substance or mixture in a process, mixture, or article; and

(F) Specific production or import volumes.

(ii) Exemption for chemical substances not yet offered for commercial distribution.

(A) A confidentiality claim for specific identity of a chemical substance, where the submission is made prior to the date on which the chemical substance whose identity is claimed as confidential is first offered for commercial distribution, is exempt from the requirement to substantiate confidentiality claims at the time of submission.

ADD-32

(B)  A specific chemical identity claim includes specific chemical names, CAS numbers, molecular formulas, reactants (if required to be reported as part of the identification of the chemical, such as for Class 2 substances in § 720.45(a) of this subchapter), and structural diagrams; or in the case of microorganisms, genus and species name and genetic construct.

(C)  This exemption applies where the submitter lacks information to reasonably conclude that the chemical substance has been offered for commercial distribution, where both:

    (1)  The chemical substance is not on the TSCA Inventory; and

    (2)  The substance is otherwise not publicly known to have been offered for commercial distribution.

(c)  *Public copies.* All TSCA submissions and their accompanying attachments that include a confidentiality claim must be accompanied, at the time of submission, by a public version of the submission and any attachments, with all information that is claimed as confidential removed. In the case of documents collected by EPA or on behalf of EPA in person at the site of a TSCA inspection under section 11 of the Act, the affected company must provide such public copies at the same time and in the same manner as it provides substantiation of its confidentiality claims in accordance with paragraph (b)(1) of this section, within ten working days after the inspection ends. Only information that is claimed as confidential may be redacted or removed. Generally, a public copy that removes all or substantially all of the information would not meet the requirements of this paragraph (c) so will likely be treated as deficient under paragraph (e) of this section.

(1)  Where the applicable reporting form or electronic reporting tool contains a checkbox or other means of designating with specificity what information is claimed as confidential, no further action by the submitter is required to satisfy this requirement.

(2)  For all other information claimed as confidential, including but not limited to information in attachments and in substantiations required under paragraph (b) of this section, the submitter must prepare and attach a public copy. EPA may treat as deficient submissions with public copies that are entirely blank or that are substantially reduced in length as compared to the CBI version (*see* paragraph (e) of this section).

(d)  *Generic name.* Each confidentiality claim for specific chemical identity must be accompanied by a structurally descriptive generic name for that substance. This generic name must be consistent with guidance on the determination of structurally descriptive generic names developed in accordance with, and made binding by, section 14(c)(4)(A) of the Act (e.g., *Guidance for Creating Generic Names for Confidential Chemical Substance Identity Reporting under TSCA;* available at *https://www.epa.gov/tsca-inventory/guidance-creating-generic-names-confidential-chemical-substance-identity-reporting*), and 15 U.S.C. 2613(c)(1)(C)(ii).

(1)  At a minimum, the generic name must either:

    (i)  Be identical to the generic name for the same substance included on the non-confidential portion of the TSCA Inventory (if the substance is listed on the TSCA Inventory), or

ADD-33

**40 CFR 703.5 (up to date as of 11/03/2023)**
Requirements for asserting and maintaining confidentiality claims.

**40 CFR 703.5(d)(1)(ii)**

(ii) For substances that are not listed on the TSCA Inventory, mask only the confidential portions of the specific chemical name. In most cases, only one structural element of a specific chemical name may be masked to protect a confidential chemical identity—if the submitter of a proposed generic name wishes to mask more than one such element, the submission must include an explanation of why masking only one element is insufficient to protect the confidential identity.

(2) Notwithstanding paragraph (d)(1) of this section, EPA may conclude that a generic name provided with the submission and listed on the current non-confidential version of the TSCA Inventory does not comply with 15 U.S.C. 2613(c)(1)(C). In such cases, EPA will notify the submitting company and proceed as described in paragraph (c)(4) of this section.

(3) A generic name that meets the requirements of section 14(c)(1)(C) of the Act prior to the date on which the chemical substance is first offered for commercial distribution for the purposes of a pre-market submission (e.g., a PMN) may not be sufficient for the purposes of subsequent listing on the TSCA Inventory, as identified upon review under section 14(g)(1)(C)(i) of the Act of a confidentiality claim for specific chemical identity made in a Notice of Commencement required under § 720.102 or § 725.190(f) of this subchapter. In such cases, EPA will notify the submitting company and proceed as described in § 720.102(f) or § 725.190(f) of this subchapter.

(4) If EPA concludes that the proposed generic name does not comply with 15 U.S.C. 2613(c)(1)(C), EPA will notify the submitter, and provide 10 business days for the submitter to provide a revised generic name. If EPA concludes that the revised generic name is still not acceptable, EPA will hold the submission for an additional period of up to 10 business days, proceeding as set out in paragraph (e) of this section.

(e) *Deficient confidentiality claims.*

(1) A confidentiality claim under TSCA is deficient if it meets one or more of the following criteria:

(i) The confidentiality claim is not accompanied by the supporting statement and certification required by paragraph (a) of this section.

(ii) The confidentiality claim is not accompanied by the substantiation required by paragraph (b) of this section. If the submitter claims an exemption from substantiation under paragraph (b)(5) of this section and the exemption does not apply or an explanation is not provided for the exemption pursuant to paragraph (b)(5) of this section, the confidentiality claim is deficient.

(iii) The confidentiality claim is not accompanied by a public copy that meets the requirements of paragraph (c) of this section.

(iv) The confidentiality claim is for a specific chemical identity and is not accompanied by a generic name that meets the requirements of paragraph (d) of this section.

(2) A submission that is identified as deficient under paragraph (e)(1) of this section will be held for a period of up to 10 business days, and the submitter will be notified via CDX as described in paragraph (h) of this section. During the hold, which commences on the day the CDX notice is sent, any applicable review period for the underlying submission will be suspended until either the deficiency is corrected or the 10 business days elapse without such correction. Upon the occurrence of the first of either of these events, the applicable review period for the underlying submission commences or comes out of suspension. If the deficiency is not remedied during the suspension, EPA will proceed with review of the submission and may deny the CBI claim(s).

(f) *Electronic reporting required.*

ADD-34

(1) TSCA submissions bearing confidentiality claims must be submitted via CDX, except where EPA directs that information subpoenaed under section 11(c) of the Act or materials collected or requested by EPA as part of an inspection under section 11(a) of the Act, not be submitted via CDX. Any required TSCA submission asserting a CBI claim that does not meet the requirements of this paragraph will be deemed incomplete. EPA reserves the ability to waive the requirements of this paragraph, at its discretion, where compliance is infeasible.

(2) You must use CISS to complete and submit TSCA submissions via CDX. To access CISS go to *https://cdx.epa.gov/* and follow the appropriate links.

(3) On receipt by EPA, each electronic TSCA submission will be assigned a case number or document identifier, which will be available to the submitter in their CDX account. This identifier may be used as a reference in future communications that concern the substance and may be used by EPA in public communications (e.g., FEDERAL REGISTER notices) that concern the submission, such as notices of receipt, final confidentiality determination, pending confidentiality claim expiration, or in other regulatory actions that concern the TSCA submission.

(g) *Requirement to report health and safety studies using templates.* Submitters of health and safety studies or information from such studies must provide such data in templated form, using an appropriate OECD harmonized template, if such template is available for the data type (*https://www.oecd.org/ehs/templates/*). Individual test or data submission rules or orders may specify an appropriate template or templates. Submission of templated data is not a substitute for submitting a full study report where a specific TSCA rule or order requires submission of the full study report (e.g., § 720.50(a) of this subchapter, or according to the terms of a specific order under section 5(e) of the Act).

(h) *Requirement to maintain company contact information; electronic notices concerning confidentiality claims.*

(1) To facilitate ongoing or future communication concerning TSCA submissions, current contact information for all of the individuals associated with a particular TSCA submission must be maintained. Contact information for all the individuals associated with a particular TSCA submission must be updated by amending the submission via CDX, except that submissions that are either no longer accessible to the submitting company or that were not submitted via CDX (e.g., submissions that were originally provided on paper or other physical media), updated company contact must be provided via CDX using the appropriate EPA-provided electronic reporting application in CISS. In circumstances where ownership of the company or unit of a company has changed, such that contact information for one or more prior TSCA submissions that include confidentiality claims is affected, a notice of transfer of ownership must be directed to EPA via CDX. Instructions for providing this notice and for requesting access to copies of a prior TSCA submission are available at *https://cdx.epa.gov/*.

(2) When EPA contacts a TSCA submitter concerning confidentiality claims (e.g., related to a pending or concluded confidentiality claim review, a deficient submission, or in relation to the 10-year expiration of a confidentiality claim (described in section 14(e) of the Act)), EPA may provide notices and other correspondence to the submitter via CDX, using the contact information provided in the most recent version of the submission, or using the contact information provided in a more recent notice of transfer of ownership relating to that submission. The fact and date of delivery of such notice is verified automatically by CDX.

ADD-35

40 CFR 703.5 (up to date as of 11/03/2023)
Requirements for asserting and maintaining confidentiality claims.

40 CFR 703.5(h)(3)

(3) In addition to individual notice described in paragraph (h)(2) of this section, EPA will publish on its website, or other appropriate platform, a list of TSCA submissions with confidentiality claims that are approaching the end of the ten-year period of protection described in section 14(e) of the Act. Such TSCA submissions will be referred to by the TSCA case or document identifier (as described in paragraph (f)(3) of this section) that was assigned to the submission by EPA when it was originally submitted. TSCA submissions will be added to this list at least 60 days prior to the end of the ten-year period of protection, along with instructions for reasserting and substantiating expiring claims.

(4) When a confidentiality claim is being reviewed pursuant to section 14(f) of the Act, EPA will provide, when necessary, notice of such review and an opportunity to substantiate or resubstantiate the affected confidentiality claim to the submitter using the contact information for the authorized official or technical contact provided in the most recent version of the submission or in a more recent notice of transfer of ownership relating to that submission.

(5) Where the submission with the relevant CBI claim was not originally made via CDX, EPA will send the notice via courier or US Mail to the company address provided in the most recent TSCA submission made by that company, or via other means that allows verification of the fact and date of receipt. The notice will provide instructions for substantiating claims that were exempt from substantiation when the confidentiality claim was asserted or for which the submitter was otherwise not required to provide substantiation at the time of initial submission, and for updating or re-substantiating as necessary any claims that were previously substantiated.

(i) *Withdrawing confidentiality claims.* TSCA confidentiality claims may be voluntarily withdrawn by the submitter at any time.

(1) Confidentiality claims in TSCA submissions that were originally made via electronic submission may be withdrawn. To withdraw a claim, a person must reopen the submission in CDX, remove confidentiality markings (e.g., confidential checkmarks or bracketing), revise public copies including any attachments to unredact the information no longer claimed confidential, and then resubmit the submission.

(2) For submissions that were not originally made via CDX, or that are no longer accessible to the submitting company via CDX, confidentiality claims may also be withdrawn via CDX using the "TSCA Communications" application or successor system. The withdrawal correspondence must indicate the case or document number (or other applicable document identifier or document identifying details) from which CBI claims are being withdrawn, identify the submitting company, and include a list or description of the information for which CBI claims are being withdrawn, including page numbers where relevant. Current contact information for the person withdrawing the claim must also be provided, in the event EPA needs clarification concerning which claim or claims are being withdrawn.

(j) *Amending public copy following confidentiality claim denial or expiration.*

(1) Following the expiration or EPA's denial of a TSCA confidentiality claim, the person who asserted the denied or expired claim should prepare and submit a revised public copy of the submission to EPA, following the procedures for voluntarily withdrawing claims described in paragraph (i) of this section.

(2) If the person who asserted the denied or expired claim declines or fails to provide within 30 days a revised public copy of the submission that includes the information for which the confidentiality claim(s) were denied or expired, EPA may prepare an addendum to the original public copy, as needed, disclosing the information to the public.

ADD-36

TABLE 2—CASRN OF PARTIALLY EXEMPT CHEMICAL SUBSTANCES—Continued

| CASRN | Chemical |
|---|---|
| 68514–27–2 | Grease, catch basin. |
| 68514–74–9 | Palm oil, hydrogenated. |
| 68525–87–1 | Corn oil, hydrogenated. |
| 68648–87–3 | Benzene, C10–16-alkyl derivs. |
| 68918–42–3 | Soaps, stocks, soya. |
| 68952–94–3 | Soaps, stocks, vegetable-oil. |
| 68956–68–3 | Fats and glyceridic oils, vegetable. |
| 68989–98–0 | Fats and glyceridic oils, vegetable, residues. |
| 70131–50–9 | Bentonite, acid-leached. |
| 73138–67–7 | Lard, hydrogenated. |
| 120962–03–0 | Canola oil. |
| 129813–58–7 | Benzene, mono-C10–13-alkyl derivs. |
| 129813–59–8 | Benzene, mono-C12–14-alkyl derivs. |
| 129813–60–1 | Benzene, mono-C14–16-alkyl derivs. |
| 129828–16–6 | Fatty acids, canola oil, methyl esters. |
| 515152–40–6 | Fatty acids, corn oil, methyl esters. |

[76 FR 54933, Sept. 6, 2011, as amended at 79 FR 35098, June 19, 2014; 79 FR 66658, Nov. 10, 2014; 81 FR 17395, Mar. 29, 2016; 85 FR 20138, Apr. 9, 2020]

## § 711.8  Persons who must report.

Except as provided in §§ 711.9 and 711.10, the following persons are subject to the requirements of this part. Persons must determine whether they must report under this section for each chemical substance that they manufacture (including import) at an individual site.

(a) *Persons subject to recurring reporting.* Any person who manufactured (including imported) for commercial purposes 25,000 lb (11,340 kg) or more of a chemical substance described in § 711.5 at any single site owned or controlled by that person during any calendar year since the last principal reporting year.

(b) *Exceptions.* Any person who manufactured (including imported) for commercial purposes any chemical substance that is the subject of a rule proposed or promulgated under TSCA section 5(a)(2), 5(b)(4), or 6, or is the subject of an order in effect under TSCA section 4, 5(e) or 5(f), or is the subject of relief that has been granted under a civil action under TSCA sections 5 or 7 is subject to reporting as described in § 711.8(a), except that the applicable production volume threshold is 2,500 lb (1,134 kg).

[76 FR 54933, Sept. 6, 2011, as amended at 85 FR 20139, Apr. 9, 2020]

## § 711.9  Persons not subject to this part.

A person described in § 711.8 is not subject to the requirements of this part if that person qualifies as a small manufacturer or small government as those terms are defined in 40 CFR 704.3. Notwithstanding this exclusion, a person who qualifies as a small manufacturer or small government is subject to this part with respect to any chemical substance that is the subject of a rule proposed or promulgated under TSCA section 4, 5(b)(4), or 6, or is the subject of an order in effect under TSCA section 4 or 5(e), or is the subject of relief that has been granted under a civil action under TSCA section 5 or 7.

[85 FR 20139, Apr. 9, 2020]

## § 711.10  Activities for which reporting is not required.

A person described in § 711.8 is not subject to the requirements of this part with respect to any chemical substance described in § 711.5, when:

(a) The person manufactured or imported the chemical substance solely in small quantities for research and development.

(b) The person imported the chemical substance as part of an article.

(c) The person manufactured the chemical substance in a manner described in 40 CFR 720.30(g) or (h).

86

the start of the next principal reporting year.

(2) A quantity of the byproduct that is manufactured solely in the following equipment when it is not integral to the chemical manufacturing processes of the site:

(i) Pollution control equipment.

(ii) Boilers used to generate heat or electricity for that site.

[85 FR 20139, Apr. 9, 2020]

## § 711.15　Reporting information to EPA.

Any person who must report under this part, as described in § 711.8, must submit the information described in this section for each chemical substance described in § 711.5 that the person manufactured (including imported) for commercial purposes in an amount of 25,000 lb (11,340 kg) or more (or in an amount of 2,500 lb (1,134 kg) or more for chemical substances subject to the rules, orders, or actions described in § 711.8(b)) at any one site during any calendar year since the last principal reporting year (*e.g.*, for the 2020 submission period, consider calendar years 2016, 2017, 2018, and 2019, because 2015 was the last principal reporting year). The principal reporting year for each submission period is the previous calendar year (*e.g.*, the principal reporting year for the 2020 submission period is calendar year 2019). For all submission periods, a separate report must be submitted for each chemical substance at each site for which the submitter is required to report. A submitter of information under this part must report information as described in this section to the extent that such information is known to or reasonably ascertainable by that person.

(a) *Reporting information to EPA.* Any person who reports information to EPA must complete a Form U using the e-CDRweb reporting tool provided by EPA at the address set forth in § 711.35. The submission must include all information described in paragraph (b) of this section. Persons must submit the chemical reports on a separate single Form U for each site for which the person is required to report. The e-CDRweb reporting tool is described in the instructions available from EPA at the website set forth in § 711.35.

(b) *Information to be reported.* The information described in paragraphs (b)(1) through (4) of this section must be reported for each chemical substance manufactured (including imported) in an amount of 25,000 lb (11,340 kg) or more (or in an amount of 2,500 lb (1,134 kg) or more for chemical substances subject to the rules, orders, or actions described in § 711.8(b)) at any one site during any calendar year since the last principal reporting year. The requirement to report information described in paragraph (b)(4) of this section is subject to exemption as described in § 711.6.

(1) *A certification statement signed and dated by an authorized official of the submitter company.* The authorized official must certify that the submitted information has been completed in compliance with the requirements of this part and that the confidentiality claims made on the Form U are true and correct. The certification must be signed and dated by the authorized official for the submitter company, and provide that person's name, official title, and email address.

(2) *Company and site information.* The following currently correct parent company and site information at the date of CDR submission must be reported for each site at which a reportable chemical substance is manufactured (including imported) above the applicable production volume threshold, as described in this section (see § 711.3 for the "site" for importers and special situations).

(i) The legal name, address, and Dun and Bradstreet D–U–N–S® (D&B) number for the highest-level parent company located in the United States and, if one exists, for the highest-level foreign-based parent company. A submitter under this part must obtain a D&B number for the parent company if none exists and must report using the standardized conventions for the naming of a parent company as provided in the CDR Instructions for Reporting identified in § 711.35.

(ii) The name of a person who will serve as technical contact for the submitter company who will be able to answer questions about the information submitted by the company to EPA, and that technical contact person's full

mailing address, telephone number, and email address.

(iii) The legal name and full street address of each site. A submitter under this part must include the appropriate D&B number for each site reported, and the county or parish (or other jurisdictional indicator) in which the site is located. A submitter under this part must obtain a D&B number for the site reported if none exists. For a co-manufacturing situation in which the contracting company initiates the report, the contracting company must report both the site controlling the contract and the producing company's site information.

(iv) The six-digit NAICS code for the site. A submitter under this part must include the appropriate six-digit NAICS code for each site reported.

(3) *Chemical-specific information.* The following chemical-specific information must be reported for each reportable chemical substance manufactured (including imported) above the applicable production volume threshold, as described in paragraph (b) of this section:

(i) The specific, currently correct CA Index name as used to list the chemical substance on the TSCA Inventory and the correct corresponding CASRN for each reportable chemical substance at each site. Submitters who wish to report chemical substances listed on the confidential portion of the TSCA Inventory will need to report the chemical substance using the corresponding TSCA Accession Number that is listed on the public portion of the Inventory. In addition to reporting the chemical identifying number itself, submitters must specify the type of number they are reporting by selecting from among the codes in Table 1 to paragraph (b)(3)(i).

TABLE 1 TO PARAGRAPH (b)(3)(i)—CODES TO SPECIFY TYPE OF CHEMICAL IDENTIFYING NUMBER

| Code | Number type |
|------|-------------|
| A ......... | TSCA Accession Number. |
| C ......... | Chemical Abstracts Service Registry Number (CASRN). |

(A) If an importer submitting a report cannot provide the information specified in this paragraph (b)(3)(i) be-

cause it is unknown to the importer and claimed as confidential by the supplier of the chemical substance or mixture, the importer must use e-CDRweb to ask the supplier to provide the correct chemical identity and, in the case of a mixture, the percentage of formulation and chemical function information directly to EPA in a joint submission. Such request must include instructions for submitting chemical identity information electronically, using e-CDRweb and CDX (see §711.35), and for clearly referencing the importer's submission. Contact information for the supplier, a trade name or other designation for the chemical substance or mixture, and a copy of the request to the supplier must be included with the importer's submission.

(B) If a manufacturer submitting a report cannot provide the information specified in this paragraph (b)(3)(i) because the reportable chemical substance is manufactured using a reactant having a specific chemical identity that is unknown to the manufacturer and claimed as confidential by its supplier, the manufacturer must use e-CDRweb to ask the supplier of the confidential reactant to provide the correct chemical identity of the confidential reactant directly to EPA in a joint submission. Such request must include instructions for submitting chemical identity information electronically using e-CDRweb and CDX (see §711.35), and for clearly referencing the manufacturer's submission. Contact information for the supplier, a trade name or other designation for the chemical substance, and a copy of the request to the supplier must be included with the importer's submission.

(C) EPA will accept only joint submissions that are submitted electronically using e-CDRweb and CDX (see §711.35) and that clearly reference the primary submission to which they refer.

(ii) For the principal reporting year only, a statement indicating, for each reportable chemical substance at each site, whether the chemical substance is manufactured in the United States, imported into the United States, or both manufactured in the United States and imported into the United States.

89

(iii) For the principal reporting year only, the total annual volume (in pounds) of each reportable chemical substance domestically manufactured or imported at each site. The total annual domestically manufactured volume (not including imported volume) and the total annual imported volume must be separately reported. These amounts must be reported to two significant figures of accuracy. In addition, the total annual volume (domestically manufactured plus imported volumes in pounds) of each reportable chemical substance at each site for each complete calendar year since the last principal reporting year.

(iv) For the principal reporting year only, the volume used on site and the volume directly exported of each reportable chemical substance domestically manufactured or imported at each site. These amounts must be reported to two significant figures of accuracy.

(v) For the principal reporting year only, a designation indicating, for each imported reportable chemical substance at each site, whether the imported chemical substance is physically present at the reporting site.

(vi) For the principal reporting year only, a designation indicating, for each reportable chemical substance at each site, whether the chemical substance is being recycled or otherwise used for a commercial purpose instead of being disposed of as a waste or included in a waste stream.

(vii) For the principal reporting year only, the total number of workers reasonably likely to be exposed to each reportable chemical substance at each site. For each reportable chemical substance at each site, the submitter must select from among the ranges of workers listed in Table 2 to paragraph (b)(3)(vii) and report the corresponding code (i.e., W1 through W8):

TABLE 2 TO PARAGRAPH (b)(3)(vii)—CODES FOR REPORTING NUMBER OF WORKERS REASONABLY LIKELY TO BE EXPOSED

| Code | Range |
|------|-------|
| W1 ...... | Fewer than 10 workers. |
| W2 ...... | At least 10 but fewer than 25 workers. |
| W3 ...... | At least 25 but fewer than 50 workers. |
| W4 ...... | At least 50 but fewer than 100 workers. |

TABLE 2 TO PARAGRAPH (b)(3)(vii)—CODES FOR REPORTING NUMBER OF WORKERS REASONABLY LIKELY TO BE EXPOSED—Continued

| Code | Range |
|------|-------|
| W5 ...... | At least 100 but fewer than 500 workers. |
| W6 ...... | At least 500 but fewer than 1,000 workers. |
| W7 ...... | At least 1,000 but fewer than 10,000 workers. |
| W8 ...... | At least 10,000 workers. |

(viii) For the principal reporting year only, the maximum concentration, measured by percentage of weight, of each reportable chemical substance at the time it is sent off-site from each site. If the chemical substance is site-limited, you must report the maximum concentration, measured by percentage of weight of the reportable chemical substance at the time it is reacted on-site to produce a different chemical substance. This information must be reported regardless of the physical form(s) in which the chemical substance is sent off-site/reacted on-site. For each chemical substance at each site, select the maximum concentration of the chemical substance from among the ranges listed in Table 3 to paragraph (b)(3)(viii) and report the corresponding code (i.e., M1 through M5):

TABLE 3 TO PARAGRAPH (b)(3)(viii)—CODES FOR REPORTING MAXIMUM CONCENTRATION OF CHEMICAL SUBSTANCE

| Code | Concentration range (percent weight) |
|------|--------------------------------------|
| M1 ...... | Less than 1 percent by weight. |
| M2 ...... | At least 1 but less than 30 percent by weight. |
| M3 ...... | At least 30 but less than 60 percent by weight. |
| M4 ...... | At least 60 but less than 90 percent by weight. |
| M5 ...... | At least 90 percent by weight. |

(ix) For the principal reporting year only, the physical form(s) of the reportable chemical substance as it is sent off-site from each site. If the chemical substance is site-limited, you must report the physical form(s) of the reportable chemical substance at the time it is reacted on-site to produce a different chemical substance. For each chemical substance at each site, the

submitter must report as many physical forms as applicable from among the physical forms listed in this Unit:

(A) Dry powder.

(B) Pellets or large crystals.

(C) Water- or solvent-wet solid.

(D) Other solid.

(E) Gas or vapor.

(F) Liquid.

(x) For the principal reporting year only, submitters must report the percentage, rounded off to the closest 10 percent, of total production volume of the reportable chemical substance, reported in response to paragraph (b)(3)(iii) of this section, that is associated with each physical form reported under paragraph (b)(3)(ix) of this section.

(4) *Chemical-specific information related to processing and use.* The following chemical-specific information must be reported for each reportable chemical substance manufactured (including imported) above the applicable production volume threshold, as described in this section. Persons subject to paragraph (b)(4) of this section must report the information described in paragraphs (b)(4)(i) and (ii) of this section for each reportable chemical substance at sites under their control and at sites that receive a reportable chemical substance from the submitter directly or indirectly (including through a broker/distributor, from a customer of the submitter, *etc.*). Information reported in response to this paragraph must be reported for the principal reporting year only and only to the extent that it is known to or reasonably ascertainable by the submitter. Information required to be reported under this paragraph is limited to domestic (*i.e.,* within the customs territory of the United States) processing and use activities. If information responsive to a given data requirement under this paragraph, including information in the form of an estimate, is not known or reasonably ascertainable, the submitter is not required to respond to the requirement.

(i) *Industrial processing and use information.* (A) A designation indicating the type of industrial processing or use operation(s) at each site that receives a reportable chemical substance from the submitter site directly or indi-

rectly (whether the recipient site(s) are controlled by the submitter site or not). For each chemical substance, report the letters which correspond to the appropriate processing or use operation(s) listed in Table 4 to paragraph (b)(4)(i)(A). A particular designation may need to be reported more than once, to the extent that a submitter reports more than one sector (under paragraph (b)(4)(i)(B) of this section) that applies to a given designation under this paragraph.

TABLE 4 TO PARAGRAPH (b)(4)(i)(A)—CODES FOR REPORTING TYPE OF INDUSTRIAL PROCESSING OR USE OPERATION

| Designation | Operation |
| --- | --- |
| PC ............... | Processing as a reactant. |
| PF ............... | Processing—incorporation into formulation, mixture, or reaction product. |
| PA ............... | Processing—incorporation into article. |
| PK ............... | Processing—repackaging. |
| U ................. | Use—non-incorporative activities. |

(B) A code indicating the sector(s) that best describe the industrial activities associated with each industrial processing or use operation reported under paragraph (b)(4)(i)(A) of this section. For each chemical substance, report the code that corresponds to the appropriate sector(s) listed in Table 5 to paragraph (b)(4)(i)(B). A particular sector code may need to be reported more than once, to the extent that a submitter reports more than one function code (under paragraph (b)(4)(i)(C) of this section) that applies to a given sector code under this paragraph.

TABLE 5 TO PARAGRAPH (b)(4)(i)(B)—CODES FOR REPORTING INDUSTRIAL SECTORS

| Code | Sector description |
| --- | --- |
| IS1 ............... | Agriculture, forestry, fishing, and hunting. |
| IS2 ............... | Oil and gas drilling, extraction, and support activities. |
| IS3 ............... | Mining (except oil and gas) and support activities. |
| IS4 ............... | Utilities. |
| IS5 ............... | Construction. |
| IS6 ............... | Food, beverage, and tobacco product manufacturing. |
| IS7 ............... | Textiles, apparel, and leather manufacturing. |
| IS8 ............... | Wood product manufacturing. |
| IS9 ............... | Paper manufacturing. |
| IS10 ............ | Printing and related support activities. |

TABLE 5 TO PARAGRAPH (b)(4)(i)(B)—CODES FOR REPORTING INDUSTRIAL SECTORS—Continued

| Code | Sector description |
|---|---|
| IS11 ............ | Petroleum refineries. |
| IS12 ............ | Asphalt paving, roofing, and coating materials manufacturing. |
| IS13 ............ | Petroleum lubricating oil and grease manufacturing. |
| IS14 ............ | All other petroleum and coal products manufacturing. |
| IS15 ............ | Petrochemical manufacturing. |
| IS16 ............ | Industrial gas manufacturing. |
| IS17 ............ | Synthetic dye and pigment manufacturing. |
| IS18 ............ | Carbon black manufacturing. |
| IS19 ............ | All other basic inorganic chemical manufacturing. |
| IS20 ............ | Cyclic crude and intermediate manufacturing. |
| IS21 ............ | All other basic organic chemical manufacturing. |
| IS22 ............ | Plastics material and resin manufacturing. |
| IS23 ............ | Synthetic rubber manufacturing. |
| IS24 ............ | Organic fiber manufacturing. |
| IS25 ............ | Pesticide, fertilizer, and other agricultural chemical manufacturing. |
| IS26 ............ | Pharmaceutical and medicine manufacturing. |
| IS27 ............ | Paint and coating manufacturing. |
| IS28 ............ | Adhesive manufacturing. |
| IS29 ............ | Soap, cleaning compound, and toilet preparation manufacturing. |
| IS30 ............ | Printing ink manufacturing. |
| IS31 ............ | Explosives manufacturing. |
| IS32 ............ | Custom compounding of purchased resins. |
| IS33 ............ | Photographic film, paper, plate, and chemical manufacturing. |
| IS34 ............ | All other chemical product and preparation manufacturing. |
| IS35 ............ | Plastics product manufacturing. |
| IS36 ............ | Rubber product manufacturing. |
| IS37 ............ | Non-metallic mineral product manufacturing (includes cement, clay, concrete, glass, gypsum, lime, and other non-metallic mineral product manufacturing). |
| IS38 ............ | Primary metal manufacturing. |
| IS39 ............ | Fabricated metal product manufacturing. |
| IS40 ............ | Machinery manufacturing. |
| IS41 ............ | Computer and electronic product manufacturing. |
| IS42 ............ | Electrical equipment, appliance, and component manufacturing. |
| IS43 ............ | Transportation equipment manufacturing. |
| IS44 ............ | Furniture and related product manufacturing. |
| IS45 ............ | Miscellaneous manufacturing. |
| IS46 ............ | Wholesale and retail trade. |
| IS47 ............ | Services. |

TABLE 5 TO PARAGRAPH (b)(4)(i)(B)—CODES FOR REPORTING INDUSTRIAL SECTORS—Continued

| Code | Sector description |
|---|---|
| IS48 ............ | Other (requires additional information). |

(C) For each sector reported under paragraph (b)(4)(i)(B) of this section, the applicable code(s) from Table 6 to paragraph (b)(4)(i)(C) must be selected to designate the function category(ies) that best represents the specific manner in which the chemical substance is used. For the 2020 submission period:

(1) Use column A in Table 6 to paragraph (b)(4)(i)(C) for chemical substances designated in 2019 as high priority for risk evaluation (those chemicals listed in Table 7 to paragraph (b)(4)(i)(C)); and

(2) Use either column A or B in Table 6 to paragraph (b)(4)(i)(C) for chemical substances not listed in Table 7 to paragraph (b)(4)(i)(C). For the 2024 and future submission periods, use only column A in Table 6 to paragraph (b)(4)(i)(C). A particular function category may need to be reported more than once, to the extent that a submitter reports more than one industrial processing or use operation/sector combination (under paragraphs (b)(4)(i)(A) and (B) of this section) that applies to a given function category under this paragraph. If more than 10 unique combinations of industrial processing or use operations/sector/function categories apply to a chemical substance, submitters need only report the 10 unique combinations for the chemical substance that cumulatively represent the largest percentage of the submitter's production volume for that chemical substance, measured by weight. If none of the listed function categories accurately describes a use of a chemical substance, the category "Other" may be used, and must include a description of the use.

TABLE 6 TO PARAGRAPH (b)(4)(i)(C)—CODES FOR REPORTING FUNCTION CATEGORIES

| Column A | | Column B | |
|---|---|---|---|
| Code | Category | Code | Category |
| F001 ... | Abrasives ............. | U001 .... | Abrasives. |
| F002 ... | Etching agent. | | |

TABLE 6 TO PARAGRAPH (b)(4)(i)(C)—CODES FOR REPORTING FUNCTION CATEGORIES—Continued

| Column A | | Column B | |
|---|---|---|---|
| Code | Category | Code | Category |
| F003 ... | Adhesion/cohesion promoter. | U002 | Adhesives and sealant chemicals. |
| F004 ... | Binder. | | |
| F005 ... | Flux agent. | | |
| F006 ... | Sealant (barrier). | | |
| F007 ... | Absorbent | U003 | Absorbents and absorbents. |
| F008 ... | Adsorbent. | | |
| F009 ... | Dehydrating agent (desiccant). | | |
| F010 ... | Drier. | | |
| F011 ... | Humectant. | | |
| F012 ... | Soil amendments (fertilizers). | U004 | Agricultural chemicals (non-pesticidal). |
| F013 ... | Anti-adhesive/cohesive. | U005 | Anti-adhesive agents. |
| F014 ... | Dusting agent. | | |
| F015 ... | Bleaching agent | U006 | Bleaching agents. |
| F016 ... | Brightener. | | |
| F017 ... | Anti-scaling agent | U007 | Corrosion inhibitors and anti-scaling agents. |
| F018 ... | Corrosion inhibitor. | | |
| F019 ... | Dye | U008 | Dyes. |
| F020 ... | Fixing agent (mordant). | | |
| F021 ... | Hardener | U009 | Fillers. |
| F022 ... | Filler. | | |
| F023 ... | Anti-static agent | U010 | Finishing agents. |
| F024 ... | Softener and conditioner. | | |
| F025 ... | Swelling agent. | | |
| F026 ... | Tanning agent not otherwise specified. | | |
| F027 ... | Waterproofing agent. | | |
| F028 ... | Wrinkle resisting agent. | | |
| F029 ... | Flame retardant | U011 | Flame retardants. |
| F030 ... | Fuel agents | U012 | Fuels and fuel additives. |
| F031 ... | Fuel. | | |
| F032 ... | Heat transferring agent. | U013 | Functional fluids (closed systems). |
| F033 ... | Hydraulic fluids. | | |
| F034 ... | Insulators. | | |
| F035 ... | Refrigerants. | | |
| F036 ... | Anti-freeze agent | U014 | Functional fluids (open systems). |
| F037 ... | Intermediate | U015 | Intermediates. |
| F038 ... | Monomers. | | |
| F039 ... | Ion exchange agent. | U016 | Ion exchange agents. |
| F040 ... | Anti-slip agent | U017 | Lubricants and lubricant additives. |
| F041 ... | Lubricating agent. | | |
| F042 ... | Deodorizer | U018 | Odor agents. |
| F043 ... | Fragrance. | | |
| F044 ... | Oxidizing agent | U019 | Oxidizing/reducing agents. |
| F045 ... | Reducing agent. | | |
| F046 ... | Photosensitive agent. | U020 | Photosensitive chemicals. |
| F047 ... | Photosensitizers. | | |

TABLE 6 TO PARAGRAPH (b)(4)(i)(C)—CODES FOR REPORTING FUNCTION CATEGORIES—Continued

| Column A | | Column B | |
|---|---|---|---|
| Code | Category | Code | Category |
| F048 ... | Semiconductor and photovoltaic agent. | | |
| F049 ... | UV stabilizer. | | |
| F050 ... | Opacifer | U021 | Pigments. |
| F051 ... | Pigment. | | |
| F052 ... | Plasticizer | U022 | Plasticizers. |
| F053 ... | Plating agent | U023 | Plating agents and surface treating agents. |
| F054 ... | Catalyst | U024 | Process regulators. |
| F055 ... | Chain transfer agent. | | |
| F056 ... | Chemical reaction regulator. | | |
| F057 ... | Crystal growth modifiers (nucleating agents). | | |
| F058 ... | Polymerization promoter. | | |
| F059 ... | Terminator/Blocker. | | |
| F060 ... | Processing aids, specific to petroleum production. | U025 | Processing aids, specific to petroleum production. |
| F061 ... | Antioxidant | U026 | Processing aids, not otherwise listed. |
| F062 ... | Chelating agent. | | |
| F063 ... | Defoamer. | | |
| F064 ... | pH regulating agent. | | |
| F065 ... | Processing aids not otherwise specified. | | |
| F066 ... | Energy Releasers (explosives, motive propellant). | U027 | Propellants and blowing agents. |
| F067 ... | Foamant. | | |
| F068 ... | Propellants, non-motive (blowing agents). | | |
| F069 ... | Cloud-point depressant. | U028 | Solids separation agents. |
| F070 ... | Flocculating agent. | | |
| F071 ... | Flotation agent. | | |
| F072 ... | Solids separation (precipitating) agent, not otherwise specified. | | |
| F073 ... | Cleaning agent | U029 | Solvents (for cleaning or degreasing). |
| F074 ... | Diluent | U030 | Solvents (which become part of product formulation or mixture). |
| F075 ... | Solvent. | | |
| F076 ... | Surfactant (surface active agent). | U031 | Surface active agents. |
| F077 ... | Emulsifier. | | |
| F078 ... | Thickening agent | U032 | Viscosity adjustors. |
| F079 ... | Viscosity modifiers. | | |
| F080 ... | Laboratory chemicals. | U033 | Laboratory chemicals. |

TABLE 6 TO PARAGRAPH (b)(4)(i)(C)—CODES FOR REPORTING FUNCTION CATEGORIES—Continued

| Column A | | Column B | |
|---|---|---|---|
| Code | Category | Code | Category |
| F081 ... | Dispersing agent .. | U034 .... | Paint additives and coating additives not described by other categories. |
| F082 ... | Freeze-thaw additive. | | |
| F083 ... | Surface modifier. | | |
| F084 ... | Wetting agent (non-aqueous). | | |
| F085 ... | Aerating and deaerating agents. | U999 .... | Other (specify). |
| F086 ... | Explosion inhibitor. | | |
| F087 ... | Fire extinguishing agent. | | |
| F088 ... | Flavoring and nutrient. | | |
| F089 ... | Anti-redeposition agent. | | |
| F090 ... | Anti-stain agent. | | |
| F091 ... | Anti-streaking agent. | | |
| F092 ... | Conductive agent. | | |
| F093 ... | Incandescent agent. | | |
| F094 ... | Magnetic element. | | |
| F095 ... | Anti-condensation agent. | | |
| F096 ... | Coalescing agent. | | |
| F097 ... | Film former. | | |
| F098 ... | Demulsifier. | | |
| F099 ... | Stabilizing agent. | | |
| F100 ... | Alloys. | | |
| F101 ... | Density modifier. | | |
| F102 ... | Elasticizer. | | |
| F103 ... | Flow promoter. | | |
| F104 ... | Sizing agent. | | |
| F105 ... | Solubility enhancer. | | |
| F106 ... | Vapor pressure modifiers. | | |
| F107 ... | Embalming agent. | | |
| F108 ... | Heat stabilizer. | | |
| F109 ... | Preservative. | | |
| F110 ... | Anti-caking agent. | | |
| F111 ... | Deflocculant. | | |
| F112 ... | Dust suppressant. | | |
| F113 ... | Impregnation agent. | | |
| F114 ... | Leaching agent. | | |
| F115 ... | Tracer. | | |
| F116 ... | X-ray absorber. | | |
| F999 ... | Other. | | |

For the 2020 submission period: (1) Use column A for chemical substances designated in 2019 as high priority for risk evaluation (those chemicals listed in Table 7 to paragraph (b)(4)(i)(C) and (2) use either column A or B for chemical substances not listed in Table 7 to paragraph (b)(4)(i)(C).

For the 2024 and future submission periods, use only column A.

TABLE 7 TO PARAGRAPH (b)(4)(i)(C)—CASRNs OF CHEMICAL SUBSTANCES DESIGNATED AS HIGH PRIORITY FOR RISK EVALUATION UNDER TSCA SECTION 6(b) ON DECEMBER 30, 2019

| CASRN | Chemical substance |
|---|---|
| 106–46–7 ..................... | p-Dichlorobenzene. |
| 107–06–2 ..................... | 1,2-Dichloroethane. |
| 156–60–5 ..................... | trans-1,2-Dichloroethylene. |
| 95–50–1 ..................... | o-Dichlorobenzene. |
| 79–00–5 ..................... | 1,1,2-Trichloroethane. |
| 78–87–5 ..................... | 1,2-Dichloropropane. |
| 75–34–3 ..................... | 1,1-Dichloroethane. |
| 84–74–2 ..................... | Dibutyl phthalate (DBP) (1,2-Benzene-dicarboxylic acid, 1,2-dibutyl ester). |
| 85–68–7 ..................... | Butyl benzyl phthalate (BBP)—1,2-Benzene-dicarboxylic acid, 1-butyl 2(phenylmethyl) ester. |
| 117–81–7 ..................... | Di-ethylhexyl phthalate (DEHP)—(1,2-Benzene-dicarboxylic acid, 1,2-bis(2-ethylhexyl) ester). |
| 84–69–5 ..................... | Di-isobutyl phthalate (DIBP)—(1,2-Benzene-dicarboxylic acid, 1,2-bis-(2methylpropyl) ester). |
| 84–61–7 ..................... | Dicyclohexyl phthalate. |
| 79–94–7 ..................... | 4,4'-(1-Methylethylidene)bis[2,6-dibromophenol] (TBBPA). |
| 115–96–8 ..................... | Tris(2-chloroethyl] phosphate (TCEP). |
| 115–86–6 ..................... | Phosphoric acid, triphenyl ester (TPP). |
| 106–93–4 ..................... | Ethylene dibromide. |
| 106–99–0 ..................... | 1,3-Butadiene. |
| 1222–05–5 ..................... | 1,3,4,6,7,8-Hexahydro-4,6,6,7,8,8-hexamethylcyclopental[g]-2-benzopyran (HHCB). |
| 50–00–0 ..................... | Formaldehyde. |
| 85–44–9 ..................... | Phthalic anhydride. |

(D) The estimated percentage, rounded off to the closest 10 percent, of total production volume of the reportable chemical substance associated with each combination of industrial processing or use operation, sector, and function category. Where a particular combination of industrial processing or use operation, sector, and function category accounts for less than 5 percent of the submitter's site's total production volume of a reportable chemical substance, the percentage must not be rounded off to 0 percent if the production volume attributable to that industrial processing or use operation, sector, and function category combination is 25,000 lb (11,340 kg) or more during the reporting year. Instead, in such a case, submitters must report the percentage, rounded off to the closest 1 percent, of the submitter's site's total production volume of the reportable chemical substance associated with the particular combination of industrial

processing or use operation, sector, and function category.

(E) For each combination of industrial processing or use operation, sector, and function category, the submitter must estimate the number of sites at which each reportable chemical substance is processed or used. For each combination associated with each chemical substance, the submitter must select from among the ranges of sites listed in Table 8 to paragraph (b)(4)(i)(E) and report the corresponding code (*i.e.*, S1 through S7):

TABLE 8 TO PARAGRAPH (b)(4)(i)(E)—CODES FOR REPORTING NUMBERS OF SITES

| Code | Range |
|------|-------|
| S1 ........................... | Fewer than 10 sites. |
| S2 ........................... | At least 10 but fewer than 25 sites. |
| S3 ........................... | At least 25 but fewer than 100 sites. |
| S4 ........................... | At least 100 but fewer than 250 sites. |
| S5 ........................... | At least 250 but fewer than 1,000 sites. |
| S6 ........................... | At least 1,000 but fewer than 10,000 sites. |
| S7 ........................... | At least 10,000 sites. |

(F) For each combination of industrial processing or use operation, sector, and function category, the submitter must estimate the number of workers reasonably likely to be exposed to each reportable chemical substance. For each combination associated with each chemical substance, the submitter must select from among the worker ranges listed in paragraph (b)(3)(vii) of this section and report the corresponding code (*i.e.*, W1 though W8).

(ii) *Consumer and commercial use information.* (A) Using the applicable codes listed in Table 9 to paragraph (b)(4)(ii)(A), submitters must designate the consumer and commercial product category(ies) that best describe the consumer and commercial products in which each reportable chemical substance is used (whether the recipient site(s) are controlled by the submitter site or not). For the 2020 submission period:

(*1*) Use column A in Table 9 to paragraph (b)(4)(ii)(A) for chemical substances designated in 2019 as high priority for risk evaluation (those chemicals listed in Table 7 to paragraph (b)(4)(i)(C); and

(*2*) Use either column A or B in Table 9 to paragraph (b)(4)(ii)(A) for chemical substances not listed in Table 7 to paragraph (b)(4)(i)(C). For the 2024 and future submission periods, use only column A in Table 9 to paragraph (b)(4)(ii)(A). If more than 10 codes apply to a chemical substance, submitters need only report the 10 codes for the chemical substance that cumulatively represent the largest percentage of the submitter's production volume for that chemical, measured by weight. If none of the listed consumer and commercial product categories accurately describes the consumer and commercial products in which each reportable chemical substance is used, the category ''Other'' may be used, and must include a description of the use.

TABLE 9 TO PARAGRAPH (b)(4)(ii)(A)—CODES FOR REPORTING CONSUMER AND COMMERCIAL PRODUCT CATEGORIES

| Column A | | Column B | |
|----------|----------|----------|----------|
| Code | Category | Code | Category |
| **Chemical Substances in Furnishing, Cleaning, Treatment Care Products** | | | |
| CC101 | Construction and building materials covering large surface areas including stone, plaster, cement, glass and ceramic articles; fabrics, textiles, and apparel. | C101 .... | Floor coverings. |
| CC102 | Furniture & furnishings including plastic articles (soft); leather articles. | C102 .... | Foam seating and bedding products. |
| CC103 | Furniture & furnishings including stone, plaster, cement, glass and ceramic articles; metal articles; or rubber articles. | C103 .... | Furniture and furnishings not covered elsewhere. |
| CC104 | Leather conditioner. | C104 .... | Fabric, textile, and leather products not covered elsewhere. |
| CC105 | Leather tanning, dye, finishing, impregnation and care products. | | |

95

TABLE 9 TO PARAGRAPH (b)(4)(ii)(A)—CODES
FOR REPORTING CONSUMER AND COMMERCIAL
PRODUCT CATEGORIES—Continued

| Column A | | Column B | |
|---|---|---|---|
| Code | Category | Code | Category |
| CC106 | Textile (fabric) dyes. | | |
| CC107 | Textile finishing and impregnating/surface treatment products. | | |
| CC108 | All-purpose foam spray cleaner. | C105 .... | Cleaning and furnishing care products. |
| CC109 | All-purpose liquid cleaner/polish. | | |
| CC110 | All-purpose liquid spray cleaner. | | |
| CC111 | All-purpose waxes and polishes. | | |
| CC112 | Appliance cleaners. | | |
| CC113 | Drain and toilet cleaners (liquid). | | |
| CC114 | Powder cleaners (floors). | | |
| CC115 | Powder cleaners (porcelain). | | |
| CC116 | Dishwashing detergent (liquid/gel). | C106 .... | Laundry and dishwashing products. |
| CC117 | Dishwashing detergent (unit dose/granule). | | |
| CC118 | Dishwashing detergent liquid (hand-wash). | | |
| CC119 | Dry cleaning and associated products. | | |
| CC120 | Fabric enhancers. | | |
| CC121 | Laundry detergent (unit-dose/granule). | | |
| CC122 | Laundry detergent (liquid). | | |
| CC123 | Stain removers. | | |
| CC124 | Ion exchangers .... | C107 .... | Water treatment products. |
| CC125 | Liquid water treatment products. | | |
| CC126 | Solid/Powder water treatment products. | | |
| CC127 | Liquid body soap .. | C108 .... | Personal care products. |
| CC128 | Liquid hand soap. | | |
| CC129 | Solid bar soap. | | |
| CC130 | Air fresheners for motor vehicles. | C109 .... | Air care products. |
| CC131 | Continuous action air fresheners. | | |
| CC132 | Instant action air fresheners. | | |
| CC133 | Anti-static spray ... | C110 .... | Apparel and footwear care products. |
| CC134 | Apparel finishing, and impregnating/surface treatment products. | | |

TABLE 9 TO PARAGRAPH (b)(4)(ii)(A)—CODES
FOR REPORTING CONSUMER AND COMMERCIAL
PRODUCT CATEGORIES—Continued

| Column A | | Column B | |
|---|---|---|---|
| Code | Category | Code | Category |
| CC135 | Insect repellent treatment. | | |
| CC136 | Pre-market waxes, stains, and polishes applied to footwear. | | |
| CC137 | Post-market waxes, and polishes applied to footwear (shoe polish). | | |
| CC138 | Waterproofing and water-resistant sprays. | | |
| **Chemical Substances in Construction, Paint, Electrical, and Metal Products** | | | |
| CC201 | Fillers and putties | C201 .... | Adhesives and sealants. |
| CC202 | Hot-melt adhesives. | | |
| CC203 | One-component caulks. | | |
| CC204 | Solder. | | |
| CC205 | Single-component glues and adhesives. | | |
| CC206 | Two-component caulks. | | |
| CC207 | Two-component glues and adhesives. | | |
| CC208 | Adhesive/Caulk removers. | C202 .... | Paints and coatings. |
| CC209 | Aerosol spray paints. | | |
| CC210 | Lacquers, stains, varnishes and floor finishes. | | |
| CC211 | Paint strippers/removers. | | |
| CC212 | Powder coatings. | | |
| CC213 | Radiation curable coatings. | | |
| CC214 | Solvent-based paint. | | |
| CC215 | Thinners. | | |
| CC216 | Water-based paint. | | |
| CC217 | Construction and building materials covering large surface areas, including wood articles. | C203 .... | Building/construction materials—wood and engineered wood products. |
| CC218 | Construction and building materials covering large surface areas, including paper articles; metal articles; stone, plaster, cement, glass and ceramic articles. | C204 .... | Building/construction materials not covered elsewhere. |

TABLE 9 TO PARAGRAPH (b)(4)(ii)(A)—CODES FOR REPORTING CONSUMER AND COMMERCIAL PRODUCT CATEGORIES—Continued

| Column A | | Column B | |
|---|---|---|---|
| Code | Category | Code | Category |
| CC219 | Machinery, mechanical appliances, electrical/electronic articles. | C205 .... | Electrical and electronic products. |
| CC220 | Other machinery, mechanical appliances, electronic/electronic articles. | | |
| CC221 | Construction and building materials covering large surface areas, including metal articles. | C206 .... | Metal products not covered elsewhere. |
| CC222 | Electrical batteries and accumulators. | C207 .... | Batteries. |

**Chemical Substances in Packaging, Paper, Plastic, Toys, Hobby Products**

| | | | |
|---|---|---|---|
| CC990 | Non-TSCA use ..... | C301 .... | Food packaging. |
| CC301 | Packaging (excluding food packaging), including paper articles. | C302 .... | Paper products. |
| CC302 | Other articles with routine direct contact during normal use, including paper articles. | | |
| CC303 | Packaging (excluding food packaging), including rubber articles; plastic articles (hard); plastic articles (soft). | C303 .... | Plastic and rubber products not covered elsewhere. |
| CC304 | Other articles with routine direct contact during normal use including rubber articles; plastic articles (hard). | | |
| CC305 | Toys intended for children's use (and child dedicated articles), including fabrics, textiles, and apparel; plastic articles (hard). | C304 .... | Toys, playground, and sporting equipment. |
| CC306 | Adhesives applied at elevated temperatures. | C305 .... | Arts, crafts, and hobby materials. |
| CC307 | Cement/concrete. | | |
| CC308 | Crafting glue. | | |
| CC309 | Crafting paint (applied to body). | | |
| CC310 | Crafting paint (applied to craft). | | |

TABLE 9 TO PARAGRAPH (b)(4)(ii)(A)—CODES FOR REPORTING CONSUMER AND COMMERCIAL PRODUCT CATEGORIES—Continued

| Column A | | Column B | |
|---|---|---|---|
| Code | Category | Code | Category |
| CC311 | Fixatives and finishing spray coatings. | | |
| CC312 | Modelling clay. | | |
| CC313 | Correction fluid/tape. | C306 .... | Ink, toner, and colorant products. |
| CC314 | Inks in writing equipment (liquid). | | |
| CC315 | Inks used for stamps. | | |
| CC316 | Toner/Printer cartridge. | | |
| CC317 | Liquid photographic processing solutions. | C307 .... | Photographic supplies, film, and photochemicals. |

**Chemical Substances in Automotive, Fuel, Agriculture, Outdoor Use Products**

| | | | |
|---|---|---|---|
| CC401 | Exterior car washes and soaps. | C401 .... | Automotive care products. |
| CC402 | Exterior car waxes, polishes, and coatings. | | |
| CC403 | Interior car care. | | |
| CC404 | Touch up auto paint. | | |
| CC405 | Degreasers ........... | C402 .... | Lubricants and greases. |
| CC406 | Liquid lubricants and greases. | | |
| CC407 | Paste lubricants and greases. | | |
| CC408 | Spray lubricants and greases. | | |
| CC409 | Anti-freeze liquids | C403 .... | Anti-freeze and de-icing products. |
| CC410 | De-icing liquids. | | |
| CC411 | De-icing solids. | | |
| CC412 | Lock de-icers/releasers. | | |
| CC413 | Cooking and heating fuels. | C404 .... | Fuels and related products. |
| CC414 | Fuel additives. | | |
| CC415 | Vehicular or appliance fuels. | | |
| CC416 | Explosive materials. | C405 .... | Explosive materials. |
| CC417 | Agricultural non-pesticidal products. | C406 .... | Agricultural products (non-pesticidal). |
| CC418 | Lawn and garden care products. | C407 .... | Lawn and garden care products. |

**Chemical Substances in Products not Described by Other Codes**

| | | | |
|---|---|---|---|
| CC980 | Other (specify) ..... | C909 .... | Other (specify). |
| CC990 | Non-TSCA use ..... | C980 .... | Non-TSCA use. |

For the 2020 submission period: (1) Use column A for chemical substances designated in 2019 as high priority for risk evaluation (those chemicals listed in Table 7 to paragraph (b)(4)(i)(C) and (2) use either column A or B for chemical substances not listed in Table 7 to paragraph (b)(4)(i)(C).

For the 2024 and future submission periods, use only column A.

(B) For each consumer and commercial product category reported under paragraph (b)(4)(ii)(A) of this section, the applicable code(s) described in paragraph (b)(4)(i)(C) of this section must be selected to designate the function category(ies) that best represents the specific manner in which the chemical substance is used. For the 2020 submission period:

(*1*) Use column A in Table 6 to paragraph (b)(4)(i)(C) for chemical substances designated in 2019 as high priority for risk evaluation (those chemicals listed in Table 7 to paragraph (b)(4)(i)(C); and

(*2*) Use either column A or B in Table 6 to paragraph (b)(4)(i)(C) for chemical substances not listed in Table 7 to paragraph (b)(4)(i)(C). For the 2024 and future submission periods, use only column A in Table 6 to paragraph (b)(4)(i)(C). A particular function category may need to be reported more than once, to the extent that a submitter reports more than one consumer or commercial product category (under paragraph (b)(4)(ii)(A) of this section) that applies to a given function category under this paragraph. If none of the listed function categories accurately describes a use of a chemical substance, the category "Other" may be used, and must include a description of the use.

(C) An indication, within each consumer and commercial product category reported under paragraph (b)(4)(ii)(A) of this section, whether the use is a consumer or a commercial use.

(D) Submitters must determine, within each consumer and commercial product category reported under paragraph (b)(4)(ii)(A) of this section, whether any amount of each reportable chemical substance manufactured (including imported) by the submitter is present in (for example, a plasticizer chemical substance used to make pacifiers) or on (for example, as a component in the paint on a toy) any consumer products intended for use by children age 14 or younger, regardless of the concentration of the chemical substance remaining in or on the product. Submitters must select from the following options: The chemical substance is used in or on any consumer products intended for use by children; the chemical substance is not used in or on any consumer products intended for use by children; or information as to whether the chemical substance is used in or on any consumer products intended for use by children is not known to or reasonably ascertainable by the submitter.

(E) The estimated percentage, rounded off to the closest 10 percent, of the submitter's site's total production volume of the reportable chemical substance associated with each consumer and commercial product category. Where a particular consumer and commercial product category accounts for less than 5 percent of the total production volume of a reportable chemical substance, the percentage must not be rounded off to 0 percent if the production volume attributable to that commercial and consumer product category is 25,000 lb (11,340 kg) or more during the reporting year. Instead, in such a case, submitters must report the percentage, rounded off to the closest 1 percent, of the submitter's site's total production volume of the reportable chemical substance associated with the particular consumer and commercial product category.

(F) Where the reportable chemical substance is used in consumer or commercial products, the estimated typical maximum concentration, measured by weight, of the chemical substance in each consumer and commercial product category reported under paragraph (b)(4)(ii)(A) of this section. For each chemical substance in each commercial and consumer product category reported under paragraph (b)(4)(ii)(A) of this section, submitters must select from among the ranges of concentrations listed in Table 3 to paragraph (b)(3)(viii) of this section and report the corresponding code (*i.e.*, M1 through M5).

(G) Where the reportable chemical substance is used in a commercial product, the submitter must estimate the number of commercial workers reasonably likely to be exposed to each reportable chemical substance. For each combination associated with each substance, the submitter must select from among the worker ranges listed in

98

Table 2 to paragraph (b)(3)(vii) of this section and report the corresponding code (*i.e.,* W1 though W8).

[85 FR 20139, Apr. 9, 2020]

### §711.20  When to report.

All information reported to EPA in response to the requirements of this part must be submitted during an applicable submission period. The 2020 CDR submission period is from June 1, 2020, to January 29, 2021. Subsequent recurring submission periods are from June 1 to September 30 at 4-year intervals, beginning in 2024. In each submission period, any person described in §711.8 must report as described in this part.

[85 FR 75238, Nov. 25, 2020]

### §711.22  Duplicative reporting.

(a) *With regard to TSCA section 8(a) rules.* Any person subject to the requirements of this part who previously has complied with reporting requirements of a rule under TSCA section 8(a) by submitting the information described in §711.15 for a chemical substance described in §711.5 to EPA, and has done so within 1 year of the start of a submission period described in §711.20, is not required to report again on the manufacture of that chemical substance at that site during that submission period.

(b) *With regard to importers.* This part requires that only one report be submitted on each import transaction involving a chemical substance described in §711.5. When two or more persons are involved in a particular import transaction and each person meets the Agency's definition of ''importer'' as set forth in 40 CFR 704.3, they may determine among themselves who should submit the required report; if no report is submitted as required under this part, EPA will hold each such person liable for failure to report.

(c) *Co-manufactured chemicals.* This part requires that only one report per site be submitted on each chemical substance described in §711.5. However, both the contracting company and producing company are liable if no report is made. When a company contracts with a producing company to manufacture a chemical substance, and each

party meets the definition of ''manufacturer'' as set forth in §711.3, reporting of the co-manufactured chemical can be performed by one of the following methods:

(1) The contracting company initiates the required report for that site as the primary submitter. The contracting company must indicate on the report that this is a co-manufacturing situation, notify the producing company, and record the production volume domestically co-manufactured as set forth in §711.15(b)(3) and processing and use information set forth in §711.15(b)(4). Upon notification by the contracting company, the producing company must also record the production volume domestically co-manufactured and complete the rest of the report as prompted by e-CDRweb.

(2) Upon written agreement between the contracting company and the producing company, the producing company completes the full report for the co-manufactured chemical. The contracting company supplies the information not otherwise known to or reasonably ascertainable by the producing company.

[76 FR 54933, Sept. 6, 2011, as amended at 85 FR 20148, Apr. 9, 2020]

### §711.25  Recordkeeping requirements.

Each person who is subject to the reporting requirements of this part must retain records that document any information reported to EPA. Records relevant to reporting during a submission period must be retained for a period of 5 years beginning on the last day of the submission period. Submitters are encouraged to retain their records longer than 5 years to ensure that past records are available as a reference when new submissions are being generated.

### §711.30  Confidentiality claims.

(a) *Making confidentiality claims*—(1) *Generally.* Any person submitting information under this part may assert a confidentiality claim for that information at the time it is submitted, except for information described in paragraph (a)(2). Any such confidentiality claims must be asserted at the time the information is submitted. These claims will

99

apply only to the information submitted with the claim. Instructions for asserting confidentiality claims are provided in the document identified in § 711.35. Information claimed as confidential in accordance with this section will be treated and disclosed in accordance with the procedures in 40 CFR part 2 and section 14 of TSCA.

(2) *Exceptions.* Confidentiality claims cannot be asserted:

(i) For chemical identities listed on the public portion of the TSCA Inventory;

(ii) For processing and use data elements required by § 711.15(b)(4)(i)(A), (B), and (C) and § 711.15(b)(4)(ii)(A), (B), (C), and (D); or

(iii) When a response is left blank or designated as "not known or reasonably ascertainable."

(3) *Substantiations.* All confidentiality claims must be substantiated at time of submission, in accordance with the requirements in paragraphs (b), (c), and (d)(1) of this section, and must be signed and dated by an authorized official. Confidentiality claims for the following data elements are exempt from this substantiation requirement:

(i) Production volume information required pursuant to § 711.15(b)(3)(iii).

(ii) Joint submission information from the primary submitter, consisting of trade name and supplier identification required pursuant to § 711.15(b)(3)(i)(A) and (B).

(iii) Joint submission information from the secondary submitter, consisting of the percentage of formulation required pursuant to § 711.15(b)(3)(i)(A) and (B).

(iv) Information that is supplied in a petition submitted under § 711.6(b)(2)(iii) or § 711.10(d)(1)(ii) and that is described in section 14(c)(2) of TSCA.

(4) *Marking information claimed as confidential in confidentiality substantiation documentation.* If any of the information contained in the answers to the questions listed in paragraphs (b) and (c) of this section is asserted to contain information that itself is considered to be confidential, you must clearly identify the information that is claimed confidential.

(5) *Certification statement for claims.* An authorized official representing a person asserting a claim of confidentiality must certify that the submission complies with the requirements of this part by signing and dating the following certification statement:

"I certify that all claims for confidentiality asserted with this submission are true and correct, and all information submitted herein to substantiate such claims is true and correct. Any knowing and willful misrepresentation is subject to criminal penalty pursuant to 18 U.S.C. 1001. I further certify that: (1) I have taken reasonable measures to protect the confidentiality of the information; (2) I have determined that the information is not required to be disclosed or otherwise made available to the public under any other Federal law; (3) I have a reasonable basis to conclude that disclosure of the information is likely to cause substantial harm to the competitive position of my company; and (4) I have a reasonable basis to believe that the information is not readily discoverable through reverse engineering."

(6) *Company, site, and technical contact identity information.* A submitter may assert a claim of confidentiality for a site, company, or technical contact identity to protect the link between that information and the reported chemical substance. Such claim may be asserted only when the linkage of that information to a reportable chemical substance is confidential and not publicly available.

(7) *Processing and use information.* A submitter may assert a claim of confidentiality for each data element required by § 711.15(b)(4)(i)(D), (E) and (F) and § 711.15(b)(4)(ii)(E), (F), and (G) to protect the link between that information and the reported chemical substance. Such claim may be asserted only when the linkage of that information to a reportable chemical substance is confidential and not publicly available.

(b) *All confidentiality claims requiring substantiation at time of submission.* For each data element (or information supplied in a petition submitted under § 711.6(b)(2)(iii)(A) or § 711.10(d)(1)(ii)(A)) that is claimed as confidential, you must submit with your report detailed written answers to the following questions:

(1) Will disclosure of the information claimed as confidential likely cause substantial harm to your business's competitive position? If you answered

yes, describe the substantial harmful effects that would likely result to your competitive position if the information is disclosed, including but not limited to how a competitor could use such information, and the causal relationship between the disclosure and the harmful effects.

(2) To the extent your business has disclosed the information to others (both internally and externally), has your business taken precautions to protect the confidentiality of the disclosed information? If yes, please explain and identify the specific measures, including but not limited to internal controls, that your business has taken to protect the information claimed as confidential.

(3)(i) Is any of the information claimed as confidential required to be publicly disclosed under any other Federal law? If yes, please explain.

(ii) Does any of the information claimed as confidential otherwise appear in any public documents, including (but not limited to) safety data sheets; advertising or promotional material; professional or trade publications; state, local, or Federal agency files; or any other media or publications available to the general public? If yes, please explain why the information should be treated as confidential.

(iii) Does any of the information claimed as confidential appear in one or more patents or patent applications? If yes, please provide the associated patent number or patent application number (or numbers) and explain why the information should be treated as confidential.

(4) Does any of the information that you are claiming as confidential constitute a trade secret? If yes, please explain how the information you are claiming as confidential constitutes a trade secret.

(5) Is the claim of confidentiality intended to last less than 10 years (see TSCA section 14(e)(1)(B))? If yes, please indicate the number of years (between 1–10 years) or the specific date after which the claim is withdrawn.

(6) Has EPA, another federal agency, or court made any confidentiality determination regarding information associated with this chemical substance? If yes, please provide the cir-

cumstances associated with the prior determination, whether the information was found to be entitled to confidential treatment, the entity that made the decision, and the date of the determination.

(c) *Additional requirements for specific chemical identity.* A person may assert a claim of confidentiality for the specific chemical identity of a chemical substance as described in §711.15(b)(3) of this part only if the identity of that chemical substance is treated as confidential in the Master Inventory File as of the time the report is submitted for that chemical substance. Generic chemical identities and accession numbers may not be claimed as confidential. To assert a claim of confidentiality for the identity of a reportable chemical substance, you must submit with the report detailed written answers to the questions from paragraph (b) of this section and to the following questions.

(1) Is this chemical substance publicly known (including by your competitors) to be in U.S. commerce? If yes, please explain why the specific chemical identity should still be afforded confidential status (*e.g.*, the chemical substance is publicly known only as being distributed in commerce for research and development purposes, but no other information about the current commercial distribution of the chemical substance in the United States is publicly available). If no, please complete the certification statement:

I certify that on the date referenced, I searched the internet for the chemical substance identity (*i.e.*, by both chemical substance name and CASRN). I did not find a reference to this chemical substance that would indicate that the chemical is being manufactured or imported by anyone for a commercial purpose in the United States. [provide date].

(2) Does this particular chemical substance leave the site of manufacture (including import) in any form, *e.g.*, as a product, effluent, emission? If yes, please explain what measures have been taken to guard against the discovery of its identity.

(3) If the chemical substance leaves the site in a form that is available to the public or your competitors, can the

101

chemical identity be readily discovered by analysis of the substance (*e.g.*, product, effluent, emission), in light of existing technologies and any costs, difficulties, or limitations associated with such technologies? Please explain why or why not.

(4) Would disclosure of the specific chemical name release confidential process information? If yes, please explain.

(d) *Special situations*—(1) *Joint submissions.* If a primary submitter asks a secondary submitter to provide information directly to EPA in a joint submission under § 711.15(b)(3)(i)(A) and (B), only the primary submitter may assert a confidentiality claim for the data elements that it directly submits to EPA. The primary submitter must substantiate those claims that are not exempt under paragraph (a)(3)(ii) of this section. The secondary submitter is responsible for asserting all confidentiality claims for the data elements that it submits directly to EPA and for substantiating those claims that are not exempt under paragraph (a)(3)(iii) of this section.

(2) *Petitions.* If a petition submitted under § 711.6(b)(2)(iii)(A) or § 711.10(d)(1)(ii)(A) includes any information claimed as confidential, the petitioner must provide a version of the petition that redacts the information claimed as confidential.

(e) *No claim of confidentiality.* Information not claimed as confidential in accordance with the requirements of this section may be made public without further notice to the submitter.

[85 FR 20148, Apr. 9, 2020]

### § 711.35  Electronic filing.

(a) You must use e-CDRweb to complete and submit Form U (EPA Form 7740–8). Submissions may only be made as set forth in this section.

(b) Submissions must be sent electronically to EPA via CDX.

(c) Access e-CDRweb and instructions, as follows:

(1) *By website.* Go to the EPA Chemical Data Reporting internet homepage at *http://www.epa.gov/cdr* and follow the appropriate links.

(2) *By phone or e-mail.* Contact the EPA TSCA Hotline at (202) 554–1404 or *TSCA-Hotline@epa.gov* for a CD–ROM containing the instructions.

[76 FR 54933, Sept. 6, 2011, as amended at 85 FR 20149, Apr. 9, 2020]

## PART 712—CHEMICAL INFORMATION RULES

### Subpart A—General Provisions

Sec.
712.1   Scope and compliance.
712.3   Definitions.
712.5   Method of identification of substances for reporting purposes.
712.7   Report of readily obtainable information for subparts B and C.
712.15   Confidentiality.

### Subpart B—Manufacturers Reporting— Preliminary Assessment Information

712.20   Manufacturers and importers who must report.
712.25   Exempt manufacturers and importers.
712.28   Form and instructions.
712.30   Chemical lists and reporting periods.

Authority: 15 U.S.C. 2607(a).

Source: 47 FR 26998, June 22, 1982, unless otherwise noted.

## Subpart A—General Provisions

### § 712.1  Scope and compliance.

(a) This part establishes procedures for chemical manufacturers and processors to report production, use, and exposure-related information on listed chemical substances. Subpart A establishes requirements that apply to all reporting under this part. Subpart B covers manufacturers' and processors' reporting.

(b) Chemical substances, mixtures, and categories of substances or mixtures which have been recommended by the Interagency Testing Committee for testing consideration by the Agency but not designated for Agency response within 12 months, will be added to § 712.30 using the procedure specified in § 712.30(c) only to the extent that the total number of designated and recommended chemicals has not exceeded

102

(ff) *Test data* means data from a formal or informal test or experiment, including information concerning the objectives, experimental methods and materials, protocols, results, data analyses, recorded observations, monitoring data, measurements, and conclusions from a test or experiment.

(gg) *Test marketing* means the distribution in commerce of no more than a predetermined amount of a chemical substance, mixture, or article containing that chemical substance or mixture, by a manufacturer or processor, to no more than a defined number of potential customers to explore market capability in a competitive situation during a predetermined testing period prior to the broader distribution of that chemical substance, mixture, or article in commerce.

(hh) *United States*, when used in the geographic sense, means all of the States.

(ii) *Central Data Exchange* or *CDX* means EPA's centralized electronic document receiving system, or its successors.

(jj) *e-PMN software* means electronic-PMN software created by EPA for use in preparing and submitting Premanufacture Notices (PMNs) and other TSCA section 5 notices and support documents electronically to the Agency.

(kk) *Support documents* means material and information submitted to EPA in support of a TSCA section 5 notice, including but not limited to, correspondence, amendments (if notices for these amendments were submitted prior to January 19, 2016), and test data. The term ''support documents'' does not include orders under TSCA section 5(e) (either consent orders or orders imposed pursuant to TSCA section 5(e)(2)(B)).

[48 FR 21742, May 13, 1983, as amended at 51 FR 15101, Apr. 22, 1986; 75 FR 784, Jan. 6, 2010; 80 FR 42745, July 20, 2015]

## Subpart B—Applicability

### § 720.22  Persons who must report.

(a)(1) Any person who intends to manufacture a new chemical substance in the United States for commercial purposes must submit a notice unless the substance is excluded under § 720.30.

(2) If a person contracts with a manufacturer to manufacture or produce a new chemical substance, and (i) the manufacturer manufactures or produces the substance exclusively for that person, and (ii) that person specifies the identity of the substance, and controls the total amount produced and the basic technology for the plant process, that person must submit the notice. If it is unclear who must report, EPA should be contacted to determine who must submit the notice.

(3) Only manufacturers that are incorporated, licensed, or doing business in the United States may submit a notice.

(b)(1) Any person who intends to import a new chemical substance into the United States for commercial purposes must submit a notice, unless the substance is excluded under § 720.30 or unless the substance is imported as part of an article.

(2) When several persons are involved in an import transaction, the notice must be submitted by the principal importer. If no one person fits the principal importer definition in a particular transaction, the importer should contact EPA to determine who must submit the notice for that transaction.

### § 720.25  Determining whether a chemical substance is on the Inventory.

(a) A new chemical substance is any chemical substance that is not currently listed on the Inventory.

(b)(1) A chemical substance is listed in the public portion of the Inventory by a specific chemical name (either a Chemical Abstracts (CA) Index Name or a CA Preferred Name) and a Chemical Abstracts Service (CAS) Registry Number if its identity is not confidential. If its identity is confidential, it is listed in the public portion of the Inventory by a TSCA Accession Number and a generic chemical name that masks the specific substance identity. The confidential substance is listed by its specific chemical name only in the confidential portion of the Inventory, which is not available to the public. A person who intends to manufacture (including import) a chemical substance not listed by specific chemical name in the public portion of the Inventory

180

may ask EPA whether the substance is included in the confidential Inventory. EPA will answer such an inquiry only if EPA determines that the person has a *bona fide* intent to manufacture (including import) the chemical substance for commercial purposes.

(2) To establish a *bona fide* intent to manufacture (including import) a chemical substance, the person who proposes to manufacture the substance must submit the request to EPA via CDX. Prior to submission to EPA via CDX, such *bona fide* intents to manufacture (including import) must be generated and completed using e-PMN software. See §720.40(a)(2)(ii) for information on how to access the e-PMN software. A *bona fide* intent to manufacture (including import) must contain:

(i) Except as provided in paragraphs (b)(3)(i) and (ii) of this section, the specific chemical identity of the substance that the person intends to manufacture (including import), using the currently correct CA Index name for the substance and the other correct chemical identity information in accordance with §720.45(a) (1), (2), and (3).

(ii) A signed statement that the person intends to manufacture (including import) that chemical substance for commercial purposes.

(iii)(A) A brief description of the research and development activities conducted to date related to the substance, including the year in which the person first started to conduct research or development activity on the substance, and the general types of research and development activities conducted thus far (e.g., synthesis, substance isolation/purification, formulating, product development, process development, end-use application, toxicity testing, etc.). The person must also indicate whether any pilot plant or production-scale plant evaluations have been conducted involving the manufacture or processing of the substance.

(B) If an importer is unable to provide the information requested in paragraph (b)(2)(iii)(A) of this section from the foreign manufacturer or supplier, the following information shall be submitted:

(*1*) A brief statement indicating how long the substance has been in commercial use outside of the United States.

(*2*) The name of a country in which it has been commercially used.

(*3*) Whether the importer believes that the substance has already been used commercially, in any country, for the same purpose or application that the importer is intending.

(iv) A specific description of the major intended application or use of the substance.

(v) An infrared spectrum of the substance, or alternative spectra or other data which identify the substance if infrared analysis is not suitable for the substance or does not yield a reasonable amount of structural information. When using alternative spectra or instrumental analysis, the person must submit a spectrum or instrumental readout for the substance.

(vi) The estimated date (month/year) in which the person intends to submit a Premanufacture Notice (PMN) for this substance if EPA informs the notice submitter that the substance is not on the Inventory.

(vii) The address of the facility under the control of the submitter at which the manufacture or processing of the substance would most likely occur. For an imported substance, the facility under the control of the importer at which processing of the substance would likely occur, if any.

(viii)(A) For substances intended to be manufactured in the United States, a description of the most probable manufacturing process that would be used by the submitter to produce the substance for non-exempt commercial purposes.

(B) For substances intended to be imported, a brief description of how the submitter is most likely to process or use the substance for a commercial purpose. If the substance is not expected to be processed or used at any facility under the importer's control, a statement to this effect must be included along with a description of how the substance will be processed or used at sites controlled by others, if this information is known or reasonably ascertainable.

181

(3)(i) If an importer cannot provide the chemical identity information required by paragraph (b)(2) (i) and (v) of this section because it is claimed confidential by its foreign manufacturer or supplier, the foreign manufacturer or supplier must supply the required information directly to EPA in accordance with §720.45(a) (1), (2), and (3) and reference the importer's notice. If the appropriate supporting document from the foreign party is not received within 30 days after EPA receives the importer's notice, the notice will be considered incomplete.

(ii) If a manufacturer cannot provide all of the required information in accordance with §720.45(a) (1), (2), and (3) because the new chemical substance is manufactured using a reactant that has a specific chemical identity claimed as confidential by its supplier, the notice must contain chemical identity information that is as complete as known by the manufacturer. In addition, a letter of support for the notice must then be sent to EPA by the chemical supplier of the confidential reactant, providing the specific chemical identity of the proprietary reactant. The letter of support must reference the manufacturer's notice. If the appropriate supporting document from the supplier is not received within 30 days after EPA receives the manufacturer's notice, the notice will be considered incomplete.

(4) EPA will review the information submitted by the proposed manufacturer (including importer) under this paragraph to determine whether it has a *bona fide* intent to manufacture (including import) the chemical substance. If necessary, EPA will compare this information to the information requested for the confidential chemical substance under §720.85(b)(3)(iii).

(5) If the proposed manufacturer (including importer) has shown a *bona fide* intent to manufacture (including import) the substance, and has provided sufficient unambiguous chemical identity information so EPA can make a conclusive determination of the chemical substance's Inventory status, EPA will search the confidential Inventory and inform the proposed manufacturer (including importer) whether the

chemical substance is on the confidential Inventory.

(6) If the chemical substance is found on the confidential Inventory, EPA will notify the person(s) who originally reported the chemical substance that another person has demonstrated a *bona fide* intent to manufacture (including import) the substance and therefore was told that the chemical substance is on the Inventory.

(7) A disclosure of a confidential chemical identity to a person with a *bona fide* intent to manufacture (including import) the particular chemical substance will not be considered a public disclosure of confidential business information under section 14 of the Act.

(8) EPA will answer an inquiry on whether a particular chemical substance is on the confidential Inventory within 30 days after receipt of a complete submission under paragraph (b)(2) of this section.

(9) If the required chemical identity information has not been reported correctly or completely in the notice (except as provided under paragraph (b)(3)(ii) of this section) or if any other required data or information has been omitted or is incomplete, EPA will consider the whole notice to be incomplete. As soon as an incomplete notice is identified as such by EPA, the Agency will immediately return the notice directly to the submitter. The submitter must then resubmit the whole, completed *bona fide* notice to EPA in order to have the Agency perform the desired Inventory search and respond to the notice.

[48 FR 21742, May 13, 1983, as amended at 58 FR 34204, June 23, 1993; 60 FR 16309, Mar. 29, 1995; 80 FR 42745, July 20, 2015]

## § 720.30 Chemicals not subject to notification requirements.

The following substances are not subject to the notification requirements of this part:

(a) Any substance which is not a "chemical substance" as defined in §720.3(e).

(b) Any mixture as defined in §720.3(u). [1]

---

[1] A new chemical substance that is manufactured or imported as part of a mixture is

§720.36 and who manufactures or imports the substance in quantities greater than 100 kilograms per year must retain records of the identity of the substance to the extent known, the production volume of the substance, and the person's disposition of the substance. The person is not required to maintain records of the disposition of products containing the substance as an impurity or of articles incorporating the substances.

(3) Records under this paragraph must be retained for 5 years after they are developed.

(c) Any person who obtains a test-marketing exemption under this part must retain documentation of information in the application and documentation of compliance with any restrictions imposed by EPA when it granted the application. This information must be retained for five years from the final date of manufacture or import under the exemption.

[48 FR 21742, May 13, 1983; 48 FR 33872, July 26, 1983, as amended at 51 FR 15102, Apr. 22, 1986; 58 FR 34204, June 23, 1993]

## Subpart E—Confidentiality and Public Access to Information

### § 720.80 General provisions.

(a) A person may assert a claim of confidentiality for any information which he or she submits to EPA under this part.

(b) Any claim of confidentiality must accompany the information when it is submitted to EPA.

(1)(i) For information submitted on the notice form, the claim(s) must be asserted on the form in the manner prescribed on the notice form.

(ii) When a person submits information in an attachment, the claim(s) must be asserted in the attachment as described on the notice form.

(2) If any information is claimed as confidential, the person must submit, in addition to the copies specified by §720.40, a sanitized copy of the notice form (or electronic submission) and any attachments.

(i) The notice and attachments must be complete. The submitter must designate that information which is claimed as confidential in the manner prescribed on the notice form, via EPA's e-PMN software. See §720.40(a)(2)(iv) for information on how to obtain e-PMN software.

(ii) The sanitized copy must be complete except that all information claimed as confidential in the original must be deleted. EPA will place this sanitized copy in the public file.

(iii) If the person does not provide the sanitized copy, or information in a health and safety study (except information claimed as confidential in accordance with §720.90), the submission will be deemed incomplete and the notice review period will not begin until EPA receives the sanitized copy or the health and safety study information is included, in accordance with §720.65(c)(1)(vii).

(c) EPA will disclose information that is subject to a claim of confidentiality asserted under this section only to the extent permitted by the Act, this subpart, and part 2 of this title.

(d) If a notice submitter does not assert a claim of confidentiality for information at the time it is submitted to EPA, EPA may make the information public and place it in the public file without further notice to the submitter.

[48 FR 21742, May 13, 1983, as amended at 58 FR 34204, June 23, 1993; 60 FR 16311, Mar. 29, 1995; 75 FR 786, Jan. 6, 2010]

### § 720.85 Chemical identity.

(a) *Claims applicable to the period prior to commencement of manufacture or import.* (1)(i) A person who submits information to EPA under this part may assert a claim of confidentiality for the chemical identity of the new chemical substance. This claim will apply only to the period prior to the commencement of manufacture or import for commercial purposes. A submitter may assert this claim only if the submitter believes that public disclosure prior to commencement of manufacture or import of the fact that anyone intends to manufacture or import the specific chemical substance for commercial purposes would reveal confidential business information.

(ii) If the notice includes a health and safety study concerning the new chemical substance and if the claim for confidentiality with respect to the

195

chemical identity is denied in accordance with § 720.90(c), EPA will deny a claim asserted under this paragraph.

(2) Any person who asserts a claim of confidentiality for chemical identity under this paragraph must provide one of the following items at the time the notice is submitted:

(i) The generic name which was accepted by EPA in the prenotice consultation conducted under paragraph (a)(3) of this section.

(ii) One generic name that is only as generic as necessary to protect the confidential chemical identity of the particular chemical substance. The name should reveal the specific chemical identity to the maximum extent possible. The generic name will be subject to EPA review and approval at the time a notice of commencement is submitted.

(3)(i) Any person who intends to assert a claim of confidentiality for the chemical identity of a new chemical substance may seek a determination by EPA of an appropriate generic name for the substance before submitting a notice. For this purpose, the person should submit to EPA:

(A) The chemical identity of the substance.

(B) A proposed generic name(s) which in only as generic as necessary to protect the confidential chemical identity of the new chemical substance. The name(s) should reveal the chemical identity of the substance to the maximum extent possible.

(ii) Within 30 days, EPA will inform the submitter either that one of the proposed generic names is adequate or that none is adequate and further consultation is necessary.

(4) If a submitter claims chemical identity to be confidential under this paragraph, and if the submitter complies with paragraph (a)(2) of this section, EPA will issue for publication in the FEDERAL REGISTER notice described in § 720.70 the generic name proposed by the submitter or one agreed upon by EPA and the submitter.

(b) *Claims applicable to the period after commencement of manufacture or import.* (1) Any claim of confidentiality under paragraph (a) of this section is applicable only until the substance is manufactured or imported for commercial purposes and becomes eligible for inclusion on the Inventory. To maintain the confidential status of the chemical identity when the substance is added to the Inventory, a submitter must reassert the confidentiality claim and substantiate the claim in the notice of commencement of manufacture required under § 720.102. A submitter may not claim the chemical indentity confidential for the period after commencement of manufacture or import unless the submitter claimed the chemical identity confidential for the period prior to commencement of manufacture or import under paragraph (a) of this section.

(2)(i) A person who believes that public disclosure of the fact that anyone manfactures or imports the new chemical substance for commercial purposes would reveal confidential business information may assert a claim of confidentiality under this paragraph.

(ii) If the notice includes a health and safety study concerning the new chemical substance, and if the claim for confidentiality with respect to the chemical identity is denied in accordance with § 720.90(c), EPA will deny a claim asserted under this paragraph.

(3) Any person who asserts a confidentiality claim for chemical identity must:

(i) Comply with the requirements of paragraph (a)(3) of this section regarding submission of a generic name.

(ii) Agree that EPA may disclose to a person with a *bona fide* intent to manufacture or import the chemical substance the fact that the particular chemical substance is included on the confidential Inventory for purposes of notification under section 5(a)(1)(A) of the Act.

(iii) Have available for the particular chemical substance, and agree to furnish to EPA upon request:

(A) An elemental analysis.

(B) Either an X-ray diffraction pattern (for inorganic substances), a mass spectrum (for most other substances), or an infrared spectrum of the particular chemical substance, or if such data do not resolve uncertainties with respect to the identity of the chemical substance, additional or alternative spectra or other data to identify the chemical substance.

196

(iv) Provide a detailed written substantiation of the claim, by answering the following questions:

(A) What harmful effects to your competitive position, if any, do you think would result if EPA publishes on the Inventory the identity of the chemical substance? How could a competitor use such information given the fact that the identity of the substance otherwise would appear on the Inventory of chemical substances with no link between the substance and your company or industry? How substantial would the harmful effects of disclosure be? What is the casual relationship between the disclosure and the harmful effects?

(B) For what period of time should confidential treatment be given? Until a specific date, the occurrence of a specific event, or permanently? Why?

(C) Has the chemical substance been patented? If so, have you granted licenses to others with respect to the patent as it applies to the chemical substance? If the chemical substance has been patented and therefore disclosed through the patent, why should it be treated as confidential for purposes of the Inventory?

(D) Has the identity of the chemical substance been kept confidential to the extent that your competitors do not know it is being manufactured on imported for a commercial purpose by anyone?

(E) Is the fact that someone is manufacturing or importing this chemical substance for commercial purposes available to the public, e.g., in technical journals or other publications; in libraries; or in State, local, or Federal agency public files?

(F) What measures have you taken to prevent undesired disclosure of the fact that you are manufacturing or importing this substance for a commercial purpose?

(G) To what extent has the fact that you are manufacturing or importing this chemical substance for a commercial purpose been disclosed to others? What precautions have you taken in regard to these disclosures? Has this information been disclosed to the public or to competitors?

(H) In what form does this particular chemical substance leave the site of manufacture, e.g., as part of a product; in an effluent or emission stream? If so, what measures have you taken to guard against discovery of its identity?

(I) If the chemical substance leaves the site of manufacture in a product that is available to either the public or your competitors, can they identify the substance by analyzing the product?

(J) For what purpose do you manufacture or import the substance?

(K) Has EPA, another Federal agency, or any Federal court made any pertinent confidentiality determinations regarding this chemical substance? If so, copies of such determinations must be included in the substantiation.

(L) If the notice includes a health and safety study concerning the new chemical substance, the submitter must also answer the questions in §720.90(b)(2).

(4) If the submitter does not meet the requirements of this paragraph, EPA will deny the claim of confidentiality.

(5)(i) EPA will publish a generic name on the public Inventory if:

(A) The submitter asserts a claim of confidentiality in accordance with this paragraph.

(B) No claim for confidentiality of the specific chemical identity as part of a health and safety study has been denied in accordance with part 2 of this title or §720.90.

(ii) Publication of a generic name on the public Inventory does not create a category for purposes of the Inventory. Any person who has a *bona fide* intent to manufacture or import a chemical substance which is described by a generic name on the public Inventory may submit an inquiry to EPA under §720.25(b) to determine whether the particular chemical substance is included on the confidential Inventory.

(iii) Upon receipt of a request described in §720.25(b), EPA may require the submitter which originally asserted confidentiality for a chemical substance to submit to EPA the information listed in paragraph (b)(3)(iii) of this section.

(iv) Failure to submit any of the information required under paragraph (b)(3)(iii) of this section within ten days of a request by EPA under this paragraph is a waiver of the original submitter's confidentiality claim. In this event, EPA may place the specific

197

chemical identity on the public Inventory without further notice to the original submitter.

(6) If a submitter asserts a claim of confidentiality under this paragraph, EPA will examine the generic chemical name proposed by the submitter.

(i) If EPA determines that the generic name proposed by the submitter is only as generic as necessary to protect the confidential identity of the particular chemical substance, EPA will place that generic name on the public Inventory.

(ii) If EPA determines that the generic name proposed by the submitter is more generic than necessary to protect the confidential identity, EPA will propose in writing, for review by the submitter, an alternative generic name that will reveal the chemical identity of the chemical substance to the maximum extent possible.

(iii) If the generic name proposed by EPA is acceptable to the submitter, EPA will place that generic name on the public Inventory.

(iv) If the generic name proposed by EPA is not acceptable to the submitter, the submitter must explain in detail why disclosure of that generic name would reveal confidential business information and propose another generic name which is only as generic as necessary to protect the confidential identity. If EPA does not receive a response from the submitter within 30 days after the submitter receives the proposed name, EPA will place EPA's chosen generic name on the public Inventory. If the submitter does provide the information requested, EPA will review the response. If the submitter's proposed generic name is acceptable, EPA will publish that generic name on the public Inventory. If the submitter's proposed generic name is not acceptable, EPA will notify the submitter of EPA's choice of a generic name. Thirty days after this notification, EPA will place the chosen generic name on the public Inventory.

## § 720.87 Categories or proposed categories of uses of a new chemical substance.

(a) A person who submits information to EPA under this part on the categories or proposed categories of use of a new chemical substance may assert a claim of confidentiality for this information.

(b) A submitter that asserts such a claim must:

(1) Report the categories or proposed categories of use of the chemical substance.

(2) Provide, in nonconfidential form, a description of the uses that is only as generic as necessary to protect the confidential business information. The generic use description will be included in the FEDERAL REGISTER notice described in § 720.70.

(c) The person must submit the information required by paragraph (b) of this section in the manner specified in the notice form.

## § 720.90 Data from health and safety studies.

(a) *Information other than specific chemical identity.* Except as provided in paragraph (b) of this section, EPA will deny any claim of confidentiality with respect to information included in a health and safety study, unless the information would disclose confidential business information concerning:

(1) Processes used in the manufacture or processing of a chemical substance or mixture.

(2) In the case of a mixture, the portion of the mixture comprised by any of the chemical substances in the mixture.

(3) Information which is not in any way related to the effects of a substance on human health or the environment, such as the name of the submitting company, cost or other financial data, product development or marketing plans, and advertising plans, for which the person submits a claim of confidentiality in accordance with § 720.80.

(b) *Specific chemical identity*—(1) *Claims applicable to period prior to commencement of manufacture.* A claim of confidentiality for the period prior to commencement of manufacture or import for the chemical identity of a chemical substance for which a health and safety study was submitted must be asserted in conjunction with a claim asserted under § 720.85(a).

(2) *Claims applicable to period after commencement of manufacture or import*

198

*for commercial purposes.* To maintain the confidential status of the chemical identity of a chemical substance for which a health and safety study was submitted after commencement of manufacture or import, the claim must be reasserted and substantiated in conjunction with a claim under §720.85(b). In addition to the questions set forth in §720.85(b)(3)(iv) of this part, the submitter must answer the following questions:

(i) Would disclosure of the chemical identity disclose processes used in the manufacture or processing of a chemical substance or mixture? Describe how this would occur. In responding to the question in §720.85(b)(3)(iv)(A), explain what harmful competitive effects would occur from disclosure of this process information.

(ii) Would disclosure of the chemical identity disclose the portion of a mixture comprised by any of the substances in the mixture? Describe how this would occur. In responding to the question in §720.85(b)(3)(iv)(A), explain what harmful competitive effects would occur from disclosure of this information.

(iii) Do you assert that disclosure of the chemical identity is not necessary to interpret any of the health and safety studies you have submitted? If so, explain how a less specific identity would be sufficient to interpret the studies.

(c) *Denial of confidentiality claim.* EPA will deny a claim of confidentiality for chemical identity under paragraph (b) of this section, unless:

(1) The information would disclose processes used in the manufacture or processing of a chemical substance or mixture.

(2) In the case of a mixture, the information would disclose the portion of the mixture comprised by any of the substances in the mixture.

(3) The specific chemical identity is not necessary to interpret a health and safety study.

(d) *Use of generic names.* When EPA discloses a health and safety study containing a specific chemical identity, which the submitter has claimed confidential, and if the Agency has not denied the claim under paragraph (c) of this section, EPA will identify the

chemical substance by the generic name selected under §720.85.

[48 FR 21742, May 13, 1983, as amended at 58 FR 34204, June 23, 1993]

### §720.95 Public file.

All information submitted with a notice, including any health and safety study and other supporting documentation, will become part of the public file for that notice, unless such materials are claimed confidential. In addition, EPA may add materials to the public file, subject to subpart E of this part. Publically available docket materials are available at the addresses in §700.17(b)(1) and (2) of this chapter.

[48 FR 21742, May 13, 1983, as amended at 53 FR 12523, Apr. 15, 1988; 60 FR 16311, Mar. 29, 1995; 60 FR 34464, July 3, 1995; 77 FR 46292, Aug. 3, 2012]

## Subpart F—Commencement of Manufacture or Import

### §720.102 Notice of commencement of manufacture or import.

(a) *Applicability.* Any person who commences the manufacture or import of a new chemical substance for a nonexempt commercial purpose for which that person previously submitted a section 5(a) notice under this part must submit a notice of commencement of manufacture or import.

(b) *When to report.* (1) If manufacture or import for commercial purposes begins on or after the effective date of this rule, the submitter must submit the notice to EPA on, or no later than 30 calendar days, after the first day of such manufacture or import.

(2) If manufacture or import for commercial purposes began or will begin before the effective date of this rule, the submitter must submit the notice by the effective date of this rule.

(c) *Information to be reported on form.* (1) The notice must be submitted on EPA Form 7710–56, which is available as part of EPA's e-PMN software. See §720.40(a)(2)(iv) for information on how to obtain e-PMN software. The form must be signed and dated by an Authorized Official (AO). All information specified on the form must be provided. The notice must contain the following information:

199

(i) The specific chemical identity of the PMN substance.

(ii) A generic chemical name (if the chemical identity is claimed as confidential by the submitter).

(iii) The premanufacture notice (PMN) number assigned by EPA.

(iv) The date of commencement for the submitter's manufacture or import for a non-exempt commercial purpose (indicating whether the substance was initially manufactured in the United States or imported). The date of commencement is the date of completion of non-exempt manufacture of the first amount (batch, drum, etc.) of new chemical substance identified in the submitter's PMN. For importers, the date of commencement is the date the new chemical substance clears United States customs.

(v) The name and address of the submitter.

(vi) The name of the authorized official.

(vii) The name and telephone number of a technical contact in the United States.

(viii) The address of the site where commencement of manufacture occurred.

(ix) Clear indications of whether the chemical identity, submitter identity, and/or other information are claimed as confidential by the submitter.

(2) If the submitter claims the chemical identity confidential, and wants the identity to be listed on the confidential portion of the Inventory, the claim must be reasserted and substantiated in accordance with § 720.85(b). Otherwise, EPA will list the specific chemical identity on the public Inventory. Submitters who did not claim the chemical identity, submitter identity, or other information to be confidential in the PMN cannot claim this information as confidential in the notice of commencement.

(d)(1) *Where to submit.* All notices of commencement must be submitted to EPA on EPA Form 7710–56. Notices may only be submitted in a manner set forth in this paragraph.

(2) *Submission of notice of commencement.* EPA will accept notices of commencement only if submitted in accordance with this paragraph. All notices of commencement must be sub-

mitted electronically to EPA via CDX. Prior to submission to EPA via CDX, such notices of commencement must be generated and completed using e-PMN software. See § 720.40(a)(2)(ii) for information on how to obtain e-PMN software.

[48 FR 21742, May 13, 1983, as amended at 48 FR 41140, Sept. 13, 1983; 51 FR 15103, Apr. 22, 1986; 53 FR 12523, Apr. 15, 1988; 60 FR 16311, Mar. 29, 1995; 60 FR 34464, July 3, 1995; 65 FR 39304, June 26, 2000; 71 FR 33641, June 12, 2006; 75 FR 786, Jan. 6, 2010; 78 FR 72827, Dec. 4, 2013]

## Subpart G—Compliance and Inspections

### § 720.120  Compliance.

(a) Failure to comply with any provision of this part is a violation of section 15 of the Act (15 U.S.C 2614).

(b) A person who manufactures or imports a new chemical substance before a notice is submitted and the notice review period expires is in violation of section 15 of the Act even if that person was not requied to submit the notice under § 720.22.

(c) Using for commercial purposes a chemical substance or mixture which a person knew or had reason to know was manufactured, processed, or distributed in commerce in violation of section 5 of this rule is a violation of section 15 of the Act (15 U.S.C. 2614).

(d) Failure or refusal to establish and maintain records or to permit access to or copying of records, as required by the Act, is a violation of section 15 of the Act (15 U.S.C. 2614).

(e) Failure or refusal to permit entry or inspection as required by section 11 is a violation of section 15 of the Act (15 U.S.C. 2614).

(f) Violators may be subject to the civil and criminal penalties in section 16 of the Act (15 U.S.C. 2615) for each violation. Persons who submit materially misleading or false information in connection with the requirements of any provision of this rule may be subject to penalties calculated as if they never filed their notices.

(g) EPA may seek to enjoin the manufactur or processing of a chemical substance in violation of this rule or act to seize any chemical substance manufactured or processed in violation